IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| QUANTLAB TECHNOLOGIES LTD. (BVI) AND QUANTLAB FINANCIAL, LLC, | § § § § | |
| Plaintiffs, | § | |
| v. | § § | CIVIL ACTION NO. H-09-4039 |
| VITALIY GODLEVSKY, ANDRIY KUHARSKY, ANNA MARAVINA, PING AN, EMMANUEL MAMALAKIS, AND SXP ANALYTICS, LLC, | § § § § § | JURY DEMANDED |
| Defendants. | § | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS ANDRIY KUHARSKY AND ANNA MARAVINA'S MOTION TO DISMISS

TABLE OF CONTENTS

PAGE

I.     INTRODUCTION / NATURE AND STAGE OF PROCEEDINGS..............................1

II.    STATEMENT OF THE ISSUES...................................................................................3

III.   APPLICABLE STANDARD OF REVIEW ..................................................................3

IV.    SUMMARY OF THE ARGUMENT.............................................................................4

V.     ARGUMENT AND AUTHORITIES ...........................................................................5

       A.    Quantlab Has Raised Plausible Claims for Relief Under the Copyright Act ........5

       B.    Quantlab Has Raised Plausible CFAA Claims Against Kuharsky ......................9

             1.    The Allegations in Quantlab's Original Complaint Are Sufficient
                   to Plausibly Establish a "Protected Computer" ........................................9

             2.    The Allegations in Quantlab's Original Complaint Are Sufficient
                   to Plausibly Establish a Cognizable "Loss" Under the CFAA...............12

                   a.    Loss Flowing from Kuharsky's Theft of Trade Secrets and
                         Confidential Information from Quantlab's Computers ..............12

                   b.    Loss through Costs to Investigate and Respond to
                         Kuharsky's CFAA Violations, Such as Costs of Forensic
                         Analysis and Restoration of Data................................................14

             3.    Quantlab's CFAA Claim Is Not Barred By Limitations on the Face
                   of the Original Complaint.......................................................................15

       C.    Even If Quantlab Had Failed to Sufficiently Plead a Claim, the Court
             Should Afford Quantlab the Opportunity to Re-Plead ......................................17

VI.    CONCLUSION............................................................................................................18

TABLE OF AUTHORITIES

PAGE

**UNITED STATES SUPREME COURT CASES**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...................................................................... 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 4

*Leatherman v. Tarrant County NIC Unit*, 507 U.S. 163 (1993) ................................. 10

**UNITED STATES CIRCUIT COURT CASES**

*A&M Records, Inc. v. Napster, Inc.*, 238 F.3d 1004 (9th Cir. 2001) ........................... 7

*Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772 (5th Cir. 1999) ...................... 6, 7

*BMG Music v. Gonzalez*, 430 F.3d 888 (7th Cir. 2005) .............................................. 7

*Friedlander v. C. Nims,* 755 F.2d 810 (11th Cir. 1985) ............................................. 17

*Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141 (5th Cir. 2005) ................... 3

*Hedges v. United States*, 404 F.3d 744 (3d Cir. 2005) ................................................ 4

*Lovick v. Ritemoney, Ltd.*, 378 F.3d 433 (5th Cir. 2004) ............................................ 3

*Lowrey v. Texas A&M Univ.*, 117 F.3d 242 (5th Cir. 1997) ......................................... 3

*MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993) ..................... 7-8

*Maverick Recording Co. v. Harper*, No. 08-51194, 2010 U.S. App. LEXIS 3912
    (5th Cir. Feb. 25, 2010) ...................................................................................... 5, 7

**UNITED STATES DISTRICT COURT CASES**

*Becker v. Toca*, Civ. No. 07-7202(L)(3), 2008 U.S. Dist. LEXIS 89123
    (E.D. La. Sept. 26, 2008) .................................................................................... 10

*C.H. Robinson Worldwide, Inc. v. Command Transp., LLC*, No. 05-C-3401,
    2005 U.S. Dist. LEXIS 28063 (N.D. Ill. Nov. 16, 2005) ................................... 13

*CoStar Realty Info., Inc. v. Alliance Valuation Group*, 612 F. Supp. 2d 660 (S.D. Md. 2009) ... 14

*DB Western, Inc.-Texas v. Invista, S.A. R.L.,* Civ. No. H-09-2750, 2009 U.S. Dist.
    LEXIS 94977 (S.D. Tex. Oct. 13, 2009) ............................................................ 17

TABLE OF AUTHORITIES

PAGE

*Forge Indus. Staffing, Inc. v. De la Fuente*, No. 06 C 3848, 2006 U.S. Dist. LEXIS 75286, (N.D. Ill. Oct. 16, 2006) ................................................................................... 14-15

*Modis, Inc. v. Bardelli*, 531 F. Supp. 2d 314 (D. Conn. 2008) ........................................9, 10, 12

*Nordstrom Consulting, Inc. v. M & S Tech., Inc.*, No. 06-C-3234, 2008 U.S. Dist. LEXIS 17259 (N.D. Ill. March 4, 2008) ................................................................... 10

*Patel v. Pac. Life Ins. Co.*, Civ. A. No. 3:08-CV-0249-B, 2009 U.S. Dist. LEXIS 44105 (N.D. Tex. May 22, 2009) ................................................................... 15, 17

