# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| QUANTLAB TECHNOLOGIES LTD. | § | |
| (BVI), et. al., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 09-cv-4039 |
| | § | |
| VITALIY GODLEVSKY, et. al., | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court are the following motions against Plaintiffs Quantlab

Technologies, Ltd. (BVI) ("QLT") and Quantlab Financial, LLC ("QLF"):

- Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure
  to State a Claim Upon Which Relief can be Granted, filed by Defendants
  Andriy Kuharsky and Anna Maravina (Doc. No. 27) ("Kuharsky
  Motion"),

- Motion to Dismiss filed by Defendant Vitaliy Godlevsky (Doc. No. 33)
  ("Godlevsky Motion"), and

- Motion for Rule 11 Sanction filed by Defendants SXP Analytics, LLP
  ("SXP") and Emmanuel Mamalakis (Doc. No. 46) ("SXP Motion").

Having considered the parties' filings, all responses and replies thereto, and the

applicable law, the Court finds that the Kuharsky Motion should be granted in part and

denied in part, the Godlevsky Motion should be granted, and the SXP Motion should be

denied.

## I.    BACKGROUND[1]

Plaintiffs QLT and QLF (collectively, "Quantlab") filed a Complaint in this court on December 18, 2009, alleging violations of the Copyright Act, 17 U.S.C. § 101, *et. seq.* ("Copyright Act") and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et. seq.* ("CFAA"), as well as misappropriation of trade secrets, conversion, civil conspiracy, and numerous other state causes of action against various combinations of six named defendants. All the claims in the case arise from an alleged conspiracy by former employees, who later formed or joined a competitor of Quantlab, to steal Quantlab's proprietary algorithms and computer software.

Quantlab and its affiliated companies comprise a high-frequency trading organization which rapidly trades various assets in financial markets around the world. To accomplish its goals, Quantlab developed mathematical models and computer algorithms to forecast the prices of assets and identify improper pricing that would allow profitable trades.  Quantlab translated these models into proprietary computer software and hardware configurations that it uses to execute its trades.  Quantlab considers the models, the algorithms, and the software implementing them to be confidential trade secrets.

Four of the defendants in this case are former employees of Quantlab.  Defendants Kuharsky and Godlevsky hold doctorates in mathematics, and were hired by QLF in 2001 to work on its proprietary models and algorithms.  Defendants Maravina and Ping An are software engineers hired by QLF in 2004 to work on the computer programs implementing those algorithms.  Each employee signed an agreement to keep Quantlab's

---

[1] This section presents the facts of the case as alleged by Quantlab, the non-movant in all motions addressed herein. (*See, generally*, Doc. No. 1.)

proprietary information confidential and to refrain from copying or accessing the software except for legitimate business purposes.

On March 9, 2007, QLF terminated Kuharsky and Godlevsky. According to the Complaint, before they left, each of them copied confidential information from Quantlab's computer system, including some or all of the source code for Quantlab's proprietary software.  Some time after leaving, Kuharsky and Godlevsky joined with defendant Mamalakis to form SXP, the corporate defendant named in the Complaint.  In addition, Kuharsky allegedly threatened to disclose Quantlab's trade secrets unless Quantlab paid him $25 million.  Quantlab filed a separate lawsuit in response, asking a Texas state court to enjoin Kuharsky from revealing those secrets. That suit was later non-suited.

An left QLF in May 2007.  According to the Complaint, he also copied software and other confidential materials before leaving, and provided those materials to SXP.  In addition, Quantlab believes that An later became an employee of SXP.

Maravin remained at QLF for several more months, but, according to the Complaint, was persuaded to act as a "sleeper mole" for the conspiracy. (Doc. No. 1, ¶ 47.)  In December, 2007, Maravina allegedly entered Quantlab's offices, copied confidential information from Quantlab computers onto a portable hard drive, and left with the drive.  She never returned to the office, sending her resignation by electronic mail on January 3, 2008.  When Quantlab uncovered evidence of her copying, it demanded that she return the drive with its contents intact.  Although Maravina eventually returned the drive, its contents had been erased.  During its forensic investigation, Quantlab discovered evidence that the drive had contained "large

quantities" of Quantlab's confidential information, and that that information had been transferred to other computers before it was erased. (Doc. No. 1, ¶ 50.)

Quantlab eventually complained to the Federal Bureau of Investigation ("FBI"), which launched an investigation.  On March 5, 2008, the FBI executed search warrants on SXP offices and the homes of Maravina and Kuharsky.  The FBI remains in possession of the computers and drives seized in connection with those warrants.

