IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| QUANTLAB TECHNOLOGIES LTD (BVI) and QUANTLAB FINANCIAL, LLC, | § § § § | |
| Plaintiffs, | § § | No. 4:09cv4039 |
| vs. | § § | |
| VITALITY GODLEVSKY, et al., | § § | |
| Defendants. | § | |

# EXHIBIT 4

# TO

# DEFENDANT ANNA MARAVINA'S MOTION FOR FINAL SUMMARY JUDGMENT

## PROPRIETARY INFORMATION AGREEMENT AND
## NONCOMPETITION AGREEMENT

This Agreement, dated as of ___1/21/2004___ is between **QUANTLAB** FINANCIAL, LLC, a Delaware limited liability company, ("Employer") and Anya Maravina ("Employee").

### RECITALS

Employer and its Affiliates (as defined below) have spent significant time, effort, and money to develop certain Proprietary Information (as defined below), which Employer and its Affiliates consider vital to their businesses and goodwill.

The position being offered to Employee involves working with Employer's Proprietary Information and is of such a nature that Confidential Information (as defined below) necessarily must and would be disclosed to Employee to allow Employee to perform his or her employment with Employer, and Employer agrees to hire Employee and to disclose such information only if, in doing so, Employer can protect the Proprietary Information, Confidential Information, and goodwill.

ACCORDINGLY, the parties agree as follows:

1.      Term of Agreement.

(a)     Basic Term.

This Agreement shall continue in full force and effect for the duration of Employee's employment by Employer (the "Period of Employment") and shall continue thereafter until terminated through a written instrument signed by all parties.

(b)     Termination Obligations.

(i)     Employee agrees that all property, including, without limitation, all equipment, tangible Proprietary Information (as defined below), documents, books, records, reports, notes, contracts, lists, computer disks (and other computer-generated files and data), and copies thereof, created on any medium and furnished to, obtained by, or prepared by Employee in the course of or incident to his employment, belongs to Employer and shall be returned promptly to Employer upon termination of the Period of Employment.

(ii)    Employee's representations, warranties, and obligations contained in this Agreement shall survive the termination of the Period of Employment,

and Employee's representations and warranties shall also survive the expiration of this Agreement.

(iii)  Following any termination of the Period of Employment, Employee shall fully cooperate with Employer in all matters relating to his continuing obligations under this Agreement.

2.    Proprietary Information: Confidential Information.

(a)    Definitions.

"**Proprietary Information**" is all information and any idea in whatever form, tangible or intangible, pertaining to the business of Employer or any Affiliate, or their employees, investors, clients, consultants, or business associates, which was produced by any employee of Employer or any Affiliate in the course of his or her employment, or otherwise produced or acquired by or on behalf of Employer or any Affiliate.

All Proprietary Information not generally known outside of Employer's organization, and all Proprietary Information so known only through improper means, shall be deemed "**Confidential Information.**"    Without limiting the foregoing definitions, Proprietary and Confidential Information shall include, but not be limited to: (i) formulas, teaching and development techniques, processes, trade secrets, computer programs, electronic codes, inventions, improvements, and research projects; (ii) information about specific investments, costs, profits, markets, sales, and lists of investors, customers or clients; (iii) business, marketing, and strategic plans; and (iv) employee personnel files and compensation information. Proprietary and Confidential Information also includes:

Research reports written by employees and consultants of Employers.

ISAT technology source code and documentation.

Information and files relating to customers, investors, contractors, prospects, and employees of Employers.

Specific techniques used in securing predictive information from option data including the way in which the smile, and skews are used as well as the way open interest data is viewed using vertical smoothing.

The way in which PCA transforms are used to transform raw multi-dimensional time series data into residuals as well as the heuristics and intellectual know-how used for

2

determining how many PCT vectors to use for the reduction.

The way in which the weighting is increased/decreased for the time decay constant for real time data to make principal component decompositions adaptive to the change in importance of factors and the arrival of new factors.

The cointegration clustering algorithms built on intra-day bars which maintain a coherent basket in real time thus maximizing the Sharpe ratio of the price-based component of the ISAT system.

The way in which orthogonal option-based indicators and metrics are developed and created "on the fly" to remain orthogonal to the price-based residual signals.

The dynamic method used to allocate intra- and interbasket.

The specific mechanism in place guaranteeing the windowed correlation matrix for all basket equity curves produces low off-diagonal correlations for the future.

Specific formulas, methods, techniques and "know-how" used to transform raw, scrubbed option time series data into forward looking, value-added predictive indicators which become an integral part of the system.

Specific techniques, methods, mechanisms, algorithms, software or other "know-how" used to extract predictive, directional information for market and sector indices using raw indicators as well as basket aggregation signals.

All design details, trade logic, pattern recognition algorithms and heuristics used it the past and currently used in the design and operation of the automated trade execution engine.

Design, structure, and operating principals relating to the real time intraday trading filter developed for filtering all trades.

