1          UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF TEXAS
2                HOUSTON DIVISION

3

4   QUANTLAB TECHNOLOGIES LTD.   *   Civil No. H-09-4039
    (BVI)                        *
5                                *
    VERSUS                       *   Houston, Texas
6                                *   May 12, 2010
    VITALIY GODLEVSKY, et al     *   11:30 a.m.
7

8                    MOTION HEARING
        BEFORE THE HONORABLE KEITH P. ELLISON
9            UNITED STATES DISTRICT JUDGE

10

11  For the Plaintiffs:

12          Mr. Allan H. Neighbors, IV
            Mr. Scott McDonald
13          Littler Mendelson PC
            1301 McKinney Street
14          Suite 1900
            Houston, Texas 77010
15

16          Mr. Timothy Thiel McInturf
            Quantlab Financial LLC
17          4200 Montrose
            Suite 200
18          Houston, Texas 77006

19

20  For SXP Analytics, LLC and Emmanuel Mamalakis:

21          Mr. James M. Cleary, Jr.
            Martin, Disiere, Jefferson & Wisdom L.L.P.
22          808 Travis
            Suite 1800
23          Houston, Texas 77002

24

25  Proceedings recorded by mechanical stenography, produced by
    computer aided transcription.

```
 1   Appearances - Con't:

 2

 3   For SXP Analytics, LLC and Emmanuel Mamalakis:

 4           Mr. Mark A. Cameli      (Appearing by telephone)
             Reinhart Boerner Van Deuren S.C.
 5           1100 North Water Street
             Suite 1700
 6           Milwaukee, Wisconsin 53202

 7

 8   For Andriy Kuharsky and Anna Maravina:

 9           Mr. David C. Holmes     (Appearing by telephone)
             Law Offices of David C. Holmes
10           13201 Northwest Freeway
             Suite 800
11           Houston, Texas 77040

12

13   For Vitaliy Godlevsky:

14           Mr. Kinan Hab Romman
             Ahmad, Zavitsanos & Anaipakos, P.C.
15           3460 One Houston Center
             1221 McKinney
16           Houston, Texas 77010

17

18   Court Reporter:

19           Fred Warner
             Official Court Reporter
20           515 Rusk Avenue
             Houston, Texas 77002
21

22

23

24

25
```

1          THE COURT:  Good morning and welcome to all.  We

2   will take appearances of counsel beginning with the

3   plaintiff, please.

4          MR. NEIGHBORS:  Morning, Your Honor.  Allan

5   Neighbors and Scott McDonald for the plaintiffs.

6          THE COURT:  Welcome.

7               On the phone, can you hear us okay?

8          MR. CAMELI:  Yes.  Counsel I am just having a little

9   trouble hearing.

10          THE COURT:  We are going to get him to put the mic

11   close to his mouth.  Maybe that will help.

12               And for defendants.

13          MR. CLEARY:  Judge, Jim Cleary for defendants SXP

14   and Mamalakis, and then on the phone also is Mr. Cameli.

15          MR. CAMELI:  Good morning, Your Honor.

16          THE COURT:  Good morning.

17          MR. HOLMES:  David Holmes.  I represents defendants

18   Kuharsky and Maravina.

19          THE COURT:  Good to see you again, Mr. Homes, at

20   least telephonically.

21          MR. HOLMES:  Likewise, Your Honor.

22          MR. ROMMAN:  Your Honor, Kinan Romman on behalf of

23   defendant Godlevsky.

24          THE COURT:  Thank you.  Anyone else?

25               I know that motion to stay is sought.  We also

1   have a motion dismiss filed and a motion to impose sanctions.
2   I think we can most usefully spend our time on the motion
3   stay discovery.
4               I was not planning on hearing the motion to
5   dismiss yet.  I am familiar with all the writings on that
6   issue.  Would anybody like to add to what's in the writings?
7   And on the phone please identify yourselves when you speak.
8   You won't be obvious to us.  And maybe identify yourselves
9   when you are speaking here in the courtroom, too, since it
10  won't be obvious.
11              MR. CAMELI:  Your Honor, this is Mark Cameli on
12  behalf of SXP and Mamalakis.  May I add some thoughts with
13  respect to our motion to stay?
14              THE COURT:  Yes, sir.
15              MR. CAMELI:  First of all, thank you for permitting
16  me to appear by phone.
17              THE COURT:  Not at all.  That's standard practice.
18  In any non evidentiary hearing, everybody can appear by phone
19  if they wish.
20              MR. CAMELI:  Oh, thank you.  I appreciate that.  If
21  the wheels weren't falling off a few matters over here, I
22  would have gladly escaped this weather and been there live.
23              THE COURT:  Not necessary.  Not necessary.
24              MR. CAMELI:  I want to start by recognizing just a
25  few important points of background regarding our motion to

1    stay.  Our motion to stay discovery was filed

2    contemporaneously with our motion under Rule 11, which

3    currently -- that is a motion under Rule 11 -- currently

4    scheduled for a response from plaintiffs on May 20th and

5    reply from us 10 days later I believe on under your local

6    practices.

