UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

QUANTLAB TECHNOLOGIES, LTD.
(BVI) AND QUANTLAB FINANCIAL,
LLC,

                      Plaintiffs,                Civil Action No. H-09-4039

            v.

VITALIY GODLEVSKY, ANDRIY
KUHARSKY, ANNA MARAVINA,
PING AN, EMMANUEL MAMALAKIS
and SXP ANALYTICS, LLC,

                      Defendants.

## SXP ANALYTICS, LLC'S AND EMMANUEL MAMALAKIS' MOTION FOR ORDER COMPELLING DISCOVERY

Defendants SXP Analytics, LLC and Emmanuel Mamalakis (collectively, for purposes of this motion "SXP"), by their attorneys, Reinhart Boerner Van Deuren s.c., hereby move the Court, pursuant to Federal Rule of Civil Procedure 37, for an order compelling discovery on the grounds that plaintiffs Quantlab Technologies, Ltd (BVI) and Quantlab Financial, LLC (collectively "Quantlab") have refused to answer SXP's First Set of Interrogatories and Requests for Production of Documents.

Throughout the course of this litigation Quantlab has acted like a party with something to hide: falsely telling the government that – Microsoft files or empty files were its own trade secrets so that the government would search SXPs seized computers for those materials; harassing defendants and unrelated third parties; and now concealing

information SXP needs to craft a defense.  Quantlab's refusal to provide responses cannot be permitted.  In support of their motion, SXP states as follows:

## Introduction

As the Court is aware, this is a case in which Quantlab has accused SXP of trade secret theft and copyright violation, allegations that were the subject of parallel criminal investigation.  Following a "thorough" and "extensive" investigation, including the seizure and forensic analysis of more than 100 SXP computing devices, the federal government declined to bring any charges against any party relating to the allegations made by Quantlab.

As part of its own investigation into this matter, SXP has received information that, if true, indicates Quantlab and its affiliate entities have for years been engaged in a pattern and practice of improper, illicit, and illegal activity – and at least one of the former Quantlab employees that are defendants in this case knew about this wrongdoing.  The discovery of this information is therefore relevant to SXP's "unclean hands" affirmative defense, to questions of Quantlab's credibility, motive and bias, and to the damages and other relief sought by Quantlab.

Thus SXP seeks information relevant to the parties claims and defenses and is reasonably calculated to lead to the discovery of admissible evidence.  The information SXP is seeking could substantiate allegations that Quantlab was "front running" its clients (a practice prohibited by the Securities and Exchange Commission) and has used the government and the legal system as a cudgel against the former employees who were aware of this activity.  This information is highly relevant to SXP's and Mamalakis's potential defenses, and the Court should not permit Quantlab to conceal it.  Quantlab's

assertion that the requested discovery is particularly meritless given Quantlab has sought virtually identical discovery from SXP.

## Factual Background

After SXP's offices were raided in 2008 and all of its computer equipment seized by the FBI at Quantlab's behest, SXP, knowing that it had never stolen, used, or relied on any of Quantlab's proprietary information, was at a loss as to why they had been targeted by Quantlab. As a result, SXP conducted its own investigation into the relationship between Quantlab and its former employees, including co-defendants Dr. Vitaliy Godlevsky and Dr. Andrew Kuharsky[1].

In the Spring of 2010, Dr. Godlevsky provided SXP with information that suggested to SXP that Quantlab's actions might be motivated more toward concealing Quantlab's own illicit activity than anything else. (Exhibit 5, Defendant SXP Analytics, LLC's Supplemental Responses to Plaintiff's First Set of Interrogatories at pp. 7-8.) Specifically, Dr. Godlevsky told SXP that, while Dr. Godlevsky worked at Quantlab, Quantlab would receive orders from clients of its broker-dealer affiliate and routinely step in front of its clients and take those orders for its own account. (Id.) This practice, known as "front running," constitutes direct theft of client funds, and is prohibited by the Securities and Exchange Commission ("SEC"). The accuracy of Dr. Godlevsky's allegation would be readily determinable by examining data kept by Quantlab, its clients, and the exchanges, in the form of order tickets and trade blotters. Dr. Godlevsky

