UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

QUANTLAB TECHNOLOGIES, LTD.
(BVI) and QUANTLAB FINANCIAL,
LLC,

                Plaintiffs,             Civil Action No. H-09-4039

v.

VITALIY GODLEVSKY, ANDRIY
KUHARSKY, ANNA MARAVINA,
PING AN, EMMANUEL
MAMALAKIS and SXP
ANALYTICS, LLC,

                Defendants.

## DEFENDANT SXP ANALYTICS, LLC'S FIRST SUPPLEMENTAL ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant SXP Analytics, LLC ("SXP") hereby supplements its answers to Plaintiff's first set of interrogatories as follows:

### PRELIMINARY STATEMENT

SXP has not yet fully completed its investigation of the facts related to the case, has not fully completed discovery in this action, and has not completed its preparation for trial. All of the answers contained herein are based only upon such information and documents as are presently available and specifically known to SXP. It is anticipated that further discovery, independent investigation, legal


EXHIBIT 5

research, and analysis will supply additional facts, add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the contents set forth herein.

The following responses are given without prejudice to SXP's right to produce evidence of any subsequently discovered fact or facts. SXP accordingly reserves the right to change and supplement any and all responses herein as additional facts are ascertained, analyses are made, and legal research is completed. The answers contained herein are made in a good faith effort to supply as much factual information as is presently known, but should in no way prejudice SXP's right to supplement or augment its responses to these Requests as its discovery and investigation continues. SXP objects to all the requests to the extent they request attorney-client privileged communications.

SXP does not waive and incorporates by reference each and every of its objections to the requests, and to the definitions and instructions as if fully set forth herein.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify the particular financial markets on which SXP currently trades and, for each market, specify the percentage of SXP's total 2009 trading volume attributable to that financial market.

**SUPPLEMENTAL ANSWER:**

SXP objects the phrase "financial markets" because it is vague and ambiguous as used in this interrogatory. Subject to and without waving this specific objection and the general objections above, SXP responds in a good faith attempt to supplement its earlier answer this interrogatory as follows:

Brazilian Stock Exchange, Bovespa.

**INTERROGATORY NO. 2:**

Identify any and all computer files that contain any computer code or computer code fragments originally developed by Quantlab employees during their employment with Quantlab that have been, at any point in time, in the possession, custody, or control of SXP. For each document or file identified in your answer, please provide: the name or a detailed description of the document or file; the place and time at which it came into your possession, custody, or control; and the person(s) who provided it to you.

**SUPPLEMENTAL ANSWER:**

SXP incorporates herein its objection to the definition of "computer code" set forth above, and specifically objects further to the phrase "computer code or computer code fragments developed by Quantlab" because it is vague and ambiguous. Further, until Quantlab identifies with specificity its computer code or computer code fragments at issue in this case, this interrogatory is overbroad, unduly burdensome, seeks information irrelevant to the parties' claims and

defenses, and therefore SXP also lacks information sufficient to respond to this request.

Subject to and without waiving the foregoing, SXP is aware that Quantlab has alleged in this case and in statements to investigators or prosecutors for the United States Government (the "Government") that computer files it claims to be Quantlab property, identified with certain MD5 hash values, were loaded on to a computer located in a room of SXP's former Houston office used by Vitaliy Godlevsky. Those files are listed in an appendix to an August 30, 2011 letter from Assistant United States Attorney Robert Johnson, as referred to in Quantlab's Second Amended Complaint. SXP has confirmed that certain of those files were loaded on to that computer on November 22, 2007. SXP is also aware that earlier in the investigation, Quantlab provided the Government with thousands of MD5 hash values for computer files it claimed to be Quantlab property, but were in fact Microsoft operating system files. According to the Government, it conducted an "extensive and thorough" investigation and found no evidence of any other computer files or code that Quantlab alleged to be its property on any of the over 60 other computer drives and 40 CD's and DVD's seized by the FBI from SXP.

Further answering, SXP lacks knowledge with respect to whether any of the files on Mr. Godlevsky's computer were in fact developed by Quantlab and does not believe that any of them constitute trade secrets.

**INTERROGATORY NO. 3:**

To the extent not encompassed by Interrogatory No. 6, identify any and all property (whether electronic or paper) belonging to Quantlab that has been, at any point in time, in the possession, custody, or control of SXP. For each piece of property responsive to this interrogatory, please provide: the name or a detailed description of the property; the place and time at which it came into your possession, custody, or control; and the person(s) who provided it to you.

**SUPPLEMENTAL ANSWER:**

SXP objects that "property (whether electronic or paper) belonging to Quantlab" is vague and ambiguous. Further, until Quantlab identifies with specificity the property belonging to Quantlab at issue in this case, this interrogatory is overbroad, unduly burdensome, seeks information irrelevant to the parties' claims and defenses, and therefore SXP also lacks information sufficient to respond to this request.

Subject to and without waiving the foregoing, SXP is aware that Quantlab has alleged in this case and in statements to investigators or prosecutors for the United States Government (the "Government") that computer files it claims to be Quantlab property, identified with certain MD5 hash values, were loaded on to a computer located in a room of SXP's former Houston office used by Vitaliy Godlevsky. Those files are listed in an appendix to an August 30, 2011 letter from Assistant United States Attorney Robert Johnson, as referred to in Quantlab's Second Amended Complaint. SXP has confirmed that certain of those files were

loaded on to that computer on November 22, 2007. SXP is also aware that earlier in the investigation, Quantlab provided the Government with thousands of MD5 hash values for computer files it claimed to be Quantlab property, but were in fact Microsoft operating system files. According to the Government, it conducted an "extensive and thorough" investigation and found no evidence of any other computer files or code that Quantlab alleged to be its property on any of the over 60 other computer drives and 40 CD's and DVD's seized by the FBI from SXP.