*Patrick Patterson Custom Homes, Inc. v. Bach*, 586 F. Supp. 2d 1026 (N.D. Ill. 2008) .............. 9

*Resource Center for Independent Living v. Ability*, 534 F. Supp. 2d 1204 (D. Kan. 2008) ....... 13

*Southwest Airlines Co. v. Boardfirst, L.L.C.*, Civ. No. 3:06-CV-0891-B, 2007 U.S. Dist. LEXIS 96230 (N.D. Tex. Sep. 12, 2007) ............................................. 14

*Starnet Development v. Fabiano*, No. 96-C-0339-S, 1996 U.S. Dist. LEXIS 21340 (D. Utah July 26, 1996) ................................................................................... 8

*Therapeutic Research Faculty v. NBTY, Inc.*, 488 F. Supp. 2d 991 (E.D. Cal. 2007) ............... 13

*United States v. Kim*, Crim. No. H-09-302, 2009 U.S. Dist. LEXIS 121871 (S.D. Tex. Dec. 24, 2009) ................................................................................... 9

*United States v. Rutherford Oil Corp.*, Civ. A. No. G-08-0231, 2009 U.S. Dist. LEXIS 40233 (S.D. Tex. May 13, 2009) ................................................................... 17

**STATUTES**

18 U.S.C. § 1030(e)(2)(B) ........................................................................................... 9

18 U.S.C. § 1030(g) ..................................................................................................... 15

iii.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| QUANTLAB TECHNOLOGIES LTD. (BVI) AND QUANTLAB FINANCIAL, LLC, | §<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. H-09-4039 |
| VITALIY GODLEVSKY, ANDRIY KUHARSKY, ANNA MARAVINA, PING AN, EMMANUEL MAMALAKIS, AND SXP ANALYTICS, LLC, | §<br>§<br>§<br>§ | JURY DEMANDED |
| Defendants. | §<br>§<br>§ | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS ANDRIY KUHARSKY AND ANNA MARAVINA'S MOTION TO DISMISS

Plaintiffs Quantlab Technologies Ltd. (BVI) and Quantlab Financial, LLC (collectively, "Quantlab") respond to the Motion to Dismiss (Docket Entry 27) filed by Defendants Andriy Kuharsky and Anna Maravina.

The Motion to Dismiss repeatedly mischaracterizes the nature of this suit, ignores many of the Original Complaint's factual allegations, and, ultimately, fails to present any grounds that could warrant dismissal of any of Quantlab's claims. In short, Kuharsky and Maravina's selective and improper reading of the Original Complaint seems to be more wishful thinking than a genuine analysis of the well-pleaded federal claims that Quantlab has actually asserted against them. The Motion to Dismiss has no merit and should be denied.

## I.
## INTRODUCTION / NATURE AND STAGE OF PROCEEDINGS

Quantlab brought this lawsuit two and one-half months ago to address the harm that Kuharsky, Maravina, and the other four defendants have caused to Quantlab by conspiring to copy and steal some of Quantlab's most valuable trade secrets, including computer source code.

The unauthorized copying of computer code is clearly covered by federal copyright laws.  As a result, Quantlab has brought federal claims against all of the defendants under the Copyright Act.  Quantlab additionally has asserted federal claims against most of the defendants (including Kuharsky, but not Maravina) under the Computer Fraud and Abuse Act ("CFAA").  Kuharsky and Maravina are the only defendants that have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b).  The other defendants all filed answers to the Original Complaint.

Contrary to what Kuharsky and Maravina contend, there is nothing "unusual" about this lawsuit being brought in a federal forum.  This case clearly involves federal issues—such as copyright infringement by unauthorized copying of computer source code—over which federal district courts have original and exclusive jurisdiction.  Accordingly, it is beyond question that this case involves much more than just "ordinary state law issues" that Quantlab wants heard in this Court rather than in state court.

Kuharsky and Maravina also cannot credibly contend that the Original Complaint fails to provide adequate notice of the federal claims being asserted against them.  Perhaps realizing this, the best Kuharsky and Maravina can do is selectively ignore many factual allegations supporting Quantlab's federal claims and try to smear Quantlab with misleading renditions of other lawsuits involving former employees.  Quantlab highly doubts that the Court finds such tactics persuasive or even appropriate.  Because the factual allegations and reasonable inferences drawn from the Original Complaint raise plausible Copyright Act and CFAA claims that satisfy Rule 8's notice pleading standard, the Motion to Dismiss should be denied.

## II.
## STATEMENT OF THE ISSUES

There are two issues for the Court to decide:

1.      Whether, under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Original Complaint's repeated allegations that Kuharsky and Maravina "downloaded" or "copied" Quantlab's proprietary computer code without Quantlab's authorization sufficiently put Kuharsky and Maravina on notice of the Copyright Act claims against them.

2.      Whether Quantlab has sufficiently put Kuharsky on notice of its CFAA claim, including through allegations that—alone or through reasonable inferences—clearly suffice to allege a "protected computer," a cognizable "loss" under the CFAA, and both direct and derivate CFAA violations that cannot possibly be characterized as time-barred on the face of the Original Complaint.