The instant lawsuit was filed on December 18, 2009. Kuharsky and Maravina filed their Motion to Dismiss. (Doc. No. 27.)  Godlevsky filed an Answer and Counterclaim (Doc. No. 24), then later filed his Motion to Dismiss (Doc. No. 33).  SXP and Mamalakis filed separate Answers (Doc. Nos. 22-23), then later filed their joint Motion for Rule 11 Sanctions (Doc. No. 46).  All motions have been fully briefed.

## II.    MOTION TO DISMISS STANDARDS

### A.  Federal Rule 12(b)(1)

The court must dismiss a case when the plaintiff fails to establish subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking."  *Stockman v. Federal Election Com'n*, 138 F.3d 144, 151 (5th Cir. 1998).  A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.  *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).  The burden of establishing federal jurisdiction rests on the party seeking the federal forum.  *Stockman*, 138 F.3d at 151.

**B.  Federal Rules 12(b)(6) and 12(c)**

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff."  *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).

In considering a motion to dismiss for failure to state a claim, a district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*,  224 F.3d 496, 499 (5th Cir. 2000). A court can also refer to matters of public record when deciding a motion to dismiss. *Chauhan v. Formosa Plastics Corp*., 212 F.3d 595, 595 (5th Cir. 2000).

A motion under Rule 12(b) must be filed before any responsive pleading. FED. R. CIV. P. 12(b). However, a court may treat a motion to dismiss under Rule 12(b)(6), untimely filed after a responsive pleading, as a motion for judgment on the pleadings under Rule 12(c) based on a failure to state a claim on which relief may be granted. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). In the Fifth Circuit, the standard

for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). Judgment on the pleadings is appropriate only if material facts are not in dispute and questions of law are all that remain. *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998).

## III.   KUHARSKY MOTION TO DISMISS

In the Kuharsky Motion, defendants Kuharsky and Maravina move to dismiss all claims against them, in three stages.   First, they move to dismiss the copyright infringement claims against them for failure to state a claim upon which relief can be granted.   Second, Kuharsky moves to dismiss the CFAA claim against him for failure to state a claim upon which relief can be granted.   Finally, having sought dismissal of the only federal questions presented in the Complaint, Kuharsky moves to dismiss the other eleven state law claims against him for lack of supplemental jurisdiction.   The Court will address each of these arguments in turn.

### A.  Copyright Infringement Claims

In its Complaint, Quantlab alleges that it owns valid and registered copyrights in its proprietary computer code, and that both Maravina and Kuharsky infringed those copyrights by making unauthorized copies of the code. (Doc. No. 1, ¶¶ 54-59.) Kuharsky and Maravina move to dismiss this claim under Rule 12(b)(6), arguing that Quantlab's claim is actually one for conversion of the computer files or breach of contract rather than infringement of its exclusive rights under the Copyright Act. Quantlab responds that copyright infringement, conversion, and breach of contract are distinct claims with separate elements, and that it has adequately alleged all three.

**1.  Copying computer code without authorization infringes the owner's exclusive right to reproduce the work**

Section 102 of the Copyright Act extends copyright protection to a wide range of "original works of authorship," including literary works. 17 U.S.C. § 102(a). These works are protected when "fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated, either directly, or with the aid of a machine or device." *Id*. Section 106 grants the owner of a copyright several exclusive rights, including the right to "reproduce the copyrighted work in copies." 17 U.S.C. § 106(1). Sections 107 through 122 contain various limitations on these rights. *Id*. at §§ 107-22.  Finally, section 501(a) provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 . . . is an infringer of the copyright." 17 U.S.C. 501(a).

Computer code[2] is among the types of works subject to copyright protection. *Vault Corp. v. Quaid Software, Ltd.*, 847 F.2d 255, 259 (5th Cir. 1988) (noting that a 1976 amendment to the Copyright Act "include[d] computer programs in the definition of protectable literary works"). A party infringes on the owner's exclusive right to reproduce the copyrighted work when the party copies computer code without the owner's authorization. *See Stenograph L.L.C. v. Bossard Associates, Inc.*, 144 F.3d 96, 100 (D.C. Cir. 1998) (holding that installing copyrighted software without permission created a copy of the software on the computer's disk drive or in its memory and thus infringed the copyright); *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th

---

[2] Section 101 of the Copyright Act defines a computer program as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result. 17 U.S.C. § 101. These instructions exist in at least two forms. Source code is a set of instructions written by a programmer in a high-level computer language such as BASIC or C++. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir 1995). These instructions are then translated into object code, which is a series of 1's and 0's that ultimately directs the operation of the computer. *Id*. The Copyright Act extends protection to both forms of "computer code." *Id*.