Employee should consult Employer's procedures instituted to identify and protect certain types of Confidential Information, which are considered by Employer to be safeguards in addition to the protection provided by this Agreement. Nothing contained

3

in those procedures or in this Agreement is intended to limit the effect of the other. For purposes of this Agreement, "Affiliate" shall mean any person or entity that directly or indirectly controls, is controlled by, or is under common control with Employer. Affiliate includes, without limitation, Quantlab Technologies (BVI) Ltd., Quantlab Financial LLC, Convergence Financial Corporation (Texas), ISAT Partners I LLC, Quantlab Capital Management (Cayman), Ltd., Capital Technologies (Nevada), Inc., Alpha Nova Fund, LP, Alpha Nova Partners LP, Alpha Nova Offshore Partners, Ltd. and all of their related companies, predecessors, successors, and assigns.

(b)     General Restrictions on Use.

During the Period of Employment, Employee shall use Proprietary Information, and shall disclose Confidential Information, only for the benefit of Employer and as is necessary to carry out his responsibilities under this Agreement. Following termination, Employee shall neither directly or indirectly, use any Proprietary Information nor disclose any Confidential Information, except as expressly and specifically authorized in writing by Employer.

(c)     Location and Reproduction.

Employee shall maintain at his work station and/or any other place under his control only such Confidential Information as he has a current "need to know" in the furtherance of Employer's businesses. Employee shall return to the appropriate person or location or otherwise properly dispose of Confidential Information once that need to know no longer exists. Employee shall not make copies of or otherwise reproduce Confidential Information unless there is a legitimate business need of Employer for reproduction.

(d)     Prior Actions and Knowledge.

Employee represents and warrants that from the time of his first contact with Employer, Employer has made Employee's execution of this Agreement a condition of his employment and a condition of his access to any Confidential Information and, therefore, he has neither had access to, nor disclosed any Confidential Information, directly or indirectly, to anyone outside of Employer, or used, copied, published, or summarized any Confidential Information.

(e)     Third-Party Information.

Employee acknowledges that Employer has received and in the future will receive from third parties their confidential information subject to a duty on Employer's part to maintain the confidentiality of such information and to use it only for certain limited purposes. Employee agrees that he owes Employer and such third parties, during the Period of Employment and thereafter, a duty to hold all such confidential information

4

in the strictest confidence and not to disclose or use it, except as necessary to perform his obligations hereunder and as is consistent with Employer's agreements with such third parties.

      (f)    <u>Conflicting Obligations.</u>

Employee represents and warrants that his execution of this Agreement, his employment with Employer, and the performance of his proposed duties under this Agreement will not violate any obligations he may have to any former employer (or other person or entity), including any obligations with respect to proprietary or confidential information of any other person or entity. Employee agrees that he will not use for the benefit of, or disclose to, Employer any confidential information belonging to any former employer or other entity unless he has written permission from the prior employer or entity to do so (or unless Employer has been granted such permission).

## 3. Other Activity During Employment.

Except upon the prior written consent of Employer, Employee (during the Period of Employment) shall not (i) accept any other employment; or (ii) engage, directly or indirectly, in any other business, commercial, or professional activity (whether or not pursued for pecuniary advantage) that is or may be competitive with Employers, that might create a conflict of interest with Employer, or that otherwise might interfere with the business of Employer or any Affiliate. So that Employer may be aware of the extent of any other demands upon Employee's time and attention, Employee shall disclose in confidence to Employer the nature and scope of any other business activity in which he or she is or becomes engaged during the Period of Employment.

## 4. Competitive Activity

(a) ACKNOWLEDGMENT. Employee acknowledges and agrees that the pursuit of the activities prohibited by subsection (b) would necessarily involve the use or disclosure of some Confidential Information in breach of this Agreement, but that proof of such a breach would be extremely difficult.

(b) PROHIBITED ACTIVITY AFTER EMPLOYMENT. To forestall the above-described disclosure, use, and breach, Employee agrees that for a period of one (1) year after termination of the Period of Employment, he or she shall not, directly or indirectly, (i) divert or attempt to divert from Employer (or any Affiliate) any business related to the provision of investment advice to investment funds or other institutional or managed client accounts; (ii) solicit, attempt to solicit, or assist others in soliciting, attempting to solicit or performing, any business related to the provision of investment advice to Employer's customers, investors, or prospective investors; or (iii) otherwise compete with Employer (or any Affiliate) in any geographic market where Employer conducts its

5

business. For purposes of this agreement, "prospective investors" shall include those entities to which Employer has solicited investments through a personal contact within the 12 months preceding Employee's termination.

### 5.    Interference with Business.

In order to avoid disruption of Employer's business, Employee agrees that for a period of one (1) year after termination of the Period of Employment, he or she shall not, directly or indirectly, solicit for employment any person employed by Employer or any Affiliate.