7              While you need not and should not decide that

8    motion today, our motion to stay touches on it just enough so

9    that there is some attention for context in today's hearing.

10             And first I want to personally, I want to tell

11   you that I personally and our firm generally do not like, do

12   not like to file Rule 11 motions.  We take them quite

13   seriously, and we consider them quite carefully before we

14   proceed.

15             In this case, after the plaintiffs responded,

16   or after the plaintiffs respond more on May 20th and we are

17   given an opportunity to reply, I think you'll find that the

18   record supports our Rule 11 motion and in a compelling way.

19   But again, the merits of that are not here before you today.

20             Instead I want to touch on some background

21   leading up to it so that I can give you fuller appreciation

22   of why we seek the motion to stay.

23             My partner, Dave Hanson, who's actually lead

24   counsel on this, spoke with and gave plaintiffs' counsel a

25   detailed letter shortly after being served with the complaint

1    in an attempt to have plaintiff share some very basic facts

2    that supported this suit against SXP and Mamalakis, we

3    included that in Attachment A, and I won't review that with

4    you here.

5              The plaintiff provided nothing but a letter,

6    which is also found in the Attachment B, stating that

7    hundreds of examples Quantlab, the plaintiff's code appear on

8    SXP's computers.

9              Even if that were true, there is nothing about

10   how in any way any of it was proprietary.  In fact, what we

11   know from a hearing involving Mr. Mamalakis' other counsel,

12   David Gerger, before another court down there, tens of

13   thousands of lines of so-called proprietary code shared by

14   Quantlabs was really off-the-shelf Microsoft product of no

15   proprietary interest.

16             But my partner continued to reach out again to

17   plaintiffs' counsel and served a motion with the 21-day safe

18   harbor period.  And again, nothing, more follow-up, and

19   formally nothing, except that we received over 400 discovery

20   requests directed to our clients.

21             A motion to stay discovery is very important in

22   the context of that pending motion.  First, contrary to the

23   plaintiffs' beliefs, defendant SXP and Mamalakis are not

24   required to file a Rule 12(b)(6) motion in the condition

25   precedent to a Rule 11 motion.  Indeed the very purpose of

the rule is to shield the party from patently baseless claims and not require that they incur the cost of discovery and defense.  Nor as suggested by plaintiffs, are Rule 12(b)(6) defenses waived in some way if a permissible motion is not filed.

Now, we're not suggesting -- this is very important -- we're not suggesting that the plaintiffs should be forever barred from the asserting the claim.  We're simply requesting that the Court require that such a claim be preceded by their possession of facts in order to support the claim first.

That brings us to the importance of staying discovery here, because beyond the unnecessary expense and obvious burden of complying, even with, even with the non objectionable request, plaintiffs should not, should not be given the luxury of fixing the deficit in their pre-filing obligation with discovery that they obtained from a party harmed by those practices.

And this becomes even more compelling, Your Honor, when weighing the balance of harms affected here.  For example, if you grant our motion today and stay discovery and you later ultimately deny our Rule 11 motion, what happens is the plaintiff would have been merely denied discovery for a month, where discovery goes in this case until March of 2011.

1            If, on the other hand, if you deny our motion

2    today and you order us to produce discovery and we prevail on

3    the Rule 11, then the defendants have incurred substantial

4    and unnecessary expense.

5            My final comment really concerns something

6    contained in the plaintiffs' that was sent to our office last

7    evening.  The only, and I mean only evidence shared with us

8    to date and for first time last evening that would suggest a

9    link between SXP, Mamalakis and the subject conduct is set

10   forth on page 3 of that reply; and it's the last bullet

11   point, and it concerns some statements on supposedly admitted

12   to an FBI agent.  There's no evidentiary foundation or other

13   basis for its admissibility, but that is the first time that

14   appeared.

15           And sure, we would like that transcript

16   unsealed; it would be great if you ordered that today, as

17   footnoted in Footnote 4.  And for that matter, we'd like to

18   have the unredacted search warrant affidavits in this case

19   because the current redacted version we have has no probable

20   cause in that.

21           But more importantly, we're concerned about

22   this way of proceeding in this kind of manner to get this

23   kind of information from an opponent with information

24   possessed for the last six months when we made all of these

25   informal inquiries and formal inquiries to get it we think is

1  to the tactic that really shouldn't be acceptable to the

2  Court.

3             We'd invite Mr. Holmes, who appears here on

4  line, Mr. Carson's attorney, to really weigh in on this

5  statement attempt attributed to his client.  And I'd ask the

6  Court to that.

7             So, in short we request that you stay discovery

8  under these circumstance to allow the Rule 11 motion to be

9  briefed and heard, to review the proffer of how plaintiffs

10 met their Rule 11 obligations, which presumably they will

11 give this Court, without them having the benefit of discovery

12 from us or without the defendant Mamalakis and SXP bearing

13 the burden of unnecessary, with the expense of unnecessary

14 response and discovery.