---

[1] Dr. Godlevsky and Dr. Kuharsky had already been targeted for litigation by Quantlab once before this case was filed. Quantlab had sought, and been denied, a preliminary injunction against both men in two separate state court actions in 2008 based on the same basic tale of trade secret theft. (See Dkt. 27, Exhibits A & B, copies of state court complaints). After Quantlab failed to obtain injunctive relief, it simply non-suited both cases.

suggested to SXP that this litigation and the criminal investigation instigated by Quantlab

(and ultimately abandoned by the government) may have been directed toward

concealing that conduct or discrediting Quantlab's former employees, who knew what

Quantlab had done and could expose it.  (Id.)

Dr. Godlevsky's revelations understandably concerned SXP.  SXP grew even

more concerned when SXP saw how Quantlab reacted when Dr. Godlevsky sought

discovery on these issues in the summer of 2010.  Dr. Godlevsky served a notice of

deposition for Quantlab officer Dr. Andrey Omeltchenko.  Quantlab refused to present

Dr. Omeltchenko for a deposition, forcing Dr. Godlevsky to file a motion to compel of

his own.  (See July 15, 2010 Motion to Compel, Dkt. # 66.)  Before the Court could

address this motion, the FBI intervened and requested a stay, pending the results of its

investigation.

SXP's concern was heightened further when considered in conjunction with what

SXP had already learned about Quantlab's role in the FBI's investigation.  The FBI,

acting on the basis of a complaint from Quantlab, had seized every single piece of

computing equipment owned by SXP in March of 2008.  The FBI had then asked

Quantlab to provide it with MD5 hashes, a type of "digital fingerprint" unique to any

particular file.  (Exhibit 1, Transcript of September 3, 2008 Hearing in *US v. SXP*, S.D.

Tex, Mag. Judge Smith presiding at pp. 18-19.)  Initially, Quantlab provided the FBI with

a list of 87,000 MD5 hashes that Quantlab claimed constituted Quantlab's trade secrets.

(Id. at 19-20.)  The FBI ran searches on the seized devices in an effort to find files with

matching MD5 hashes and thus, theoretically, evidence of trade secret theft.  (Id. at

20-22.)  The results of these searches revealed that, rather than unique or potentially

4

proprietary files, Quantlab had provided the FBI with MD5 hashes for commonplace

Microsoft operating system files or "zero set" files that contained no information

whatsoever:

| A: | Sometimes they [the 87,000 hash values] come out to a zero file -- zero-sized file.  Basically, it's just a name of a file but the file has no content.  So I went back to the case agent and identified that.  The case agent has now provided me with a list of 17,000 as far as -- |
|---|---|
| Q: | Additional items? |
| A: | No, just -- they reduced it down to 17,000.  This is just in the last week. |
| Q: | So at first, Quantlab gives you 87,000 hashes plus some words and says, "Go check on SXP's computers to see if those appear," right? |
| A: | The case agent did, yes, sir. |
| Q: | And last week you're saying that through the case agent SXP [*sic*] said, "Forget about the 87,000, take it down to 17,000"? |
| A: | I got a listing that was a reduced number to about 17,000. |
| Q: | And what was it that you had found that caused that to happen? |
| A: | It was just that I found files that it was matching on that appeared to be part of the Microsoft operating system files. |

(*Id.* at 21-22.)  In short, Quantlab had dispatched the FBI on a wild goose chase.

Once the FBI notified Quantlab that its initial list was useless, Quantlab reduced

the list of its allegedly secret files by more than 80% and provided the FBI with a new list

of 17,000 MD5 hashes.  (Id.)  The FBI ran searches on SXP's seized computer

equipment– 32 computers, servers and other storage devices (encompassing 64 hard

drives altogether) and on other media that could hold electronically stored information,

namely over 40 CD's and DVD's.  After searching for 17,000 files on each of the more

than 100 items, the FBI identified only one single device that contained any of the

allegedly "secret" files: an SXP computer used exclusively by Dr. Godlevsky.  Critically,

following what the FBI described to this Court as an "extensive" and "thorough"

investigation, the government *declined to bring criminal charges against anyone.*