Further answering, SXP lacks knowledge with respect to whether any of the files on Mr. Godlevsky's computer were in fact developed by Quantlab and does not believe that any of them constitute trade secrets.

### INTERROGATORY NO. 8:

Identify all Quantlab employees (current or former) with whom any employee, officer, or representative of SXP has discussed Quantlab's trading strategies or trading technology, specifying for each: the date and place of the discussion and the identity of the SXP employee, officer, or representative who participated in the discussion with the Quantlab employee.

### SUPPLEMENTAL ANSWER:

SXP incorporates herein its objections to the definitions of "trading strategies" and "trading technology," and further specifically objects to the phrase "Quantlab's trading strategies or trading technology" because it is vague, ambiguous, and overbroad. Further, until Quantlab identifies with specificity the Quantlab trading strategies or technology at issue in this case, this interrogatory is

overbroad, unduly burdensome, seeks information irrelevant to the parties' claims and defenses, and therefore SXP also lacks information sufficient to respond to this request.

Subject to and without waiving the general objections and the foregoing, SXP answers that it is not aware of any discussions described in the interrogatory, except to the extent that the following can be construed as a discussion of a Quantlab trading strategy:

In approximately the Spring of 2010, Mr. Godlevsky and Mr. Mamalakis were discussing the Government investigation that had been initiated at the behest of Quantlab. This was approximately year or year-and-a-half after SXP learned that Quantlab had identified MD5 hash values for Microsoft operating files as potential Quantlab property that the Government should search for on the items seized from SXP. Mr. Mamalakis wondered with Mr. Godlevsky why Quantlab would make such a gross misrepresentation to the Government, given the fact that there was no way SXP could possibly harm Quantlab. At first Mr. Godlevsky had no answer, but then a few days later he mentioned that he did not know why Quantlab would do that either considering how significantly different SXP and Quantlab were. Mr. Mamalakis asked Mr. Godlevsky to explain. Mr. Godlevsky went on to explain that Quantlab had other customers that they traded for and that SXP did not. Mr. Godlevsky further explained how SXP did not have to be concerned with competing with its customers' quotes, or making sure the customer did not step in front of SXP. Mr. Godlevsky stated that, in fact, at Quantlab they

7

were very strict about making sure that Quantlab always stepped in front of customer quotes, and that if a valuable quote came through that Quantlab always came first. In addition, Mr. Godlevsky described how Quantlab used clients as indicators, received information feeds in Chicago ahead of other market participants and traded based on that information. Upon hearing this, Mr. Mamalakis explained to Mr. Godlevsky that he believed that the Quantlab actions he described were illegal.

**INTERROGATORY NO. 4:**

Identify all SXP employees (current or former) who had access to any computer code or computer code fragments originally developed by Quantlab employees during their employment with Quantlab.

**ANSWER:**

SXP incorporates herein its objection to the definition of "computer code" set forth above, and specifically objects further to the phrase "computer code or computer code fragments developed by Quantlab" because it is vague and ambiguous. Further, until Quantlab identifies with specificity its computer code or computer code fragments at issue in this case, this interrogatory is overbroad, unduly burdensome, seeks information irrelevant to the parties' claims and defenses, and therefore SXP also lacks information sufficient to respond to this request.

Subject to and without waiving the foregoing, SXP is aware that Quantlab has alleged in this case and in statements to investigators or prosecutors for the

United States Government (the "Government") that computer files it claims to be Quantlab property, identified with certain MD5 hash values, were loaded on to a computer located in a room of SXP's former Houston office used by Vitaliy Godlevsky. Those files are listed in an appendix to an August 30, 2011 letter from Assistant United States Attorney Robert Johnson, as referred to in Quantlab's Second Amended Complaint. SXP has confirmed that certain of those files were loaded on to that computer on November 22, 2007. SXP is also aware that earlier in the investigation, Quantlab provided the Government with thousands of MD5 hash values for computer files it claimed to be Quantlab property, but were in fact Microsoft operating system files. According to the Government, it conducted an "extensive and thorough" investigation and found no evidence of any other computer files or code that Quantlab alleged to be its property on any of the over 60 other computer drives and 40 CD's and DVD's seized by the FBI from SXP.

Further answering, SXP lacks knowledge with respect to whether any of the files on Mr. Godlevsky's computer were in fact developed by Quantlab and does not believe that any of them constitute trade secrets.

Dated this 23rd day of January, 2012.

James M. Cleary, Jr.
State Bar No. 00783838
Fed. ID No. 15499
Martin, Disiere, Jefferson & Wisdom, LLP
808 Travis, Suite 1800
Houston, Texas 77002
Telephone: (713) 632-1775
Facsimile: (713) 222-0101
Email: cleary@mdjwlaw.com

Attorneys for Defendants SXP Analytics, LLC and Emmanuel Mamalakis

As to Objections:

_/s/ David G. Hanson_

David G. Hanson (admitted *pro hac vice*)
**Attorney In Charge**
dhanson@reinhartlaw.com
Mark A. Cameli (admitted *pro hac vice*)
mcameli@reinhartlaw.com
Ryan S. Stippich (admitted *pro hac vice*)
rstippich@reinhartlaw.com
Robert S. Jones (admitted *pro hac vice*)
rjones@reinhartlaw.com
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone: 414-298-1000
Facsimile: 414-298-8097

Attorneys for Defendants SXP Analytics, LLC and Emmanuel Mamalakis

8243597