## III.
## APPLICABLE STANDARD OF REVIEW

In the Fifth Circuit, "a motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2005 (internal quotations omitted).  As a result, the Court must liberally construe the allegations in the Original Complaint and must draw all reasonable inferences in Quantlab's favor.  *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  The object of the Court's analysis under Rule 12(b)(6) is not whether Quantlab will ultimately prevail; rather, it is merely "whether in the light most favorable to [Quantlab] and with every doubt resolved in [Quantlab's] behalf, the complaint states a valid claim for relief" against Kuharsky and Maravina.  *Lowrey v. Texas A&M Univ.*, 117 F.3d 242, 247 (5th Cir. 1997).

A complaint "does not need detailed factual allegations" to meet this test, but only a short and plain statement containing enough facts to state a "plausible" claim for relief.  *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim is plausible when the complaint contains enough "factual content to allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Plausibility does not equate to probability; rather, it "raise[s] a reasonable expectation that discovery will reveal evidence of [a required element]." *Twombly*, 550 U.S. at 556.  As the movants, Kuharsky and Maravina bear the burden of showing that Quantlab has failed to plead a valid claim for relief that meets this plausibility standard.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## IV.
## SUMMARY OF THE ARGUMENT

For some reason, Kuharsky and Maravina urge this Court to conclude that the wrongs complained of in this suit are improperly brought in federal court and that Quantlab has not sufficiently pleaded any federal law claim against them.  Kuharsky and Maravina are wrong.  The Original Complaint meets Rule 8's liberal pleading requirements and raises plausible claims for relief under the Copyright Act and the CFAA.

Kuharsky and Maravina's motion first contends that Quantlab has not sufficiently pleaded its copyright infringement claims.  In doing so, however, Kuharsky and Maravina simply ignore the Original Complaint's repeated allegations that they copied or downloaded Quantlab's copyright-protected proprietary computer code without Quantlab's authorization.  (*See* Original Complaint, ¶¶ 43, 48, 54, 55; *see also id.* ¶ 31).  Fifth Circuit law is clear that nothing more is required for Quantlab to state plausible claims against Kuharsky and Maravina for infringing its exclusive rights of reproduction under the Copyright Act.[1]  Nor, contrary to Kuharsky and

---

[1]   *See, Maverick Recording Studios v. Harper*, No. 08-51194, 2010 U.S. App. LEXIS 3912, at *11 (5th Cir. Feb. 25, 2010) ("Harper infringed Plaintiff's exclusive right to reproduce their copyrighted works by downloading the 37 audio files to her computer without authorization").  Unpublished cases are attached hereto as Exhibit A.

Maravina's unsupported contentions, are these legal principles somehow inapplicable when an employee makes the unauthorized copies and steals them.  Who made the copies and what was ultimately done with them are irrelevant to Quantlab's claim for infringement of its reproduction rights.  This type of infringement requires only unauthorized copying of copyright-protected information, which Quantlab has more than sufficiently pleaded.

Quantlab has likewise met its Rule 8 pleading obligations regarding its CFAA claims against Kuharsky.  The Motion to Dismiss contends that Quantlab has not alleged adequate facts to plausibly establish the CFAA's "protected computer" and "loss" elements.  But the Original Complaint allegations, the reasonable inferences drawn therefrom, and the applicable case law all show that Quantlab has more than sufficiently pleaded these elements of its CFAA claim. Kuharsky's statute of limitations arguments fare no better.  CFAA claims may accrue from the date that the damage is discovered, and there is simply nothing on the face of the Original Complaint to show that Quantlab's discovery of the damage caused by Kuharsky occurred more than two years before this lawsuit was filed.  Quantlab's CFAA claims against Kuharsky are not time-barred and have been sufficiently pleaded.

## V.
## ARGUMENT AND AUTHORITIES

### A.    Quantlab Has Raised Plausible Claims for Relief Under the Copyright Act

Kuharsky and Maravina seek dismissal of Quantlab's copyright infringement claim by alleging that Quantlab has not pleaded any conduct that interferes with its exclusive rights under the Copyright Act.  (Motion to Dismiss, pp. 7-10).  This is clearly wrong.  Under the Copyright Act, an infringement claim consists of two elements—"ownership of the copyrighted material" and unauthorized "copying."  *See Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790-91 (5th Cir. 1999) (internal citations omitted).  Kuharsky and Maravina do not challenge Quantlab's

ownership of the copyrighted proprietary software (*i.e.*, computer source code).  As to copying, even a cursory reading of the Original Complaint reveals that Quantlab repeatedly alleges that Kuharsky and Maravina infringed Quantlab's exclusive reproduction right by engaging in unauthorized copying of Quantlab's proprietary computer code.  *See id.* at 791 (discussing that unauthorized copying infringes on the copyright owner's exclusive right to reproduce its software).