Cir. 1993) ("[T]he loading of copyrighted computer software from a storage medium . . . into the memory of a [computer] causes a copy to be made. In the absence of ownership of the copyright or express permission by license, such acts constitute copyright infringement.").

Kuharsky and Maravina argue that this straightforward reading of the Copyright Act should not apply in cases where the alleged infringer was an employee of the copyright owner, because such cases should properly be regarded as state law claims for conversion or breach of contract. To do otherwise, they insist, would allow employers to federalize trade secret litigation through artful pleading. However, Kuharsky and Maravina do not cite any authority supporting an employee/non-employee distinction in copyright law.[3] As a result, the Court holds that the Copyright Act does not distinguish between employees and non-employees. Rather, it distinguishes between authorized copying and unauthorized copying.

### 2. Quantlab has alleged that Maravina and Kuharsky copied protected computer code without authorization

The parties do not dispute that Quantlab owns the copyright to proprietary computer code used in its trading business. Therefore, under section 106 of the Copyright Act, Quantlab has the exclusive right to reproduce, or to authorize the reproduction of, that computer code. *See* 17 U.S.C. § 106(a).

---

[3] *Starnet Dev., Inc. v. Fabiano*, No. 96-C-0339-S, 1996 WL 529459 (D. Utah 1996), relied upon by defendants Kuharsky and Maravina, does not address the employee status of an infringer. In *Starnet*, the defendant, a former employee of the plaintiff, "was authorized to make copies of copyrighted materials," but allegedly retained some of those copies after his termination. *Id.* at *2. The court dismissed the copyright infringement claim because the plaintiff had produced no evidence of "*unauthorized* copying, modification, use, publication, or [other infringement] upon plaintiff's alleged exclusive rights to a copyrighted work." *Id.* (emphasis added). In other words, *Starnet* merely supports the proposition that copying a work with the authorization of the copyright owner does not infringe on that owner's exclusive rights.

Quantlab alleges that Maravina downloaded its proprietary computer code onto a portable hard drive, which she later removed from Quantlab's premises. (Doc. No. 1, ¶ 54.) Quantlab also alleges that Kuharsky "copied significant portions of the proprietary computer code," although it does not specify the form in which he copied it. (Doc. No. 1, ¶ 55.) Furthermore, Quantlab alleges that neither Maravina nor Kuharsky were authorized to make these copies, pointing to Proprietary Information Agreements signed by both that withheld such authorization. (Doc. No. 1, ¶ 31.) The Court finds that these allegations, viewed in the light most favorable to the plaintiff, accuse Maravina and Kuharsky of reproducing Quantlab's copyrighted computer code without Quantlab's authorization, and therefore state a claim of copyright infringement sufficient to withstand a motion under Rule 12(b)(6).

## B.  CFAA[4] Claim

The CFAA prohibits, *inter alia*, unauthorized access to a "protected computer"[5] for the purposes of obtaining information, causing damage, or perpetrating fraud. 18 U.S.C. § 1030(a)(2), (a)(4), (a)(5). Although the CFAA is a criminal statute, subsection (g) provides a private right of action when one of five factors is present. 18 U.S.C. § 1030(g).  The only factor potentially present in this case is "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."[6] 18 U.S.C. § 1030(a)(5)(B)(i).

In its Complaint, Quantlab alleges that a violation of the CFAA occurred when Kuharsky accessed its computers to misappropriate its trade secrets and confidential

---

[4] All references to the CFAA refer to the version of 18 U.S.C. § 1030 in effect from 2002 through Sept. 25, 2008, which includes all dates relevant to the events of this case.

[5] *See infra* part III.B.2 for a definition and discussion of the term "protected computer."

[6] The other factors involve interference with medical diagnosis, physical injuries, threats to public health or safety, and intrusion into government computers, none of which are alleged in this case.  *See* 18 U.S.C. 1030(g); 18 U.S.C. 1030(a)(5)(B)(ii)-(v).

information. It alleges a second violation when Kuharsky aided and abetted a similar action by Maravina, though it does not assert a CFAA claim against Maravina herself based on those events.

Kuharsky argues that the CFAA claim should be dismissed because the statute of limitations had run before the claim was filed, because the Complaint does not allege access to a "protected computer," and because the Complaint does not allege a cognizable "loss." Quantlab disputes each argument, but requests leave to amend the Complaint if any of Kuharsky's arguments succeed. The Court will consider each of these arguments in turn.