### 6.    Inventions

#### (a)    Ownership; Assignment.

All ideas, inventions, and other developments or improvements conceived or reduced to practice by employee, alone or with others, during the Period of Employment, whether or not during working hours, that are within the scope of Employer's business or that relate to any of Employer's work or projects, shall be the exclusive property of Employer, and Employee expressly assigns such ideas, inventions, and other developments or improvements to Employer. All right, title, and interest of every kind and nature, whether now known or unknown, in and to any intellectual property, including, but not limited to, any inventions, patents, trademarks, service marks, copyrights, films, scripts, ideas, creations, and properties invented, created, written, developed, furnished, produced, or disclosed by Employee, in the course of rendering services to Employer shall, as between Employer and Employee, be and remain the sole and exclusive property of Employer for any and all purposes and uses, and Employee shall have no right, title, or interest of any kind or nature in or to such property, or in or to any results or proceeds from such property.

#### (b)    Cooperation; Appointment as Agent

Employee agrees to assist Employer, at its expense, to obtain patents, copyrights, trademarks, service marks, and similar protections, for any such ideas, inventions, and other developments or improvements, and agrees to execute all documents necessary to obtain such protections in the name of Employer and/or its Affiliates. If Employer cannot secure Employee's signature upon any necessary documents, Employee hereby irrevocably designates and appoints Employer and its duly authorized officers and agents as Employee's agent and attorney-in-fact and authorizes Employer to execute and file any necessary documents.

6

(c)     Disclosure

    To facilitate compliance with this agreement, Employee agrees to immediately disclose to Employer all inventions made by Employee during the course of Employee's employment.  An invention is made by Employee during the course of Employee's employment if Employee conceived of, or put into practice, the invention during the term of Employee's employment.

7.    Integration.

    This Agreement is intended to be the final, complete, and exclusive agreement of the parties regarding these subjects. This Agreement supersedes all other prior and contemporaneous agreements and statements, whether written or oral, express or implied, on these subjects, and it may not be contradicted by evidence of any prior or contemporaneous statements or agreements.

8.    Amendments; Waivers.

    This Agreement may not be amended except by an instrument in writing, signed by each of the parties.  No failure to exercise and no delay in exercising any right, remedy, or power under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, or power under this Agreement preclude any other or further exercise thereof, or the exercise of any other right, remedy, or power provided herein or by law or in equity.

9.    Assignment: Successors and Assigns.

    Employee agrees that he will not assign, sell, transfer, delegate, or otherwise dispose of, whether voluntarily or involuntarily, or by operation of law, any rights or obligations under this Agreement.  Any such purported assignment, transfer, or delegation shall be null and void.  Nothing in this Agreement shall prevent the consolidation of an Employer with, or its merger into, any other entity, or the sale by an Employer of all or substantially all of its assets, or the otherwise lawful assignment by an Employer of any rights or obligations under this Agreement.  Subject to the foregoing, this Agreement shall be binding upon and shall inure to the benefit of the parties and their respective heirs, legal representatives, successors, and permitted assigns, and shall not benefit any person or entity other than those specifically enumerated in this Agreement.

7

10.  Severability.

If any provision of this Agreement, or its application to any person, place, or circumstance, is held by an arbitrator or a court of competent jurisdiction to be invalid, unenforceable, or void, such provision shall be enforced to the greatest extent permitted by law, and the remainder of this Agreement and such provision as applied to other persons, places, and circumstances shall remain in full force and effect.

11.  Attorneys' Fees.

In any legal action or other proceeding brought to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs.

12.  Injunctive Relief.

If Employee breaches or threatens to breach any provision of this Agreement, the parties acknowledge and agree that the damage or imminent damage to an Employer's business or its goodwill would be irreparable and extremely difficult to estimate, making any remedy at law or in damages inadequate. Accordingly, Employer shall be entitled to injunctive relief against Employee in the event of any breach or threatened breach of such provisions by Employee, in addition to any other relief (including damages) available to Employer under this Agreement or under law.

13.  Consideration

Employee represents and warrants that Employer has consistently made Employee's willingness to protect Employer's Proprietary Information from unauthorized use and disclosure and to comply with the terms of this Agreement a condition of (1) Employer's agreement to disclose Confidential Information, (2) Employee's employment, and (3) Employee's continued employment, and that this agreement is necessary to protect Employer's Proprietary Information, including Confidential Information, and to effectuate the purposes of, and is ancillary to, Employee's employment agreement.

14.  Interpretation.

This Agreement shall be construed as a whole, according to its fair meaning, and not in favor of or against any party. By way of example and not in limitation, this Agreement shall not be construed in favor of the party receiving a benefit nor against the party responsible for any particular language in this Agreement. Captions

8

are used for reference purposes only and should be ignored in the interpretation of the Agreement.

15.    Employee Acknowledgment.

Employee acknowledges that he or she has had the opportunity to consult legal counsel about this Agreement, has read and understands this Agreement, is fully aware of its legal effect, and has entered into it freely and voluntarily and based on his or her own judgment and not on any representations or promises by Employer (or any Affiliate or agent of Employer) other than those contained in this Agreement.

The parties have duly executed this Agreement as of the date first written above.

_____
Anya Maravina

QUANTLAB FINANCIAL, LLC

_____
By:  W.E. Bosarge, Jr.
Its:  Chief Executive Officer

*HOUSTON:119007.3 038021.1000*

9