15            Thank you.

16            THE COURT:  Okay.  There was a lot said.  Let me

17 give plaintiff a chance to respond if you wish if you want

18 to.

19            MR. NEIGHBORS:  Yes, Your Honor.  Should I stand or

20 do you mind if I --

21            THE COURT:  It doesn't matter.  You can remain

22 seated.

23            MR. NEIGHBORS:  Allan Neighbors for the plaintiffs,

24 Your Honor.

25            I do have a few things that I believe represent

1  our side of the story that I would like to present to the

2  Court.

3        THE COURT:  Yes, sir.

4        MR. NEIGHBORS:  But first I would like to address a

5  few things that Mr. Cameli said on the phone first.

6        THE COURT:  Okay.

7        MR. NEIGHBORS:  I think at least to us it's clear

8  based upon not only the motion but also the things that Mr.

9  Cameli said on the phone, it's clear to us that SXP and

10 Mamalakis are attempting to force Quantlab to do things at

11 this stage of the game which neither Rule 8 nor Rule 11

12 require us to do, and I also believe it's evident that SXP

13 and Mr. Mamalakis are confusing a bit Rule 11 with Rule 8.

14        As Your Honor is more than well aware, Rule 8

15 requires us only to give fair notice and a short and plain

16 statement of the facts of our case.

17        Now, Rule 11 really does not address that.

18 Rule 11 goes more to whether the signing attorney had done an

19 investigation sufficient to allow him to have a good faith

20 belief in those allegations.  Rule 11 does not go to test the

21 allegations of the sufficiency of the allegations in the

22 complaint.

23        We believe, contrary to Mr. Cameli's statements

24 to the Court, that had SXP or Mr. Mamalakis felt that

25 Quantlab had failed to state a claim in the complaint or the

1    complaint needed a more definite statement pursuant to Rule

2    12(b), then the proper mechanism to have brought that to the

3    Court's attention was by Rule 12(b) or Rule 12(e).

4              As Your Honor is well aware, they didn't do

5    either of those things.  And there is a couple of things that

6    I'd like to point out because what they are arguing is that

7    the complaint itself has not alleged facts that in their view

8    are sufficient to support going forward against them, SXP and

9    Mr. Mamalakis, and we could not disagree more wholeheartedly.

10             But there's a few things leading up to today

11   that I would like to point out to is Your Honor that I think

12   are telling of whether or not the factual allegations in the

13   complaint are sufficient against those two defendants, which

14   again I believe is different than the Rule 11 analysis.

15             But to that point, rather than file a Rule 12

16   motion in response to the complaint, SXP and Mr. Mamalakis

17   each answered the complaint on January 26th.  Now, both of

18   them admitted to federal and pendent jurisdiction, they

19   admitted that venue was proper here, and they answered each

20   paragraph in the complaint.

21             And what I think is also interesting, in light

22   of what's being said here this morning, is that they each

23   asserted 27 affirmative defenses.  And I am not going to go

24   through each of those, but I would like to go through a

25   couple of them because I think it's clear that when Your

1   Honor hears what some of these specific defenses are, it

2   certainly is clear to me that if SXP and Mr. Mamalakis did

3   not have fair notice of the allegations against them, there

4   is no way they could have alleged these defenses, so let me

5   give you just a couple, if I could, Your Honor.

6           And one thing I would like to point out is,

7   none of the defense have said that the complaint has failed

8   to state a claim.  A couple of the defenses that they both

9   did raise were, for example, Defense No. 14, any opportunity

10  that SXP took advantage of was abandoned by plaintiffs.

11          No. 15, SXP had the legal privilege to commit

12  any act that allegedly induced the breach of duty of royalty

13  or confidentiality.

14          Defense No. 16, any disclosure by SXP of

15  plaintiffs' alleged trade secrets was privileged.

16          22, any property alleged to be taken by SXP was

17  taken by accident or mistake.

18          24, SXP was privileged or justified to

19  interfere with any contract's claim that alleges SXP

20  interfered with.

21          And they also allege in defense 25 that

22  plaintiffs failed to allege their fraud allegations with

23  particularity.

24          It seems to us that it would have been very

25  hard for SXP or Mr. Mamalakis to have thought to allege or

bring to the Court's attention any of those defenses were
they not able to take the complaint on the four corners and
understand what the allegations were against them.  And that
is what Rule 8 goes to.

Rule 11 does not go to that.  So, going back to
what I said initially, I think they're confusing a little
business the Rule 11 standard.

THE COURT:  Well, I think he's saying, though, that
he thinks plaintiff did not have an adequate basis,
insufficient investigation had been done prior to filing the
lawsuit.  And that does sound a little bit more like Rule 11
to me.