Moreover, during the pendency of the stay of litigation in this Court, Quantlab has continued its campaign of harassment and intimidation against Dr. Kuharsky. (Kuharsky's Motion for a Protective Order, Dkt. # 128.)  This behavior allegedly cost Kuharsky at least one job, and has made it difficult for him to secure another. *Id.*

Dr. Godlevsky's allegations of front running by Quantlab, the wild goose chase Quantlab sent the FBI on, and Quantlab's continued harassment of its former employees has convinced SXP that questions of Quantlab's motives and conduct merit investigation. For nearly four years, SXP lived under a dark cloud created by accusations from Quantlab.  Now that the government has determined that Quantlab's accusations lack sufficient merit to justify any criminal charges and the stay has been lifted, SXP intends to investigate all aspects of this matter, including Quantlab's motives and the basis for Quantlab's alleged damages.

## The Discovery Requests

SXP and Mamalakis served written discovery requests on Quantlab on December 22, 2012.  The requests consisted of three interrogatories and five requests for production.  Each of these requests relates to Quantlab's relationship with third parties and Quantlab's trading history.  Each of these discovery requests has an analog among the 148 requests for production and 14 interrogatories that Quantlab has served on SXP. (See e.g. Exhibit 2, Quantlab's Interrogatories to SXP at Interrogatories 1-3; Exhibit 3, Quantlab's Requests for Production to SXP at Requests 13-25, 88.)

Prior to the date on which responses would have been due, counsel for Quantlab indicated that Quantlab intended to object and refuse to respond to each request.  On January 26, 2012, Quantlab served its formal responses.  As its attorneys had promised, Quantlab's responses consisted entirely and exclusively of objections.  (Exhibit 4,

6

Plaintiff's Objections and Responses to SXP's and Mamalakis's First Set of Discovery).

On January 31, 2012 counsel held a final telephonic conference, and counsel for

Quantlab again reiterated Quantlab's position that the information sought by SXP and

Mamalakis was irrelevant and that Quantlab would not respond beyond its objections.

**Argument**

SXP and Mamalakis have a good faith basis to seek discovery on the subject

matter of these requests, and are entitled to a substantive response.  Federal Rule of

Procedure 26(b)(1) provides, in part:

> Parties may obtain discovery regarding any nonprivileged matter that is
> relevant to any party's claim or defense--including the existence,
> description, nature, custody, condition, and location of any documents or
> other tangible things and the identity and location of persons who know
> of any discoverable matter. For good cause, the court may order
> discovery of any matter relevant to the subject matter involved in the
> action. Relevant information need not be admissible at the trial if the
> discovery appears reasonably calculated to lead to the discovery of
> admissible evidence.

The information sought by SXP and Mamalakis is relevant to the scope of Quantlab's

claimed damages, SXP and Mamalakis's affirmative defense of unclean hands, the

behavior of Quantlab in prosecuting this case, and issues of Quantlab's bias and

credibility.

As SXP recently explained in its supplemental responses to Quantlab's

interrogatories, SXP and Mamalakis have been told by Dr. Godlevsky that while he was

employed at Quantlab, he observed Quantlab engaging that in "front running" orders

placed by Quantlab's clients.  (Exhibit 5, Defendant SXP Analytics, LLC's Supplemental

Responses to Plaintiff's First Set of Interrogatories at pp. 7-8.)  Given this information,

and the fact that when Quantlab first accused SXP and Mamalakis of trade secret theft

they claimed to the FBI that thousands of commonplace Microsoft operating files were

7

their alleged trade secrets, SXP and Mamalakis have a good faith basis to investigate the possibility that Quantlab's actions are motivated towards concealing evidence of their own wrongdoing and misconduct.

This potentially illicit behavior on Quantlab's part is directly relevant to SXP and Mamalakis' unclean hands defense. The doctrine applies when a plaintiff seeking relief has committed an unconscionable act immediately related to the claims made by the plaintiff. *See Alcatel USA, Inc. v. DGI Tech., Inc.,* 166 F.3d 772, 794 (5th Cir. 1999) (analyzing plaintiff's unclean hands in a trade secret case); *Petro Franchise Sys., LLC v. All American Prop., Inc.,* 607 F. Supp. 781, 799-800 (W.D. Tex. 2009). Here, the misconduct alleged, illicit trading activity followed by an abuse of the legal system to conceal that illicit activity, relates directly to the claims made by Quantlab. Indeed this entire litigation could be part of an attempt to conceal the illicit conduct and to discredit former employees who witnessed the illicit conduct. If SXP and Mamalakis have been accused of theft and conspiracy by an organization that itself breached its fiduciary and legal obligations, SXP and Mamalakis are entitled to find out.