More specifically, Quantlab has pleaded that, under Section 2(c) of their respective Proprietary Information Agreements, Kuharsky and Maravina each agreed to "not make copies of or otherwise reproduce Confidential Information" unless for Quantlab's legitimate business purpose.  (Original Complaint, ¶ 31) (emphasis added).  As the below table shows, the Original Complaint contains numerous factual allegations that Kuharsky and Maravina did exactly what these agreements made unauthorized—the copying of Quantlab's highly confidential and proprietary software, including computer source code, for their own purposes.  The Motion to Dismiss selectively ignores these allegations, which, on their face, leave no doubt that Quantlab has sufficiently alleged unauthorized copying:

| Paragraph | Factual Allegations in Quantlab's Complaint |
|:---:|:---|
| 43 | "Quantlab has now obtained information that Godlevsky and Kuharsky copied and absconded with highly confidential and proprietary information, including source code, belonging to Quantlab." |
| 43, Footnote 3 | "Upon information and belief, Godlevsky and Kuharsky copied and absconded with this confidential and proprietary information prior to their termination from QLF." |

| 48 | "At the end of December 2007, <u>Maravina</u> entered the QLF office late at night—outside of her regular working hours and for no legitimate purpose—and <u>made unauthorized copies of confidential and proprietary information</u> relating to Quantlab's trading strategies and trading technology. <u>Maravina copied</u> this information onto a QLF portable hard drive and then removed that portable hard drive from the QLF office." |
|---|---|
| 50 | "<u>Maravina's</u> QLF computer revealed evidence of her <u>unauthorized copying</u> activity and use of the portable hard drive." |
| 54 | "When <u>Maravina downloaded</u> to a portable hard drive, and then absconded with, some of the <u>proprietary software (i.e., the computer code)</u> that implements Quantlab's trading strategies and technology, she committed copyright infringement." |
| 55 | "Upon information and belief, before <u>Maravina copied this computer code</u>, <u>Kuharsky</u>, Godlevsky, and An had themselves also <u>copied significant portions of the proprietary computer code</u> used for implementing Quantlab's trading strategies and technology." |

To the extent that Kuharsky and Maravina may try to argue that the act of "downloading" proprietary computer code to a portable hard drive does not constitute copying or reproduction under the Copyright Act, the Fifth Circuit and multiple other federal courts have held that the unauthorized downloading of files, including software, are acts of copyright infringement.  *See Maverick Recording Co. v. Harper*, No. 08-51194, 2010 U.S. App. LEXIS 3912, at *11 (5th Cir. Feb. 25, 2010) (holding that defendant infringed plaintiff's exclusive right to reproduce when she <u>downloaded</u> audio files to her computer without authorization); *Alcatel*, 166 F.3d at 791 (finding that distribution of a microprocessor that reproduced an operating system by <u>downloading</u> caused users to violate plaintiff's exclusive right to reproduce its software); *BMG Music v. Gonzalez*, 430 F.3d 888, 889 (7th Cir. 2005) (holding that defendant infringed copyrights by <u>downloading</u> music through a file-sharing network); *A&M Records, Inc. v. Napster, Inc.*, 238 F.3d 1004, 1014 (9th Cir. 2001) (concluding that the <u>downloading</u> of files containing copyrighted music violated plaintiff's reproduction rights); *see also MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511,

519 (9th Cir. 1993) (holding that, because a copy created in RAM can be "perceived, reproduced, or otherwise communicated, . . . the <u>loading</u> of software into the computer's random access memory creates a copy under the Copyright Act").

As a last-ditch attempt to divert the Court away from the well-established law, Kuharsky and Maravina mischaracterize *Starnet Development v. Fabiano*, as standing for the proposition that copyright infringement claims cannot encompass "theft of a computer file by an employee." (Motion to Dismiss, pp. 7-10). *Starnet* is not Fifth Circuit authority and, in fact, would directly contradict the above-cited cases from the Fifth Circuit and other appellate courts if it actually stood for what Kuharsky and Maravina say it does. To be sure, *Starnet* does not stand for the proposition asserted by these defendants in the Motion to Dismiss. The defendant in *Starnet*, Fabiano, was an employee of Starnet who—unlike Kuharsky and Maravina—was authorized to make copies of Starnet's copyrighted materials. No. 96-C-0339-S, 1996 U.S. Dist. LEXIS 21340, at *5 (D. Utah July 26, 1996). Fabiano left Starnet and, upon doing so, took a computer disk containing copyrighted source code. *Id.* Fabiano claimed that he never "copied, accessed, used, disclosed, or displayed" the source code after his employment ended. *Id.* at *5-6. Although Starnet alleged that Fabiano was not authorized to take the computer disk with him, it <u>never alleged that Fabiano had engaged in any unauthorized copying</u>. *Id.* Based on the allegations before it, the district court correctly held that Fabiano's mere "possession" of the disk containing the copyrighted source code was conversion or a breach of contract, but not copyright infringement. *Id.* Unlike the allegations in *Starnet*, Quantlab has alleged much more than mere <u>possession</u> of its copyright-protected information; Quantlab has alleged that Kuharsky and Maravina engaged in unauthorized <u>copying</u> that plainly raises claims under the Copyright Act.

The above-cited cases and the facts alleged in the Original Complaint make clear that Quantlab has sufficiently stated copyright infringement claims against Kuharsky and Maravina.