### 1.  The Complaint does not establish that the statute of limitations has run

A civil claim under the CFAA must be brought within two years after the owner discovers the unauthorized access. 18 U.S.C. § 1030(g) ("No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage.").  "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

Kuharsky claims that Quantlab's suit is time-barred because both his alleged copying of Quantlab's information and Quantlab's discovery of that copying must have occurred more than two years before this suit was filed. As Kuharsky correctly notes, the Complaint alleges that Quantlab terminated Kuharsky more than two years before filing suit, and it does not allege that Kuharsky had access to Quantlab's computers after his termination.  Therefore, Kuharsky contends, the alleged access to Quantlab's computer system must have occurred more than two years before suit was filed.

However, the Complaint offers no information about when Quantlab discovered Kuharsky's access to the computer system. Kuharsky argues that Quantlab must have discovered the alleged intrusion before it filed a separate lawsuit against Kuharsky more than two years earlier. *See Quantlab v. Kuharsky*, No. 2007-34953, (113th Dist. Ct., Harris County, Tex., filed June 8, 2007); (Doc. No. 27, Exhibit A). Because this filing is a matter of public record, attached to the Kuharsky Motion, and mentioned in the Complaint, the Court may consider it in its ruling. *See Chauhan*, 212 F.3d at 595; *Collins*, 224 F.3d at 499. The Court has examined the complaint in *Kuharsky*, and finds that it alleges only that Quantlab was aware of threats by Kuharsky to reveal proprietary information. Because that complaint does not state the source or nature of the proprietary information at issue in that case, and because the alleged conduct was different from that alleged in this case, the Court concludes that that complaint does not establish Quantlab's awareness of an unauthorized access into its computer system at any particular time. As a result, the Court finds no basis in the pleadings to conclude that the statute of limitations had run before suit was filed.

### 2.  The Complaint alleges that a protected computer was accessed

The CFAA defines a "protected computer" as "a computer . . . which is used in interstate or foreign commerce or communication."[7] 18 U.S.C. § 1030(e)(2)(B). Kuharsky argues that the Complaint contains only a conclusory allegation that Quantlab's computers are used in interstate commerce and communication, without any supporting factual allegations.

---

[7] This definition was expanded in the 2008 amendment to include computers "affecting" interstate commerce. Pub. L. No. 110-326, §207, 122 Stat. 3561, 3563. Under the applicable law at the time, the term "protected computer" could also include computers used by financial institutions or the government. 18 U.S.C. § 1030(e)(2)(A). However, use by the government is not alleged, and Quantlab does not claim to meet the definition of a financial institution under § 1030(e)(4).

Quantlab responds that use of its computers in interstate commerce can be inferred from several of the allegations in the Complaint. Specifically, Quantlab alleges that the member company which owns the proprietary software has offices in Bermuda, the member company which writes and maintains the software has offices in Houston, and that Quantlab engages in trading on financial markets around the world using its software. Courts have been willing to infer that computers were used in interstate commerce under similar circumstances. *See Becker v. Toca*, No. 07-7202, 2008 WL 4443050, at *5 (E.D. La. Sept. 26, 2008) (computer was connected to internet and used in law firm business); *Nordstrom Consulting, Inc. v. M & S Tech., Inc.*, No. 06 C 3234, 2008 WL 623660, at *12 (N.D. Ill. March 4, 2008) (computers used in day-to-day business which included selling products across state lines); *Modis, Inc. v. Bardelli*, 531 F. Supp. 2d 314, 318-19 (D. Conn. 2008) (computer was used in plaintiff's business and plaintiff had offices in two different states). Accordingly, the Court finds that the Complaint permits the plausible inference that the computer allegedly accessed by Kuharsky was used in interstate commerce and was therefore a "protected computer" under the CFAA.

### 3. The Complaint does not allege a cognizable loss under CFAA

In its Complaint, Quantlab alleges that a violation of the CFAA occurred when, through "unauthorized access on [Quantlab's] protected computers, Kuharsky . . . intentionally, knowingly, and with intent to defraud, misappropriated valuable trade secrets and confidential information, resulting in more than $5,000 in damage or loss to Quantlab's member companies during a one-year period." (Doc. No. 1, ¶ 88.) It alleges that a second violation occurred when "Kuharsky . . . gave support, encouragement, and

approval for An and Maravina's accessing Quantlab's computer systems without authorization . . . to steal trade secrets and confidential information." (Doc. No. 1, ¶ 89.)