MR. NEIGHBORS:  And we certainly will be fully
briefing.

THE COURT:  Yeah.  I understand that.

Let me ask this.  Do you think if there is
going to be a battle here the battle will be joined on the
issue of taking versus be joined on the issue of proprietary?

MR. NEIGHBORS:  I don't think -- yeah, both.  I
don't think there's going to be any doubt.  You know, Mr.
Cameli mentioned that one of the points in our response was
that there is evidence that Mr. Mamalakis was engaged and
that there was code found on an SXP computer.

THE COURT:  Right.

MR. NEIGHBORS:  And he said, well, you know, there

1  is nothing to show at this point that it was anything other

2  than off-the-shelf.

3             Well, we disagree; but that's what discovery is

4  about.  So, we believe at the end of the day --

5             THE COURT:  I thought he was saying that whether

6  information was taken or not, it wasn't proprietary.  I

7  thought that's what he was saying.

8             MR. NEIGHBORS:  Well, that's what he says.

9  Certainly we disagree, and that's what discovery is all

10  about.  So, we believe that the element of the taking is

11  going to be easily established; and we do believe it's going

12  to be clearly shown to be proprietary to Quantlab for both.

13             MR. CAMELI:  Your Honor, may I add --

14             THE COURT:  I am going to let Mr. Neighbors finish,

15  and then I will give you all the time you want.

16             MR. CAMELI:  I'm sorry.

17             MR. NEIGHBORS:  So, after they filed their answer

18  with no Rule 12, they then filed or served upon us on

19  February 12th the safe harbor letter which just alleged that

20  we had failed to conduct a adequate pre-suit investigation.

21             And in response to that, we sent them back a

22  letter that is attached I think as Exhibit B to their motion,

23  which I find it hard to believe they would take as anything

24  other than sufficient knowledge of connecting SXP and Mr.

25  Mamalakis to the case, and those things are alleged in our

1  complaint.

2          So we continued on after that and went through

3  the whole joint discovery case management plan process.  And

4  at no point in there did anybody from that side say anything

5  about seeking a stay of discovery.  In fact, what was said

6  was the parties had even discussed some settlement

7  negotiations but agreed that some discovery needed to be

8  taken before those could reconvene.  There was no mention at

9  any point in there about any deficiencies or any stay of

10  discovery.

11          So, when you look at what the basis for their

12  will stay is, Your Honor, the basis for their stay is the

13  simple fact that they have filed the Rule 11.  And we

14  believe, although that's not the issue that's being decided

15  here today, we believe that the Rule 11 is completely without

16  merit.

17          However, our response also cites a litany of

18  cases that says that a stay of discovery is not warranted

19  even where the party has filed or said they intend to file a

20  motion to dismiss.  There's a whole list of about five

21  factors that the Court should look at.  And admittedly the

22  Court has broad discretion in making that ultimate decision.

23          But there are several factors which the Court

24  should take into consideration, and they all militate against

25  the stay.

1     So, although Your Honor is the ultimately going

2  to take up the issue of the stay, of the Rule 11, which we

3  think should be done at some later time, we believe it is

4  very clear when you take into account the factors that the

5  courts have said should be add looked at in this situation,

6  that the discovery should not be stayed.

7          THE COURT:  Okay.

8          MR. NEIGHBORS:  And that's all fully briefed in our

9  response, and I won't go through each of the points today.

10         THE COURT:  No.  I am clear with all that.

11         MR. NEIGHBORS:  And I know you are.

12         THE COURT:  I think your colleague wants to say

13 something.

14         MR. McDONALD:  May I add one point, Your Honor?

15         There is also another factor here, which is,

16 they're asserting affirmative defenses and essentially asking

17 for a stay for us to not be able to do discovery relative to

18 affirmative defenses.  So they're trying to shut it down

19 after asserting affirmative defenses.

20         And the example they give of, okay, well, some

21 portions of the files that were taken were shown or

22 supposedly in this other hearing were more public or

23 off-the-shelf type of information, the problem is they're in

24 sole possession of those files.

25         They said:  Well, you didn't do any

investigation.  What could we have possibly done?  I mean, we
don't have those files.  They have those files.  That's what
discovery is for is to look at their computers and compare
the files and so forth.  The FBI has it and they have it, but
we don't.  So to argue that we have not done some form of
investigation at this point when that investigation would be
impossible is contradictory in a way.

When you add that to the fact that they've
asserted some affirmative defenses, the more logical approach
here is to allow discovery to proceed, look at the Rule 11 on
its merits which, as we've already indicated, I think is
really very poorly reasoned.

And in the ultimate timing here, it won't be
very long in between.  There's not going to be very much
discovery.  They're going to have to answer some written
discovery, and that's it.  But it won't delay the process any
if you go ahead and allow the discovery to proceed.  We at
least begin to see what it is they're claiming affirmative
defense-wise they have in terms of that.

THE COURT:  All right.  Before I come back, let me
give other parties a chance to speak.  Do other defendants
want to say anything?