Likewise, if Quantlab's trading relationship with its customers involved inappropriate, unethical or illegal behavior on Quantlab's part, then Quantlab may have ceased that behavior after Godlevsky and Kuharsky left Quantlab given their knowledge of it. Accordingly, the damages Quantlab now attributes to SXP and Mamalakis – a decline in the profitability of its trading system – may have been caused by a change to or cessation of Quantlab's front running operation. The motive to cover up wrongdoing would also suggest that Quantlab's claimed lost profits, if obtained illicitly, should not be a proper category of damages.

Similarly, the credibility of Quantlab and its officers and directors could be undermined by evidence that Quantlab engaged in wrongdoing against its own clients, and then engaged in a pattern of harassment directed at Kuharsky, Godlevsky, and any third party who dared to associate with them. Just as the fact that Quantlab told the FBI that thousands of Microsoft operating systems files were Quantlab's proprietary trade secrets suggests a lack of credibility, improper bias, and questionable motives, if Quantlab or its officers knowingly violated SEC regulations to gain an advantage over Quantlab's clients would cast doubt on Quantlab's claims regarding the nature of SXP's or Mamalakis's supposed involvement in a conspiracy.

Kuharsky's motion for a protective order, filed on January 26, 2012, provides further support for the suggestion that Quantlab is more concerned with silencing former employees than with pursuing the claims that they have stated in the second amended complaint. In his motion, Kuharsky alleges generally that Quantlab has engaged in a pattern and practice of harassing behavior apparently aimed at preventing him from obtaining any employment. This alleged behavior relates directly to plaintiff's alleged exploitation of its relationship with third parties, and is highly relevant to SXP's and Mamalakis's defense.

In summary, SXP and Mamalakis are entitled under the rules of civil procedure to pursue any discovery that is reasonably calculated to the discovery of relevant evidence. SXP and Mamalakis have ample basis to inquire into the nature of Quantlab's trading services, both for evidence that might be probative of Quantlab's damages and evidence that might be probative of unclean hands, impure motive or other bias on the part of

9

Quantlab. This Court should enter an order permitting SXP and Mamalakis to pursue these legitimate subjects of discovery.

THEREFORE, based on the foregoing, defendants SXP Analytics, LLC and Emmanuel Mamalakis hereby request that this court issue:

1.    An order overruling Quantlab's objections and compelling Quantlab to answer SXP and Mamalakis's First Set of Interrogatories.

2.    An order overruling Quantlab's objections and requiring Quantlab to comply with SXP and Mamalakis's Request for Production of Documents.

3.    An order requiring Quantlab to pay the reasonable expenses, including attorney fees of SXP and Mamalakis, incurred by Quantlab's failure to make the discovery requested by SXP and Mamalakis; and

4.    Any other relief the Court deems just.

Dated this 6th day of February, 2012.

/s/ David G. Hanson

| | |
|---|---|
| James M. Cleary, Jr. | David G. Hanson (admitted *pro hac vice*) |
| State Bar No. 00783838 | **Attorney In Charge** |
| Fed. ID No. 15499 | dhanson@reinhartlaw.com |
| Martin, Disiere, Jefferson & Wisdom, LLP | Mark A. Cameli (admitted *pro hac vice*) |
| 808 Travis, Suite 1800 | mcameli@reinhartlaw.com |
| Houston, Texas 77002 | Ryan S. Stippich (admitted *pro hac vice*) |
| Telephone: 713 632-1775 | rstippich@reinhartlaw.com |
| Facsimile: 713 222-0101 | Robert S. Jones (admitted *pro hac vice*) |
| Email: cleary@mdjwlaw.com | rjones@reinhartlaw.com |

Attorneys for Defendants SXP
Analytics, LLC and Emmanuel Mamalakis

Attorneys for Defendants SXP
Analytics, LLC and Emmanuel Mamalakis
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone: 414-298-1000
Facsimile: 414-298-8097

REINHART\8280337

**Certificate of Compliance with Local Civil Rule 7.1(d)**

I hereby certify that counsel for SXP Analytics, LLC and Emmanuel Mamalakis have attempted in good faith on multiple occasions to reach an agreement with counsel for plaintiffs with regard to SXP's and Mamalakis's  first set of discovery to plaintiffs.