**B.**   **Quantlab Has Raised Plausible CFAA Claims Against Kuharsky**

The Original Complaint contains sufficient factual allegations to raise a plausible CFAA claim against Kuharsky.  Kuharsky contends otherwise, claiming that Quantlab has not alleged adequate facts regarding the "protected computer" and "loss" elements under the CFAA. Kuharsky also argues that Quantlab's CFAA claim is barred by limitations on the face of the Original Complaint.  These arguments all fail for the reasons discussed below.

**1.**   **The Allegations in Quantlab's Original Complaint Are Sufficient to Plausibly Establish a "Protected Computer"**

Kuharsky argues that Quantlab has not alleged adequate facts to support the "protected computer" element of the CFAA claims against him.  Under the CFAA, a protected computer is one which is "used in interstate or foreign commerce or communication."  *Modis, Inc. v. Bardelli*, 531 F. Supp. 2d 314, 318 (D. Conn. 2008); *see* 18 U.S.C. § 1030(e)(2)(B).  "This is not difficult to allege."  *Patrick Patterson Custom Homes, Inc. v. Bach*, 586 F. Supp. 2d 1026, 1032 (N.D. Ill. 2008) (denying Rule 12(b)(6) motion and collecting cases); *United States v. Kim*, Crim. No. H-09-302, 2009 U.S. Dist. LEXIS 121871, at *26 (S.D. Tex. Dec. 24, 2009) ("The Fifth Circuit has held that transmitting information via the Internet constitutes interstate commerce."). Indeed, the allegations in the Original Complaint (and the reasonable inferences drawn from those allegations) more than plausibly establish that Quantlab's computer systems are used in interstate and foreign commerce and, therefore, are protected computers.

Quantlab does not explicitly describe in a single paragraph all the exact ways in which its computer systems engage in interstate or foreign commerce or communication, but Quantlab does state:

> Quantlab's proprietary trading *strategies* and trading *technology* are used to execute high frequency trades in different assets classes on financial markets all over the world.

(Original Complaint, ¶ 18).  The Original Complaint then describes the trading technology as including "internally written software and confidential hardware configurations that are combined to implement the *strategies* and execute trades on a high-frequency basis."  (*Id.* ¶ 19).  Obviously, the hardware being referenced includes Quantlab's computers.  The analysis should end here, as pleading more is simply not required.  Quantlab should not be required to provide detailed descriptions of how its interstate commerce transactions work to state a CFAA claim.

The relevant analysis is whether the Court can reasonably infer from the facts pleaded that there is a plausible basis for concluding that Quantlab's computer systems, as described in the Original Complaint, may meet the interstate or foreign commerce requirement.  *See Leatherman v. Tarrant County NIC Unit*, 507 U.S. 163, 164 (1993) (holding that, on a Rule 12 motion, courts must indulge all reasonable factual inferences in the plaintiff's favor).  Other district courts have similarly relied upon reasonable inferences to find the CFAA's protected computer element satisfied, including when the relevant allegations were merely:

- that the computer was used in the plaintiff's business and plaintiff operated offices in two states;[2]

- that the computers were connected to the Internet and used in conjunction with the plaintiff law firm's business;[3] and

- that the computers were used in the defendant's business of producing and selling visual acuity systems that were ultimately sold across state lines.[4]

Quantlab's Original Complaint alleges the following facts, which clearly raise the reasonable

---

[2]   *Modis, Inc.*, 531 F. Supp. 2d at 318-19.

[3]   *Becker v. Toca*, Civ. No. 07-7202(L)(3), 2008 U.S. Dist. LEXIS 89123, at *16 (E.D. La. Sept. 26, 2008).

[4]   *Nordstrom Consulting, Inc. v. M & S Tech., Inc.*, No. 06-C-3234, 2008 U.S. Dist. LEXIS 17259, at *33 (N.D. Ill. March 4, 2008).

inference that Quantlab's computer systems are used to engage in business and communications across state and international lines:

| Paragraph | Factual Allegations in Quantlab's Complaint |
|-----------|---------------------------------------------|
| 3 | "Quantlab and its affiliated companies have grown to become a significant presence on world financial markets." |
| 3 | "[H]igh frequency trading organizations (such as Quantlab and its affiliates) are the major source of liquidity for retail and institutional investors in the United States." |
| 7 | "Plaintiff QLT [Quantlab Technologies] is an international business company . . . with its principal place of business in Bermuda." |
| 8 | "Plaintiff QLF [Quantlab Financial] is a limited liability company . . . with its principal place of business in Houston, Texas." |
| 17 | "QLT owns certain proprietary trading software which it hires QLF to research, develop, enhance, and maintain." |
| 18 | "Quantlab's proprietary trading strategies and trading technology are used to execute high frequency trades in different asset classes on financial markets all over the world." |
| 22 | "[P]ursuant to a software development, enhancement, and maintenance agreement with QLT, QLF has internally developed this confidential information through years of hard work, trial and error, and at the expense of more than $100 million." |
| 27 | "As Quantitative Research Scientists, Godlevsky and Kuharsky worked on, among other things, the development, maintenance, updating, and enhancement of Quantlab's proprietary trading strategies." |
| 56 | "QLF owns some of the computer code copied by Defendants. Additional computer code copied by Defendants is owned by QLT, which paid QLF a fee to develop the computer code on its behalf for the exclusive use and possession of Quantlab." |

| | |
|---|---|
| 87 | "To facilitate their theft of Quantlab's electronically-stored trade secrets and confidential information, Kuharsky, Godlevsky, and An accessed Quantlab's computer systems, which are used in interstate commerce and communication, without authorization and/or by exceeding their authorized access." |