To state a civil claim under the CFAA, Quantlab must allege "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."[8] *See* 18 U.S.C. § 1030(g); 18 U.S.C. § 1030(a)(5)(B)(i). The CFAA defines a "loss" as follows:

> [T]he term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11).  Therefore, the term "loss" encompasses only two types of harm: costs to investigate and respond to a computer intrusion, and costs associated with a service interruption. *See Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 472 (S.D.N.Y. 2004), *aff'd*, 166 F. App'x 559, 562-63 (2d. Cir. 2006).

As Kuharsky correctly notes, Quantlab's assertions of its losses are entirely conclusory.  Quantlab's Complaint does not allege an interruption of service as a result of Kuharsky's actions, nor any investigation or response to Kuharsky's alleged access of the computer. Moreover, while Quantlab does allege that it conducted a forensic examination of the portable hard drive used by Maravina, it fails to allege any costs associated with that examination. As a result, the Court finds that the Complaint does not contain sufficient facts to support a plausible claim of cognizable loss associated with Kuharsky's alleged access of the computer.

---

[8] The other factors involve interference with medical diagnosis, physical injuries, threats to public health or safety, and intrusion into government computers, none of which are alleged in this case.  *See* 18 U.S.C. 1030(g); 18 U.S.C. 1030(a)(5)(B)(ii)-(v).

### 4.  Motion to amend the Complaint

For the reasons given above, the Court finds that Quantlab fails to state a claim upon which relief can be granted under the CFAA.   However, the Court grants Quantlab's request to amend its Complaint rather than dismiss the claim under Rule 12(b)(6).  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.")  The Court believes that additional allegations could cure the existing deficiencies.

### C.  Supplemental Jurisdiction over State Law Claims

Because the Court retains original jurisdiction over the copyright claim, *see* 28 U.S.C. § 1338(a), it retains supplemental jurisdiction over the remaining state law claims against Kuharsky, *see* 28 U.S.C. § 1367(a).   Therefore, the Court denies Kuharsky's request to dismiss the state law claims under Rule 12(b)(1) for lack of subject-matter jurisdiction.

## IV.  GODLEVSKY MOTION TO DISMISS

In its Complaint, Quantlab alleges that Godlevsky and other named defendants have "assumed control, dominion, and ownership over proprietary and confidential information and trade secrets belonging to members of Quantlab" and that these actions amount to conversion. (Doc. No. 1, ¶¶ 79-80.) Godlevsky moves to dismiss this claim under Rule 12(b)(6).  First, Godlevsky argues that these paragraphs do not state a claim for conversion under Texas law because conversion applies only to tangible physical property, and Quantlab has failed to allege that any physical property was taken.

Quantlab responds that Texas law recognizes claims for conversion where intellectual property is merged into a physical medium, and that its Complaint allows a reasonable inference that the information was copied to a physical medium before it was taken. Second, Godlevsky argues that Quantlab has failed to allege that Godlevsky exercised exclusive control over Quantlab's property.  Quantlab responds that Godlevsky's control need not be exclusive if it was inconsistent with Quantlab's rights. Quantlab also requests leave to amend the Complaint if either of Godlevsky's arguments succeed. The Court will consider each of these arguments in turn.

### A.  The Godlevsky Motion Will Be Treated under Rule 12(c)

Before turning to the merits of the Godlevsky Motion, the Court must address a procedural issue. Godlevsky filed his motion to dismiss under Rule 12(b)(6) six weeks after answering the Complaint. The Godlevsky Motion was therefore untimely because a Rule 12(b) motion must be filed before responsive pleadings. FED. R. CIV. P. 12(b). However, the Fifth Circuit has allowed district courts to reach the merits of an untimely Rule 12(b)(6) motion by treating it instead as a motion for judgment on the pleadings under Rule 12(c). *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). Therefore, for the sake of judicial efficiency, this Court will treat the Godlevsky Motion under Rule 12(c).

### B.  Texas Conversion Law Applies Only to Physical Property

To prove conversion under Texas law, the plaintiff must show an "unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights." *Waisath v. Lack's Stores*, 474 S.W.2d 444, 447 (Tex. 1971). Texas courts of appeals have held that conversion applies only to tangible property, not to intangible property. *See Express*

*One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App.—Dallas 2001, no pet.) (holding that a trademark is an intangible property right, and not subject to conversion).

Federal courts have reached the same conclusion. *See Carson v. Dynegy*, 344 F.3d 446, 456 (5th Cir. 2003). In *Carson*, the court was careful to distinguish between conversion claims involving intellectual property and those involving physical property. The court upheld a claim for conversion of a Microsoft Excel spreadsheet "in its tangible forms." *Id*. However, the court denied a claim for conversion of income earned from alleged copyright infringement.  *Id*. The court held that this second claim involved only intellectual property rights, and that the claim was therefore both outside the scope of Texas conversion law and preempted by federal copyright laws. *Id.* at 456-57.