MR. HOLMES:  Yes.  This is David Holmes.

THE COURT:  Yes, sir.

MR. HOLMES:  I will be brief.  I will say Mr.

1  Kuharsky was quite surprised when I sent him last night a
2  copy of this response claiming that -- which says that the
3  AUSA made the statement to Mr. Kuharsky that said that
4  Mamalakis ordered him and Godlevsky to use Quantlab
5  information in SXP.  He was quite surprised by that.  To say
6  the least, he denied it.  He said that never happened, in
7  fact.
8           But we would join with SXP's attorney in asking
9  to unseal that transcript.  We would be very interested to
10 find out what that AUSA actually said because that certainly
11 is not going that Mr. Kuharsky ever said to the FBI.
12          And secondly, there is another document out
13 there that may be relevant to your Rule 11 motion that was
14 produced to us in connection with the sexual harassment suit
15 that Ms. Maravina has in state court against Quantlab, which
16 is the report that Quantlab obtained based on -- you know,
17 once again in their motion they claim that Ms. Maravina snuck
18 into her office late at night and stole one a bunch of
19 documents off their computer system.
20          What they produced to us in the state court
21 litigation is a report that shows their investigation of
22 that.  I can't talk about it.  It's subject to a state court
23 protective order, so I can't go into the contents; but I
24 would raise the issue for you as you resolve this motion that
25 that is a document that you may want to address in terms of

1   whether there is a Rule 11 basis.  But I will he tell you

2   that document is not consistent with Quantlab's account of

3   what has happened.  I will leave it at that.

4         THE COURT:  Do any other defendants want to say

5   anything?

6         Okay.  Mr. Cameli, we will come back to you

7   then.

8       MR. CAMELI:  Thank you, Your Honor.

9         First of all, today, of course, is not the

10  forum in which you should answer -- or excuse me -- resolve

11  the Rule 11 motion before you.

12        We, of course, want an opportunity to respond

13  to what was put in this reply that we received left even for

14  example before you get to the merits of that; and I don't

15  think you're inclined in any event to make that ruling today,

16  particularly in light of Mr. Holmes' comments as well.

17        But the other point is that we, as experienced

18  litigators, understand that parties are entitled to

19  discovery; but we also understand that they have duties in

20  starting suits in the first place.  And that line of cases

21  that deals with permitting discovery in the presence of 12(b)

22  motions is equally even more long as it concerns courts that

23  have denied such discovery.

24        Here we are alleging even a lower standard

25  hasn't been met; that they didn't have, they didn't do due

1  diligence necessary; that they base this on speculation,

2  conjecture, guesswork.  And the plain meaning and the plain

3  language of the complaint suggests that.  And notwithstanding

4  our multiple efforts to get at it, they haven't produced

5  anything.

6           Now, you should also know, Your Honor, that

7  they, Quantlabs, was the sole source of information given to

8  the FBI upon which they executed a search warrant.  For them

9  to say that they don't have information to support these

10  allegations, but at the same time, same time are claiming

11  to -- and the government at least believes, I think probably

12  inappropriately -- that they have probable cause to believe

13  that a crime had been committed based on the information that

14  Quantlabs themselves provided and no one else, for them to

15  have provided that yet come before you and say "we don't have

16  the information, it's all in the possession of the

17  defendants" just isn't a fair characterization at all.

18           So, we, as you properly pointed out, we fully

19  understand the difference between the standards at play here;

20  and it doesn't hurt Quantlabs at all, even if we're wrong --

21  and I honestly don't believe we are -- but it does not hurt

22  them to wait on their discovery for another month when this

23  gets resolved because, first of all, I think it will be

24  resolved in our favor; and even if it isn't, they're out one

25  month of discovery.  But when they make us go through over

1  400 discovery responses and do so and get that information

2  before they have to make their proffer to the Court in

3  support of how they met their burden, you are both causing us

4  expense and giving them, and giving them possibly the kind of

5  information that they should have had before they would have

6  started the suit.

7            Now, a way to have done this would not have

8  been to sue us in this suit, SXP and Mamalakis individually,

9  but through their discovery process and their litigation

10  against other parties, if they learned information to support

11  a claim, then they should have brought the claim.  And that's

12  really, that's really what should happen here, is that a

13  claim should be dismissed subject to their right to bring it

14  again at a later date.

15            And if I am right about that, if I am right

16  about that, then requiring -- and again, you are not reaching

17  the merits of today -- but requiring discovery now is just

18  grossly unfair.  And again, if I'm wrong about it, all it's

19  done is delayed the discovery in a very small way given the

20  discovery schedule that's currently in place.

21            THE COURT:  Well, you're assuming, I guess, that we

22  can get the motions to dismiss decided as soon as the papers

23  are submitted.  That may be a little optimistic.