I hereby certify that I conferred telephonically with Allan Neighbors and/or Scott McDonald, counsel for Quantlab, on January 4, 2012, January 17, 2012 and January 31, 2012 on the subjects addressed in the motion to compel.  In addition, I have exchanged numerous written correspondence with attorneys Neighbors and McDonald on these subjects, including an e-mail message to Attorney Neighbors on January 31, before the final meet-and-confer call, in which I listed earlier letters where I had set forth SXP's position.  Despite the best efforts of counsel, the parties have been unable to reach an agreement.

With regard to SXP's and Mamalakis's first set of written discovery to plaintiffs, plaintiffs have maintained during these discussions that the information sought is irrelevant and have maintained that they will not produce any information or documents in response.  The parties have reached an impasse with regard to the relevance of each of the interrogatories and requests for production.

11

James M. Cleary, Jr.
State Bar No. 00783838
Fed. ID No. 15499
Martin, Disiere, Jefferson & Wisdom, LLP
808 Travis, Suite 1800
Houston, TX 77002
Telephone:  713 632-1775
Facsimile:  713 222-0101
Email:  cleary@mdjwlaw.com

Attorneys for Defendants SXP
Analytics, LLC and Emmanuel Mamalakis

/s/ David G. Hanson
David G. Hanson (admitted *pro hac vice*)
**Attorney In Charge**
dhanson@reinhartlaw.com
Mark A. Cameli (admitted *pro hac vice*)
mcameli@reinhartlaw.com
Ryan S. Stippich (admitted *pro hac vice*)
rstippich@reinhartlaw.com
Robert S. Jones (admitted *pro hac vice*)
rjones@reinhartlaw.com

Attorneys for Defendants SXP
Analytics, LLC and Emmanuel Mamalakis
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone:  414-298-1000
Facsimile:  414-298-8097

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

QUANTLAB TECHNOLOGIES, LTD.
(BVI) AND QUANTLAB FINANCIAL,
LLC,

                      Plaintiffs,               Civil Action No. H-09-4039

          v.

VITALIY GODLEVSKY, ANDRIY
KUHARSKY, ANNA MARAVINA,
PING AN, EMMANUEL MAMALAKIS
and SXP ANALYTICS, LLC,

                    Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2012, SXP Analytics, LLC's and Emmanuel

Mamalakis' Motion for Order Compelling Discovery was electronically filed with the

Clerk of Court using the ECF system and sent to those who are currently on the mailing

list to receive e-mail notices for this case.

Also, to the following by first class mail only:

Ms. Ping An
92 North Chandler Creek
The Woodlands, TX 77381

/s/ David G. Hanson

James M. Cleary, Jr.
State Bar No. 00783838
Fed. ID No. 15499
Martin, Disiere, Jefferson & Wisdom, LLP
808 Travis, Suite 1800
Houston, TX 77002
Telephone:  713 632-1775
Facsimile:  713 222-0101
Email:  cleary@mdjwlaw.com

David G. Hanson (admitted *pro hac vice*)
**Attorney In Charge**
dhanson@reinhartlaw.com
Mark A. Cameli (admitted *pro hac vice*)
mcameli@reinhartlaw.com
Ryan S. Stippich (admitted *pro hac vice*)
rstippich@reinhartlaw.com
Robert S. Jones (admitted *pro hac vice*)
rjones@reinhartlaw.com
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone:  414-298-1000
Facsimile:  414-298-8097

*Attorneys for Defendants SXP Analytics,
LLC and Emmanuel Mamalakis*

*Attorneys for Defendants SXP Analytics,
LLC and Emmanuel Mamalakis*

REINHART\8313299

2