In light of QLT's principal place of business being in Bermuda, the software development agreement between QLF in Houston and QLT in Bermuda, QLT's part ownership of the trading strategies and technology, storage of that confidential and proprietary information on Quantlab's computer systems, and the ultimate use of the strategies and technology to execute automated trades "on financial markets all over the world," there should be little doubt that Quantlab has adequately pleaded that its computer systems are used in interstate and foreign commerce. *See Modis, Inc.*, 531 F. Supp. 2d at 318-19 (denying Rule 12(b)(6) motion where plaintiff adequately pleaded that its computers were used in interstate commerce through allegations that plaintiff had offices in different states and used computers in connection with its business). Quantlab has sufficiently pleaded a "protected computer" under the CFAA.

### 2. The Allegations in Quantlab's Original Complaint Are Sufficient to Plausibly Establish a Cognizable "Loss" Under the CFAA

Kuharsky also argues that Quantlab has not adequately pleaded the "loss" element of the CFAA claims against him. The well-reasoned case law and the allegations contained in the Original Complaint demonstrate that Kuharsky is incorrect.

#### a. Loss Flowing from Kuharsky's Theft of Trade Secrets and Confidential Information from Quantlab's Computers

Kuharsky's sole argument here is that Quantlab's pleaded "financial losses resulting from the alleged theft of confidential information" from Quantlab's computers "do not constitute 'losses' under the Act." (*See* Motion to Dismiss, p. 12; *see also* Original Complaint, ¶ 88). Quantlab contends that this is an incorrect view of the law, which has not been adopted by the

Fifth Circuit or district courts in Texas and which is <u>contrary</u> to the decisions of many federal courts. The District of Kansas' recent decision in *Resource Center for Independent Living v. Ability Resources* provides a good example of such decisions. 534 F. Supp. 2d 1204 (D. Kan. 2008). In that case, the district court denied a Rule 12(b)(6) motion, specifically finding that plaintiff's allegations of losses from the defendants' theft of its confidential and proprietary were sufficient to plead "loss" under the CFAA:

> Plaintiff's allegations of loss consist of the loss of confidential and proprietary information for the benefit of the defendants' competing enterprise. Other courts have held that allegations of loss similar to those alleged in plaintiff's complaint are sufficient to state a cause of action under the CFAA and defeat a motion to dismiss.

*Id.* at 1211. District courts in Illinois and California, among others, also have recently denied Rule 12(b)(6) motions involving losses similar to those that Quantlab has explicitly alleged in the Original Complaint. *See C.H. Robinson Worldwide, Inc. v. Command Transp., LLC*, No. 05-C-3401, 2005 U.S. Dist. LEXIS 28063, at *8-10 (N.D. Ill. Nov. 16, 2005) (denying motion to dismiss where plaintiff sufficiently pleaded "loss" under the CFAA by alleging that it suffered "loss in value of trade secrets" and "loss of competitive advantage."); *see also Therapeutic Research Faculty v. NBTY, Inc.*, 488 F. Supp. 2d 991, 997 (E.D. Cal. 2007) (denying motion to dismiss where plaintiff alleged losses of revenue resulting from defendants' unauthorized access on plaintiff's computer).

These recent decisions demonstrate that "loss" under the CFAA may include financial losses not strictly limited, as Kuharsky contends they must be, to those caused by an interruption in service of the computers at issue. In fact, in *Costar Realty Information v. Alliance Valuation Group*, a federal district court in Maryland specifically rejected the same argument Kuharsky is making here to deny the defendants' Rule 12(b)(6) motion based on allegations of "loss" under CFAA:

> [Defendants] urge that loss should be interpreted as a loss of interruption of service as it states in the statute pursuant to the 2001 Amendment of CFAA.    [Defendants] further argue that CoStar did not suffer an interruption in service . . . .   CoStar argues that [Defendants] have caused damages due to the loss of revenue from the failure to recover license fees. CoStar further argues that the term loss is not limited to interruption in service.  The Court agrees with CoStar in that it has adequately described its losses within the meaning of the statute.

*CoStar Realty Info., Inc. v. Alliance Valuation Group*, 612 F. Supp. 2d 660, 674 (S.D. Md. 2009).  As made clear from the above-discussed cases, Quantlab's allegations that it has suffered financial losses resulting from Kuharsky's theft of confidential and trade secret information from its computer systems may constitute "loss" under the CFAA.  Quantlab has sufficiently pleaded its CFAA claim against Kuharsky.

### b. Loss through Costs to Investigate and Respond to Kuharsky's CFAA Violations, Such as Costs of Forensic Analysis and Restoration of Data

Losses flowing from Kuharsky's direct theft of Quantlab's trade secrets and confidential information is not Quantlab's only loss as a result of Kuharsky's CFAA violations.  Quantlab also has incurred substantial investigative and responsive costs as a result of Maravina's theft of proprietary software and computer code, which Quantlab has pleaded that Kuharsky aided and abetted.  (Original Complaint, ¶ 89); *see Southwest Airlines Co. v. BoardFirst, L.L.C.*, Civ. No. 3:06-CV-0891-B, 2007 U.S. Dist. LEXIS 96230, at *47 (N.D. Tex. Sept. 12, 2007) (opining that "investigative and responsive costs fit within the concept of 'loss' as used in the CFAA").