However, intellectual property can be reduced to a tangible form, which can then be subject to conversion. *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 982 (S.D. Tex. 1997).  Such conversion of intangible property has only been allowed in cases where the intangible property is typically represented by a physical document such as a lease or stock certificate. *Id*. In such cases, conversion of the document supports conversion of the intangible property because the intangible property merges with the physical document itself. *See Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex. 1982) (upholding conversion of a lease); *Neles-Jamesbury*, 974 F. Supp. at 982.

By contrast, courts have held that conversion law does not apply to forms of intangible property which do not generally merge with a document. *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App.—Dallas 2001, no pet.) ("Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document

has been converted."); *cf. WesternGeco v. Ion Geophysical Corp.*, No. 09-cv-1827, 2009 WL 3497123, at *3 (S.D. Tex. 2009) (dismissing a conversion claim for confidential information and technology because intellectual property rights did not merge into a physical prototype); *Neles-Jamesbury*, 974 F. Supp. at 982 (holding that Texas law does not recognize a claim of conversion of a trademark); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1569 (S.D. Tex. 1996) (finding that capturing the appearance of plaintiff's trade dress on videotape did not constitute conversion).[9] On similar reasoning, federal courts have held that both copyrights and software are not subject to conversion claims in states retaining a merger requirement.  *See Apparel Bus. Sys., LLC v. Tom James Co.*, No. 06-1092, 2008 WL 858754, at *18 (E.D. Pa. Mar. 28, 2008) ("Copyrights are not the kind of intangible rights that customarily merge in a particular document, and are not subject to conversion[.] . . . Software is not the kind of property subject to a conversion claim, either.")

Quantlab maintains that Texas law should apply to all personal property, tangible or intangible. In support of this position, Quantlab notes that *Waisath*, the leading Texas Supreme Court case, does not expressly impose a requirement of tangibility. *See Waisath*, 474 S.W.2d at 447. However, as Quantlab acknowledges, courts have cited *Waisath* for

---

[9] *Chandler v. Mastercraft Dental Corp. of Tex., Inc.*, 739 S.W.2d 460 (Tex. App.—Fort Worth 1987, writ denied) and *Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756 (Tex. App.—Texarkana 1996), *aff'd in part, rev'd in part*, 939 S.W.2d 146 (Tex. 1997), both cited by Quantlab, are not to the contrary.

In *Chandler*, the defendants were held liable for conversion of physical objects. 739 S.W.2d at 469 ("[Defendant] testified that, . . . among other things, he took two complete manufactured chair units which he later took apart for the purpose of having castings made[,] . . . patterns, molds, castings and other materials."). Furthermore, the *Chandler* court went on to examine the evidence supporting the "fair market value of the converted *goods*." *Id.* (emphasis added).

In *Deaton*, the defendant "download[ed] [plaintiff's] customer list onto a disk for his use." 926 S.W.2d at 762.  The Court of Appeals found that the plaintiff had converted trade secrets, but the evidence of damages was insufficient to support the jury's verdict, and remanded the case for a new trial. 926 S.W.2d at 765.  The Texas Supreme Court reversed in part, holding that the plaintiff take nothing because its evidence of damages was insufficient as a matter of law. 939 S.W.2d at 148. However, neither the Court of Appeals nor the Texas Supreme Court ever addressed the issue of tangibility of the trade secrets.

the very proposition that tangibility is required. (Doc. No. 39, at 8); *see also Carson*, 344 F.3d at 456. Moreover, Quantlab has not cited any Texas case law disposing of the merger requirement, nor is the Court aware of any. Therefore, the Court declines to depart from the interpretation of Texas law shared by the majority of Texas courts and the Fifth Circuit, and holds that conversion applies only to physical property under Texas law.

### C. Quantlab's Complaint Does Not Allege the Taking of Physical Property

Quantlab's claim for conversion alleges that Godlevsky "assumed control, dominion, and ownership over proprietary and confidential information and trade secrets belonging to members of Quantlab." (Compl., Doc. No. 1, ¶ 79.) Elsewhere, the Complaint alleges that Godlevsky stole, or refused to return, "highly confidential and proprietary information" (Doc. No. 1 ¶ 43, 46, 66), "trade secret information" (Doc. No.1 ¶ 76), or "electronically-stored files" (Doc. No. 1 ¶ 85). The Court finds that, with this language, Quantlab alleges the taking of intangible intellectual property, not physical property. The thrust of Quantlab's claim is not that Godlevsky took a physical object such as a hard disk, computer, or CD-ROM. Indeed, Quantlab's Complaint fails to allege that any physical object was taken at all. Rather, Quantlab alleges that Godlevsky misappropriated its intangible intellectual property. Because intellectual property is not subject to conversion under Texas law, Quantlab's conversion claim must therefore fail.