24            MR. CAMELI:  And, I guess, Your Honor, I am thinking

25  that that would be in early to mid June.  Maybe I am mistaken

1    about that.  But if it isn't, of course, I leave it to the
2    Court to be the much better judge of that than I.
3              THE COURT:  Of course, we see a lot of these
4    lawsuits involving a company or a partnership suing
5    individuals who have departed.  I mean, this looks to me like
6    it has most of the badges of such a lawsuit.  We start off
7    with four valued employees who leave, having signed
8    proprietary information agreements or, in Anna's case, a
9    confidential information and inventions agreement, creation
10   of a new company which appears to be in the same line of
11   work, some suggestion of misrepresentation to cover-up theft,
12   some suggestion of actually copying of a computer code that
13   is involved in -- that plaintiff and perhaps another entity
14   QLT are involved with.
15             Is what you think is lacking enough detail as
16   to what was taken?  Is that what's missing?
17             MR. CAMELI:  I think, Your Honor, it's two things.
18   Actually it's three things.  And this is very important.
19   Read the complaint carefully and look at the nexus to SXP and
20   Mamalakis.  They, you know, Mamalakis was not a former
21   employee.  And they take a leap.
22             And so, for the first part of that, the answer
23   is, while there may be evidence that they have met a pleading
24   standard -- and by the way, they have alleged fraud here,
25   too, among other things, so they have a particularity

1  requirement.

2  But they may have, to the extent that their

3  pleading can survive this, those defendants, I don't speak to

4  that, to strictly only Mamalakis and SXP, who they are free

5  to bring into the case at such time that the discovery

6  supports that.  That's our point.

7  The second is that it's the lack of information

8  supposedly that they received; and third, it's the

9  proprietary nature of that.

10  We have no information on any of that; and

11  again, I find it kind of incredible and a bit disturbing that

12  they would believe they have enough to give to a law

13  enforcement agency to support probable cause to believe a

14  crime has been committed yet appear before you here today to

15  say, well, Your Honor, they have the stuff; we need it before

16  we can actually articulate with any particularity the

17  allegations against them.  I am very bothered by that just

18  conceptually.

19  And so, again, I am not talking about

20  permanently barring us from the action.  I am talking

21  bringing us in when there is evidence to bring us in.  I

22  haven't there is where that standard is met.  And again, we

23  are not arguing -- I don't mean to argue the underlying

24  substance.  What I am saying is that it's just unfair to put

25  us through discovery until that is resolved and particularly

1  based on knowing that kind of background of what our concerns

2  are.

3          THE COURT:  Okay.

4          MR. NEIGHBORS:  Could we briefly respond to those

5  points, Your Honor?

6          THE COURT:  Yes, you may.

7          MR. NEIGHBORS:  Again, hearing Mr. Cameli, I again

8  believe we are confusing Rule 8 with Rule 11.  Rule 11 does

9  not require that we plead the facts.  It requires that we

10  know the facts.

11          Rule 8 requires that we give a short and plain

12  statement of the facts.  What he keeps coming back to is a

13  lack of information in the complaint.  If they believed that

14  the complaint lacked information, what they should have done

15  was filed under Rule 12(b) or 12(e) and said, Quantlab, you

16  need to give us a more definite statement.  That's not what

17  Rule 11 goes to.

18          THE COURT:  Well, what I believe is being argued by

19  Mr. Cameli is that whatever might have been taken was not

20  proprietary.  Is that your argument, Mr. Cameli?

21          MR. CAMELI:  That is part of the argument, Your

22  Honor, as it concerns the underlying Rule 11.

23          THE COURT:  Are you doubting the taking in the first

24  is or just the proprietary nature of it.

25          MR. CAMELI:  Because it's linked to Mamalakis and

1    SXP, yes, Your Honor.

2           THE COURT:  Yes, you are arguing about -- you're

3    arguing nothing was taken or you are arguing that whatever

4    was taken was not proprietary?

5           MR. CAMELI:  We're arguing that as to SXP and

6    Mamalakis that nothing was taken as the entity and as

7    Mamalakis individually nor that he is linked to taking to the

8    extent it did occur.  And I am not saying it did, but to the

9    extent that it did occur that he's not linked to the taking

10   by any other party.

11          And all we're saying -- and counsel is correct

12   in this regard, that there is a difference between these

13   standards; but when we reached out to say, what is your

14   knowledge, you haven't pled it here, you haven't met the

15   pleading standard, you know, particularly with the fraud

16   allegations, but you haven't met your pleading standard here

17   at all, you must have some knowledge at least of a basis for

18   bringing this, the response was not responsive; it was simply

19   to say, they have, SXP has 500 lines of code, but, you know,

20   without any kind of basis of "what do you mean, and how is it

21   proprietary in any way?"

22          So we did make that inquiry of them before we

23   brought this motion and attempted to avoid having to bring it

24   by simply saying, "well, just give us something here."  And

25   they didn't.