Specifically, Quantlab has alleged that, upon recovering the portable hard drive Maravina used to copy and steal its source code and other proprietary materials from its computer system, Quantlab discovered that "all of the files had been deleted" and commissioned a forensic examination that investigated and revealed the contents of the erased files.  (Original Complaint, ¶ 50).  The costs of such a forensic examination clearly constitutes "loss" under CFAA.  *See, e.g., Forge Industrial Staffing, Inc. v. De la Fuente*, No. 06 C 3848, 2006 U.S. Dist. LEXIS

75286, *19 (N.D. Ill. Oct. 16, 2006) (denying motion to dismiss CFAA claim where plaintiff sufficiently pleaded loss through allegations that it hired a "computer examiner to investigate, analyze, and attempt to recover destroyed data").  As a result, Quantlab has sufficiently pleaded loss under the CFAA, and Kuharsky's motion to dismiss the CFAA claim against him should denied.

### 3.   Quantlab's CFAA Claim Is Not Barred By Limitations on the Face of the Original Complaint

Kuharsky next contends that Quantlab's CFAA claim against him is barred by the statute of limitations.  This argument, like Kuharsky's others, is without merit.  When a Rule 12(b)(6) motion seeks dismissal based on limitations, "such a motion cannot be granted unless the limitations defense is clear on the face of the complaint."  *Patel v. Pac. Life Ins. Co.*, Civ. A. No. 3:08-CV-0249-B, 2009 U.S. Dist. LEXIS 44105, *28 (N.D. Tex. May 22, 2009).  The face of Quantlab's Original Complaint provides no basis whatsoever for Kuharsky to establish that he is entitled to dismissal of the CFAA claims on limitations grounds.

In the Motion to Dismiss, Kuharsky acknowledges that claims under the CFAA are subject to a discovery rule and, more specifically, that the limitations period may properly be measured from "the date of the discovery of the damage."  (Motion to Dismiss, p. 16); 18 U.S.C. § 1030(g) ("No action may be brought under this subsection unless begun within 2 years of the date of the act complained of *or the date of the discovery of the damage*.") (emphasis added).  It is telling that, while acknowledging the existence of this part of the CFAA's limitations provision, Kuharsky fails to discuss or apply it to the claims against him.  This is because there is simply <u>nothing</u> in the Original Complaint to establish that Quantlab discovered the damage caused by Kuharsky's CFAA violations prior to December 19, 2007—two years before this suit was filed.  In fact, the Original Complaint suggests the opposite by stating in Paragraph 43:

> Quantlab has <u>now</u> obtained information that . . . Kuharsky copied and absconded with highly confidential and proprietary information, including source code, belonging to SXP.[5]

(Original Complaint, ¶ 43) (emphasis added).  Paragraph 88 makes clear that Quantlab's CFAA claims are based, at least in part, on Kuharsky's actions to steal the information described in Paragraph 43 from Quantlab's computers, but provides no insight regarding when Quantlab discovered the damage caused by these actions.  (*Id.* ¶ 88).  Nor does any other provision of the Original Complaint establish when Quantlab's limitations period began to run.

Finally, Kuharsky ignores the fact that his fraud—as pleaded in the Original Complaint— would toll the statute of limitations.  In Paragraph 46 of the Original Complaint, among other places, Quantlab describes fraudulent representations by Kuharsky (and his attorney acting as his agent) that Quantlab relied upon in foregoing discovery efforts in prior litigation that may have revealed the conspiracy earlier.  Specifically, Quantlab has pleaded that Kuharsky made fraudulent representations and failed to disclose information he had a fiduciary duty to disclose (constructive fraud) to hide his unlawful activities and the activities of the conspiracy in which he was participating, which included unauthorized access to Quantlab's computers, copying of programs and code, and removal of electronic files.  (Original Complaint, ¶ 46).

Kuharsky's limitations defense argument must go beyond the face of the pleadings and, therefore, is premature.  Kuharsky cannot establish his limitations defense for purposes of Rule 12(b)(6) because the face of the Original Complaint does not establish when Quantlab's CFAA claims accrued and because the facts related to tolling have not been developed.  *See Patel*, 2009

---

[5]   Footnote 3 to the Original Complaint further demonstrates that Kuharsky's theft of Quantlab's confidential and proprietary information from Quantlab's computers was not discovered until sometime <u>after</u> Kuharsky's employment ended.  (*See* Original Complaint, ¶ 43, n.3).  The footnote relies only "upon information and belief" to allege that these actions by Kuharsky occurred before his employment with Quantlab was terminated.  (*Id.*).  Had Quantlab discovered that wrongdoing or the resulting damage while Kuharsky was still a Quantlab employee, Quantlab obviously would have relied on its direct knowledge rather than any information and belief.