Quantlab argues that its Complaint supports a reasonable inference that Godlevsky used a physical medium to transport its trade secrets and confidential information, and that its confidential information merged with that medium. This argument must also fail, for two reasons. First, Quantlab's intangible intellectual property would not merge with the physical storage medium. Intellectual property,

18

unlike lease rights or stock ownership, is not the type of intangible property that customarily merges with a document.  As a result,  Quantlab's claim for conversion of information and trade secrets falls outside the scope of Texas conversion law, and is pre-empted by the Copyright Act. *See WesternGeco*, 2009 WL 3497123, at *3.  Second, even if the Court were to infer from the Complaint that Godlevsky transferred the information to some physical storage medium, the Complaint fails to allege ownership of that storage medium.  As a result, any conversion claim for the storage medium itself would fail because only "personal property *of another*" is subject to conversion. *See Waisath*, 474 S.W.2d at 447 (emphasis added).

### D.  Motion to Amend the Complaint

For the reasons given above, the Court finds that Quantlab fails to state a claim upon which relief can be granted under Texas conversion law.  However, Quantlab asks leave to amend its conversion claim to "plead more specific facts as to how the material at issue had to be moved into a tangible form in order to be taken [and] what the United States Attorney's Office has indicated about the <u>physical</u> materials it seized containing Quantlab's property." (Doc. No. 39, at 12) (emphasis in original). The Court grants Quantlab's request to amend its Complaint rather than dismiss the conversion claim under Rule 12(b)(6).  *See Great Plains*, 313 F.3d at 329.

### E.  Texas Conversion Law Does Not Require Exclusive Control

Godlevsky also argues that Quantlab must show that Godlevsky exercised exclusive dominion and control over Quantlab's property. Because Godlevsky allegedly created copies of Quantlab's property, but did not destroy it or make it unavailable to Quantlab, Godlevsky argues that this element cannot be satisfied. (*See* Doc. No. 41, at 7 ("Plaintiffs still would have retained the original files. Thus, the making of a copy could

not have amounted to the exclusive dominion and control of the information allegedly copied.").)

However, Texas conversion law does not require exclusive control.  Rather, it recognizes conversion where the defendant exercises dominion and control of the property "to the exclusion of *or inconsistent with* the owner's rights." *Waisath*, 474 S.W.2d at 447 (emphasis added). Quantlab alleges that Godlevsky is in possession of its confidential information, refuses to return the information, and has provided the information to his co-conspirators, all without Quantlab's permission and against its express wishes.  Therefore, the Court finds that Quantlab has adequately alleged that Godlevsky's possession of the information is inconsistent with Quantlab's right to exclusive possession of its property.

## V.    SXP MOTION FOR RULE 11 SANCTION

Defendants SXP and Mamalakis (collectively, "Movants") filed a Motion for Rule 11 Sanctions, contending that the Complaint reveals on its face that allegations against SXP and Mamalakis lack evidentiary support. Movants characterize the language of the factual allegations as vague, ambiguous or conclusory, and argue that the Complaint therefore establishes no factual basis for the claims for relief asserted against them. Quantlab responds that it investigated its allegations and based its filing on both circumstantial and direct evidence linking Mamalakis and SXP to the alleged conspiracy. Moreover, Quantlab contends, it was not required to plead all its evidence, nor to disclose it in advance of discovery.  The Court agrees with Quantlab, and denies the motion for sanctions.

Under Rule 11, the court must identify some federal filing in which the attorney has violated the rule that claims must be well-grounded in fact and in law, and that filings

are not submitted for an improper purpose. FED. R. CIV. P. 11; *Edwards v. General Motors Corp.*, 153 F.3d 242, 245 (5th Cir. 1998). The court must examine "whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The court considers three issues: (1) factual questions regarding the attorney's pre-filing inquiry and factual basis of the filing (2) legal issues of whether the filing is warranted by existing law or a good faith argument, and (3) discretionary issues regarding an appropriate sanction. *See id.* at 399; *St. Amant v. Bernard*, 859 F.2d 379, 381-82 (5th Cir. 1988).