1           And so, yes, we understand that difference
2   between those standards.  And all we are respectfully saying,
3   Your Honor, is that they didn't need it.  They may need it at
4   a later date, and that's fine; they can bring us back in if
5   they do, but they haven't met it yet.
6           THE COURT:  Well, I keep coming back to this
7   distinction.  If what was allegedly taken was not propriety,
8   why would they have bothered to take it?  I mean, surely you
9   take only what is somehow useful, not what could be easily
10  reproduced.
11          MR. CAMELI:  I don't think anyone's arguing that
12  Mamalakis took anything, Your Honor.
13          THE COURT:  No, but he helped them do the alleged
14  breach and all the rest.  That's the argument.
15          MR. CAMELI:  That is what -- the first time that is
16  being, Your Honor, the first time that there is anything like
17  that that directed that is in what we received last evening,
18  what Mr. Holmes just spoke to.  That's the first time
19  anything like that has ever come some, anything.  That's the
20  first time.  And that's what we need to see get to the bottom
21  of, we need to get that transcript unsealed for.
22          And again, we just want an opportunity to
23  respond to their brief that they filed yesterday, which does
24  include -- and I realized it reserved, and appropriately so,
25  their right to supplement that in the Rule 11 context.  And

1  so, then we will rely to it; but, you know, we want an
2  opportunity to reply to that.

3              But in the meantime, again, delaying this
4  discovery and the harm that it can cause just economic to the
5  parties who really should not be in this case in the first
6  place is in our view just not appropriate.  And again, that's
7  the whole purpose of these rules is to not subject parties to
8  the expense of discovery, to the involvement in litigation
9  unless there is a basis to have them there in the first
10 place.

11             And we respectfully believe that counsel has
12 failed to find that basis.  They may later.  We don't believe
13 they will, they may later; but now is not the time, and
14 therefore, we should not be subject to discovery.

15             THE COURT:  Okay.  Mr. Neighbors.

16             MR. NEIGHBORS:  Your Honor, if I may, there is a
17 couple of additional  facts where points may be getting lost
18 at what's in dispute.  The other individuals, Godlevsky,
19 Kuharsky they were partners in SXP.  This is essentially the
20 new employees.

21             THE COURT:  No.  I know that.

22             MR. NEIGHBORS:  And it's very common to do discovery
23 on the new employer to where people went and took the
24 proprietary information to see if the new employers got the
25 information in there and if they are complicit and at which

1  we believe the evidence indicates they would be to have them

2  as a party, as the tortiously interfering party, the party

3  that induced them to leave.  They're the new employer;

4  they're the new entity.

5        The argument that our problem with needing

6  discovery in order to determine what's on the SXP's computers

7  is wrong because what was reported to the FBI was one

8  individual Maravina is taking a bunch of files.  The FBI then

9  expanded the investigation out to SXP and the other

10  defendants here.

11        So, what is on their files, what got put into

12  their sytem and used in their business to pursue the same

13  kind of competing business is by consequence obviously

14  something that we would be needing to get discovery on them

15  to see how they used it.  That's not something we would have

16  any way of having.  That's why you have discovery on them as

17  a party.

18        THE COURT:  Okay.

19        Anybody else want to say anything?

20        I want to take a minute to visit with my

21  colleagues.  Nobody need to rise; just keep your seats.

22

23        (At this time a brief recess was taken)

24

25        THE COURT:  Anything further from anybody?

1          MR. CAMELI:  No, Your Honor.  Thank you.

2          THE COURT:  The matter is not free from doubt, but I

3    am not going to impose a stay.  I do believe that the -- I am

4    willing to be convinced otherwise, but I do believe the

5    complaint rises above the standard of being sanctionable.  I

6    do think it may be important to do things quickly as well as

7    thoroughly.  I don't want to delay unnecessarily.

8               I will, as in every case, I will in every case

9    consider the matter of economic sanctions at any other point

10   in the timeline that I think bad faith or other frivolous

11   conduct has been invoked.  I may be at some point persuaded

12   that the lawsuit was not filed in good faith; but right now I

13   think it meets the relevant standards under Rule 11, and I

14   think that there is not a sufficient basis for me staying

15   discovery pending rulings on the motion to dismiss or motion

16   for sanctions.

17              I think, in ruling that I think I am consistent

18   with the practice here throughout this district and I think

19   throughout the country.

20              Is there anything more we can achieve today?

21          MR. CAMELI:  Your Honor, just a couple things.  Mark

22   Cameli here.

23              So I am understanding, first of all, that

24   you're ruling on the merits of the Rule 11 as well?

25          THE COURT:  I haven't finally ruled on it.  I

1  haven't finally ruled on it, but it's very much my sense that

2  I think this complaint is adequate to meet Rule 11 objections

3          MR. CAMELI:  Your Honor, would you then be

4  expecting, per the current stay status, that the plaintiffs

5  amend, or excuse me, supplement to the degree they wish on

6  May 20th their response to our motion and then give us an

7  opportunity to reply before making a final ruling?

8          THE COURT:  Yes, I will.

9          MR. CAMELI:  All right.

10          The second thing then, Your Honor, is with

11  respect to actual making the discovery, their response is due

12  on May 20th.  We would like 14 days from today's date to make

13  the production, given the substantial nature of it.

14          THE COURT:  Okay.  Well, let's deal with that one.

15  Any objection to that?

16          MR. NEIGHBORS:  Your Honor, I think that gets him

17  halfway to the stay.  I think we're opposed to that, Your

18  Honor.

19          THE COURT:  I am going to allow that.  I am going to

20  allow that.

21          MR. CAMELI:  Thank you, Your Honor.

22          And then the last matter would be just the

23  unsealing of this transcript reference by counsel on the

24  November 9 hearing before Magistrate Judge Stacy.  We would

25  request that that be unsealed.

1          And we would also request that the current,

2    with respect to the search warrant executed in this matter

3    that was produced, you know, redacted form, that given the

4    nature of these proceedings, the lapse of time that has

5    occurred since then, over two years now Your Honor, that you

6    require and order that the search warrant be given to us,

7    that's all the parties, unredacted.  Would you do that as

8    well?

9          THE COURT:  I am going to have that under

10   advisement.  I have not looked at that case.  I have not

11   looked at anything to do with criminal files.  I will need to

12   give that some thought.

13         MR. CAMELI:  We will gladly supplement that request

14   and give you that opportunity.  And I appreciate that.

15         THE COURT:  Sure, sure.  Happy to do that.

16              Yes, sir.

17         MR. McINTURF:  Your Honor, I'm Tim McInturf, also on

18   the pleadings, for Quantlab.

19         THE COURT:  Yes, sir.

20         MR. McINTURF:  I just was going to tell everybody.

21   I told my friend Tim Cleary over there that we had contacted

22   the AUSA's office the other day asking what their position

23   would be if we filed a motion to unseal that hearing

24   transcript.  And he said he'd have to talk to his people and

25   get back to us.

1    THE COURT:  Who was the AUSA you were working with?

2    MR. McINTURF:  His name is Rob Johnson.

3    THE COURT:  Oh, sure.  I know him.

4    MR. McINTURF:  So, it's not that the parties to the

5    civil case -- you know, I think it's in the Rule 26

6    disclosures to every file, but there is some evidence that

7    they have that I think everybody would like to see; but they

8    obviously have their own feelings about that.

9    THE COURT:  So the way you left it, Mr. Johnson's

10   checking with his superiors about that?

11   MR. McINTURF:  Yes.

12   MR. CAMELI:  So I imagine, Your Honor, we'll be

13   getting back to you on both those matters, both the November

14   of '09 proceedings as well as the warrant itself.

15   THE COURT:  All right.

16   MR. CAMELI:  I appreciate you taking the time again

17   and allowing me to appear.

18   THE COURT:  Not at all.

19   One small matter.  I saw in the papers that at

20   one point a partner at Fulbright was involved, T.J. Wray,

21   W-r-a-y, I believe, whom I do not know.  But my wife has been

22   a partner at Fulbright for some 20 years.  If their conduct

23   is going to be at issue in this case, I am going to have to

24   think about recusal.

25   Does anybody have a feel for how involved they

1    were in anything that happened?

2            MR. McINTURF:  I think from our side, Your Honor,

3    Mr. Wray was involved for about two weeks in the beginning.

4    We went to a mediation, and he withdrew the day after it, so

5    I doubt whether his conduct was going to be involved.

6            THE COURT:  Well, I will give you some time to think

7    about that.  If anybody wants to raise the issue, this would

8    be the time to do it.

9            MR. CAMELI:  Your Honor, I'm sorry.  But can you

10   tell me again who that person was and the relation to the

11   case.

12           THE COURT:  Why don't you speak to that.

13           MR. McINTURF:  Your Honor, my understanding is that

14   Mr. Wray represented Mr. Godlevsky and Mr. Kuharsky as local

15   counsel in a state court matter that was pending briefly that

16   was before any of this theft issue came up.

17           MR. CAMELI:  I see.  Okay.  Thank you.  That's

18   helpful.

19           THE COURT:  Thank you all very much then.

20

21                   (Conclusion of proceedings)

22

23

24

25

CERTIFICATION

1
2
3
4
5       I, Fred Warner, Official Court Reporter for the
6   United States District Court for the Southern District of
7   Texas, Houston Division, do hereby certify that the foregoing
8   pages 1 through 33 are a true and correct transcript of the
9   proceedings had in the above-styled and numbered cause before
10  the Honorable KEITH P. ELLISON, United States District Judge,
11  on the 12th day of May, 2010.
12      WITNESS MY OFFICIAL HAND at my office in Houston,
13  Harris County, Texas on this the 29th day of March, A.D.,
14  2011.

_____
Fred Warner, CSR
Official Court Reporter