U.S. Dist. LEXIS 44105, at *28 (denying Rule 12 motion to dismiss when "the affirmative defense of statute of limitations was not clear from the face of Plaintiff's First Amended Complaint"); *United States v. Rutherford Oil Corp.*, Civ. No. G-08-0231, 2009 U.S. Dist. LEXIS 40233, at *13-14 (S.D. Tex. May 13, 2009) (Rosenthal, J.) (denying Rule 12 motion to dismiss because "when the cause of action accrued and whether the limitations period is tolled . . . cannot be determined by the facts alleged in the pleadings"). The motion to dismiss Quantlab's CFAA claim against Kuharsky should be denied.

**C.     Even If Quantlab *Had* Failed to Sufficiently Plead a Claim, the Court Should Afford Quantlab the Opportunity to Re-Plead**

Courts should not dismiss a case under Rule 12(b)(6) before affording the plaintiff at least one opportunity to cure pleading deficiencies "when it appears that a more carefully drafted complaint might state a claim upon which relief could be granted." *Friedlander v. C. Nims*, 755 F.2d 810, 813 (11th Cir. 1985). Nothing in the alleged defects identified by the movants is incurable. To be sure, if afforded the opportunity, Quantlab can assert more specific facts establishing all elements necessary for obtaining relief under the Copyright Act and the CFAA—for example, including further and more detailed factual allegations of Quantlab's "losses" in excess of $5,000 and that Quantlab's computer systems are "protected computers" under the CFAA. Therefore, even if the Court were to find that Quantlab's Copyright Act and CFAA claims are not sufficiently pleaded, leave to re-plead—not dismissal—would be the appropriate remedy. *See DB Western, Inc.—Texas v. Invista, S.A. R.L.*, Civ. No. H-09-2750, 2009 U.S. Dist. LEXIS 94977, at *5-7 (S.D. Tex. Oct. 13, 2009) (holding that complaint did not comply with Rule 9(b)'s heightened pleading requirement and, in lieu of dismissal, ordering plaintiff to replead within ten days).

**VI.**
**<u>CONCLUSION</u>**

For the reasons stated above, Quantlab respectfully requests that the Court deny the Motion to Dismiss (Docket Entry 27) filed by Kuharsky and Maravina.  In the alternative, if the Court finds that a challenged claim is not sufficiently pleaded, Quantlab requests the opportunity to replead the claim in lieu of dismissal.

Respectfully submitted,

*/s/ Allan H. Neighbors, IV*

*Of Counsel:*

**Allan H. Neighbors, IV**
(Attorney-in-Charge)
Texas Bar No. 24033660
S.D. Tex. Bar No. 34398
LITTLER MENDELSON, P.C.
1301 McKinney, Suite 1900
Houston, Texas 77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)
aneighbors@littler.com

**Tim McInturf**
Texas Bar No. 00788020
S.D. Tex. Bar No. 18058
QUANTLAB FINANCIAL, LLC
4200 Montrose Blvd.
Suite 200
Houston, Texas 77006
713.400.5917 (Telephone)
713.400.5918 (Facsimile)
tmcinturf@quantlab.com

**M. Scott McDonald**
Texas Bar No. 13555505
S.D. Tex. Bar No. 9500
smcdonald@littler.com
**Fazila Issa**
Texas Bar No. 24046136
S.D. Tex. Bar No. 566478
fissa@littler.com
**Tim Rybacki**
Texas Bar No. 24056248
S.D. Tex Bar No. 718501
trybacki@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney, Suite 1900
Houston, Texas 77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)

ATTORNEYS FOR PLAINTIFFS
QUANTLAB TECHNOLOGIES LTD.
(BVI) AND QUANTLAB
FINANCIAL, LLC

19

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2010, I electronically filed the foregoing document using the CM/ECF system, which will automatically send notification of this filing to the following counsel of record:

Joseph Y. Ahmad
Todd W. Mensing
Ahmad, Zavitsanos & Anaipakos, P.C.
1221 McKinney Street, Suite 3460
Houston, Texas 77010

ATTORNEYS FOR DEFENDANT/
COUNTER-PLAINTIFF VITALIY GODLEVSKY

Craig Alan Corsini
Lapus, Greiner, Lai & Corsini, L.L.C.
5800 Ranchester, Suite 200
Houston, Texas 77036

ATTORNEYS FOR DEFENDANT PING AN

David Holmes
Law Offices of David Holmes
2950 N. Loop West, Suite 500
Houston, Texas 77092

ATTORNEYS FOR DEFENDANTS
ANNA MARAVINA AND ANDRIY KUHARSKY

James M. Cleary, Jr.
Martin, Disiere, Jefferson & Wisdom, L.L.P.
808 Travis, Suite 1800
Houston, Texas 77002

David G. Hanson
Mark Cameli
Amy L. Lindner
Reinhart Boerner Van Deuren, S.C.
1000 North Water Street, Suite 1700
Milwaukee, Wisconsin 53202

ATTORNEYS FOR DEFENDANTS SXP
ANALYTICS, LLC AND EMMANUEL
MAMALAKIS

*/s/ Allan H. Neighbors, IV*
Allan H. Neighbors, IV

Firmwide:94363306.5 038021.1013

20