Rule 11 compliance is judged by an objective standard of reasonableness under the circumstances, measured at the time the filing is signed. *Thomas v. Capital Security Servs., Inc.*, 836 F.2d 866, 873-74 (5th Cir. 1988) (en banc). A party should be given some leeway in making allegations about matters that cannot be ascertained easily from extrinsic evidence, as long as its investigation is otherwise reasonable. *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 446 (5th Cir. 1992). Such leeway is particularly appropriate in cases involving conspiracy, where the proof is largely in the hands of the conspirators. *Id.* at 446-47.

Movants argue that the factual allegations in the Complaint deal primarily with the actions of Quantlab's former employees, and that few of the factual allegations unambiguously apply to SXP and Mamalakis. Movants note allegations against "SXP and/or other members of the conspiracy" or "one or more of the co-conspirators" as examples. Movants also point out that Quantlab declined to produce any additional evidence in response to their notice of intent to file this Rule 11 motion, and argue that

the Court should therefore infer that Quantlab has no such evidence, despite investigating its claims for two years. However, Movants offer no direct evidence, other than the language of the Complaint itself, to show that Quantlab's investigation was substandard.

Rule 11 addresses what a party or its attorney knows at the time of filing, not what it chooses to include in those filings.  *See* FED. R. CIV. P. 11. Moreover, Rule 11 does not require the plaintiff to assemble or disclose its facts in advance of the normal discovery process. *See id.*; *Chipanno v. Champion Int'l Corp.*, 702 F.2d 827, 831 (9th Cir. 1983).  Finally, Quantlab's response points to "a sampling" of the evidence known to Quantlab at the time of filing, including evidence currently under seal in a related criminal case, which supports its allegations against SXP and Mamalakis.  Therefore, the Court finds that SXP and Mamalakis have failed to demonstrate that Quantlab's investigation was unreasonable, or that it otherwise failed to meet the requirements of Rule 11.

Furthermore, Movants' reliance on *Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783 (5th Cir. 1986) is misplaced. Even were the Court to consider only the face of the Complaint, the Fifth Circuit's reasoning in *McMullan* does not support sanctions against Quantlab. In *McMullan*, the plaintiffs sued a set of alleged conspirators and five other unrelated persons. 801 F.2d at 786. Four of the unrelated persons were never served with process. *Id*.  With respect to the fifth, the complaint alleged only the defendant's state of residence, with no other factual allegations connecting him to the conspirators or supporting any cause of action. *Id*. The claims against that defendant were dismissed for failure to meet even the liberal pleading standards in Rule 8. *Id*. at 787. As a result, the Fifth Circuit upheld sanctions against the plaintiffs, finding that they had sued that

defendant "without knowing how he fit into the picture, apparently hoping that later discovery would uncover something." *Id.* at 788. Quantlab's Complaint, by contrast, specifically alleges that Mamalakis and two former Quantlab employees conspired to form SXP for the purpose of exploiting trade secrets improperly obtained from Quantlab. It further describes overt acts, including copying of Quantlab's software and source code, allegedly committed by co-conspirators to further this goal. The Court therefore finds that the Complaint adequately describes how SXP and Mamalakis "fit into the picture" of the alleged conspiracy.

Finally, the Court is also mindful that the parties have not yet fully developed the factual record at this stage of these proceedings. Quantlab contends that additional evidence of the alleged conspiracy can only be obtained through the discovery process. Courts have denied sanctions under similar circumstances. *See Smith*, 960 F.2d at 446-47 ("'Because conspiracies are carried out in secret, direct proof of agreement is rare.' . . . [R]ule 11 'must not bar the courthouse door to people who have some support for a complaint, but need discovery to prove their case.'" (quoting *Kraemer v. Grant County*, 892 F.2d 686, 689 (7th Cir. 1990)).

Accordingly, the Court holds that the Complaint meets the requirements of Rule 11 and denies the motion for sanctions.

## VI.    CONCLUSION

Defendants Kuharsky and Maravina's Motion to Dismiss (Doc. No. 27) is hereby **GRANTED IN PART**. Quantlab's CFAA claims are hereby **DISMISSED WITHOUT PREJUDICE** as to Kuharsky. In all other respects, Defendants Kuharsky and Maravina's Motion to Dismiss is hereby **DENIED**. Defendant Godlevsky's Motion to Dismiss (Doc. No. 33) is hereby **GRANTED**. Quantlab's conversion claim is hereby

**DISMISSED WITHOUT PREJUDICE** as to Godlevsky. Quantlab may file an amended Complaint to cure the deficiencies discussed above no later than twenty (20) days after the entry of this Order. Defendants SXP and Mamalakis's Motion for Rule 11 Sanction (Doc. No. 46) is hereby **DENIED**.

      **IT IS SO ORDERED.**

      **SIGNED** this 23rd day of June, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE