# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| QUANTLAB TECHNOLOGIES LTD. (BVI) AND QUANTLAB FINANCIAL, LLC, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-09-4039 |
| VITALIY GODLEVSKY, ANDRIY KUHARSKY, ANNA MARAVINA, PING AN, EMMANUEL MAMALAKIS, AND SXP ANALYTICS, LLC, | § § § § § | JURY DEMANDED |
| Defendants. | § | |

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION TO DEFENDANT SXP ANALYTICS, LLC

To:   Defendant SXP Analytics, LLC, by and through its attorneys of record, James J. Cleary, Jr., MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P., 808 Travis, Suite 1800, Houston, Texas 77002 and David G. Hanson, Mark Cameli, and Amy L. Lindner, REINHART BOERNER VAN DEUREN, S.C., 1000 North Water Street, Suite 1700, Milwaukee, Wisconsin 53202

Pursuant to Rules 26 and 34 of the Federal Rules, Plaintiff Quantlab Technologies Ltd. (BVI) and Quantlab Financial, LLC (collectively, "Quantlab") request that Defendant SXP Analytics, LLC ("SXP") produce for inspection and copying the documents identified below at the offices of Littler Mendelson, P.C., 1301 McKinney, Suite 1900, Houston, Texas 77010, within thirty days of service.

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to Quantlab's First Request for Production to SXP:

1.      "Person" means any natural person, firm, partnership, corporation, unincorporated association, organization, governmental body, cooperative or other form of legal entity.

2.      "You" or "your" and "SXP" refers to Defendant SXP Analytics, LLC, its subsidiaries, affiliates, and any or all persons acting or purporting to act on behalf of SXP with respect to the subject matter of this lawsuit, including without limitation Emmanuel Mamalakis and Vitaliy Godlevsky.

3.      "Quantlab" refers to Quantlab Financial, LLC, and Quantlab Technologies Ltd. (BVI) collectively and any or all persons acting or purporting to act on behalf of Quantlab with respect to the subject matter of this lawsuit.

4.      "Godlevsky" refers to Defendant Vitaliy Godlevsky and any or all persons acting or purporting to act on behalf of Godlevsky with respect to the subject matter of this lawsuit.

5.      "Kuharsky" refers to Defendant Andriy Kuharsky and any or all persons acting or purporting to act on behalf of Kuharsky with respect to the subject matter of this lawsuit.

6.      "An" refers to Defendant Ping An, and any or all persons acting or purporting to act on behalf of An with respect to the subject matter of this lawsuit.

7.      "Maravina" refers to Defendant Anna Maravina, and any or all persons acting or purporting to act on behalf of Maravina with respect to the subject matter of this lawsuit.

8.      "Mamalakis" refers to Defendant Emmanuel Mamalakis and any or all persons acting or purporting to act on behalf of Mamalakis with respect to the subject matter of this lawsuit.

9.      "High frequency trading" refers to buying and selling the same security on the same day or intraday trading.

10.     "Quantlab's business" means the business of developing, implementing and/or improving trading strategies for "day-trading," defined as buying and selling the same security on the same day or intraday trading.

11.     "Trading strategies" means strategies for applying mathematical models, statistical models, or other analytical tools to identify market mispricings, deviations from statistical pricing patterns, market anomalies arising from supply and demand imbalances, or other factors that may allow a person to forecast what the price of various financial instruments will be in the future.

12.     "Trading technology" means software (including computer code) and/or hardware configurations that are used to implement trading strategies and execute trades on financial markets.

13.     "Automated trading" means using trading strategies that are reduced to mathematical formulas and algorithms and then translated into machine-readable executable code so that the buy/sell decisions are made by computers.

14.     "Quantlab documents" means and includes any paper or electronic memorandum, item of correspondence, or a file relating to automated trading that was created by a Quantlab employee during the timeframe that he or she was employed by Quantlab.

15.     "Computer code" means either source code or machine-readable executable code or both.

16.     "Employees" means and includes both current and former employees.

17.     "Computer" means and includes but is not limited to desktops, laptops, notebook computers, home computers, network servers, or mainframes.

18.     "Electronic storage device" means any device that stores information in an electronic format and includes but is not limited to internal hard drives, external hard drives, USB

"thumb" drives, Blackberrys, PalmPilots, MP3 players, iPods, cell phones, and pagers.

19.     "Electronic or magnetic data" shall have the same meaning as "electronically stored information" or "ESI."

20.     "Document" refers to any written or graphic matter, or other physical thing containing information, however produced or reproduced, of every kind and description and in any medium, including any original or draft (with or without notes or changes thereon) of any of the foregoing.  "Document" includes (without limitation of the generality of the foregoing) correspondence, blueprints, drawings, papers, books, accounts, letters, photographs, objects, microfilm, telegrams, notes or sound recordings of any type of personal or telephone conversations or meetings or conferences, minutes of directors or committee meetings, memoranda, communications, reports, written forecasts, projects, analyses, contracts, licenses, agreements, ledgers, books of account, vouchers, bank checks, invoices, charge slips, expense account reports, hotel charges, receipts, freight bills, working papers, drafts, statistical records, cost sheets, abstracts of bids, stenographers' notebooks, calendars, electronic or magnetic data, including electronic mail (including electronic mail that is active, archived, deleted or otherwise retained and reasonably available to the responding party in the ordinary course of business), appointment books, diaries, time sheets or logs, job or transactions files, computer printouts, or papers similar to any of the foregoing however nominated.  Any such document bearing on any portion thereof any mark (including but not limited to initials, stamped indicia, comments or notations or any character) not a part of the original text or photographic reproduction thereof is to be considered as a separate document.

21.     "Fact" includes all acts, transactions, facts, occurrences, practices, policies and course of conduct as a source or basis upon which knowledge of such fact is based.

22.     "Each" includes the word "every" and "every" includes the word "each." "Any" includes the word "all" and "all" includes the word "any." "And" includes the word "or" and "or" includes the word "and."

23.     "Communication(s)" means any transmission of information from one person or persons to another person or persons, regardless of the medium by which such communication occurred, including but not limited to electronic mail (including electronic mail that is active, archived, deleted or otherwise retained and reasonably available to the responding party in the ordinary course of business), letters, memoranda, notes, and voicemails.

24.     "Communication(s)" shall also include "electronic or magnetic data" and "electronically stored information."

25.     "Statement" means (i) written statement signed or otherwise adopted or approved by the person making it, or (ii) a stenographic, mechanical, electrical or other type of recording, or any transcription thereof which is a substantially verbatim recital of a statement made by the person and contemporaneously recorded.

26.     The term "all documents" means any and all documents that might be identified through a search of all locations reasonably likely to contain documents falling within the ensuing description.

27.     The word "identify" with respect to documents means to describe the document(s) by date, subject matter, name(s) of person(s) who wrote, signed, initiated, dictated, or otherwise participated in the creation of same, including the name(s) and addresses of all persons in possession, custody, or control of said document or documents. If any such document was, but no longer is, in your possession, custody, or control, or in existence, state the date and the manner of its disposition, as well as the identity of any person(s) authorizing its disposition or destruction.

28.     With respect to persons, "identify" means to state the name(s) of each person(s), address, telephone number, position, and relation, if any, to Plaintiff or Defendant SXP or other Defendants in this lawsuit.

29.     With respect to events or occurrences, "identify" means to state the date, place, participants, and actions or statements that took place during the event or occurrence.

30.     "Identify" when used in reference to a document that Defendant SXP claims is privileged and, therefore, refuses to identify, means to comply with the instructions for asserting a privilege pursuant to Federal Rules of Civil Procedure.

31.     The terms "relate to" and "relating to" mean "refer to," "constitute," "contain," "mention," "reflect," "discuss," "concern" or "comment upon."

32.     The singular and masculine form or any noun or pronoun shall embrace—and be read and applied as embracing—the plural, the feminine, and the neutral, except where circumstances of the request clearly make it inappropriate.

33.     In producing documents, indicate the paragraph and subparagraph of the particular request to which a produced document is responsive.

34.     In producing documents, furnish all documents known or available to you, regardless of whether such documents are possessed directly by you or your representatives or your attorneys.

35.     File folders with tabs or labels identifying documents called for by this request must be produced intact with such documents.

36.     Selection of documents from the files and other sources and the numbering of such documents shall be performed in such a manner as to ensure that the source of each document may be determined.

37.     Documents attached to each other are not to be separated.

38.     All requests for documents and communications include a request for electronically stored information ("ESI"), to the extent it is available.

39.     You should produce such ESI in one of the following two formats:

(a)     In native format, meaning as it was maintained and used in the ordinary course of business. In doing so, you should not change or attempt to change the data to another format, attempt to remove metadata, change file attributes, or otherwise alter the file or data. For example, email messages should be produced as they were kept in the ordinary course of business in a PST file (if Microsoft Exchange) or NSF file (if Lotus Notes).

(b)     In a fixed image format (PDF or TIFF), with accompanying full text and all file and system level metadata in a load file format. If you elect to produce ESI in a fixed imaged format, Quantlab reserves the right to demand access to or a copy of the native file format of specific documents.

## QUANTLAB'S FIRST REQUEST FOR PRODUCTION TO SXP

**Request No. 1:**     All documents and communications (including e-mail correspondence) relating to or reflecting the formation of SXP, including, but not limited to, business licenses, filings, and registration documents.

**Request No. 2:**     All documents and communications (including e-mail correspondence) relating to or reflecting the organizational structure of SXP, including, but not limited to, organizational chart(s), management structure diagrams, board of directors listings, and membership interest(s).

**Request No. 3:**     All communications (including e-mail correspondence) between SXP and Kuharsky relating to or discussing the formation or organizational structure of SXP.

**Request No. 4:**     All communications (including e-mail correspondence) between SXP and Godlevsky relating to or discussing the formation or organizational structure of SXP.

**Request No. 5:**   All communications (including e-mail correspondence) between Mamalakis and Kuharsky relating to or discussing the formation or organizational structure of SXP.

**Request No. 6:**   All communications (including e-mail correspondence) between Mamalakis and Godlevsky relating to or discussing the formation or organizational structure of SXP.

**Request No. 7:**   All communications (including e-mail correspondence) between Kuharsky and Godlevsky relating to or discussing the formation or organizational structure of SXP.

**Request No. 8:**   Documents sufficient to identify each of SXP's current and former employees.

**Request No. 9:**   All documents relating to any leases or purchases of real property done by SXP or on behalf of SXP from inception to the present.

**Request No. 10:**   All documents relating to or reflecting SXP's purchases of hardware, including, but not limited to, computers and electronic storage devices.

**Request No. 11:**   All business plans for SXP.

**Request No. 12:**   To the extent not encompassed by the immediately preceding request, all documents relating to or reflecting the mission and objectives of SXP.

**Request No. 13:**   All documents and communications (including e-mail correspondence) relating to or discussing the revenues that SXP expects to earn in 2010.

**Request No. 14:**   All documents and communications (including e-mail correspondence) relating to or discussing the profits or revenues that SXP expects to earn in 2011.

**Request No. 15:**   All financial reports and other documents reflecting the revenues generated by, or the profitability of, SXP for 2007.

**Request No. 16:**   All financial reports and other documents reflecting the revenues generated by, or the profitability of, SXP for 2008.

**Request No. 17:**   All financial reports and other documents reflecting the revenues generated by, or the profitability of, SXP for 2009.

**Request No. 18:**   All monthly, quarterly, and annual balance sheets of SXP for 2007.

**Request No. 19:**   All monthly, quarterly, and annual balance sheets of SXP for 2008.

**Request No. 20:**   All monthly, quarterly, and annual balance sheets of SXP for 2009.

**Request No. 21:**   All monthly, quarterly, and annual balance sheets of SXP for 2010.

- 8 -

**Request No. 22:**   All monthly, quarterly, and annual income or profit-and-loss statements of SXP for 2007.

**Request No. 23:**   All monthly, quarterly, and annual income or profit-and-loss statements of SXP for 2008.

**Request No. 24:**   All monthly, quarterly, and annual income or profit-and-loss statements of SXP for 2009.

**Request No. 25:**   All monthly, quarterly, and annual income or profit-and-loss statements of SXP for 2010.

**Request No. 26:**   Documents sufficient to show all e-mail addresses used by or for SXP.

**Request No. 27:**   Documents sufficient to show all internet service providers ("ISPs") used by SXP since its formation.

**Request No. 28:**   Copies of all computer code developed by Kuharsky on behalf of SXP.

**Request No. 29:**   Copies of all computer code developed by Godlevsky on behalf of SXP.

**Request No. 30:**   Copies of all computer code developed by An on behalf of SXP.

**Request No. 31:**   All documents and communications (including e-mail correspondence) relating to Maravina.

**Request No. 32:**   All documents and communications (including e-mail correspondence) relating to An.

**Request No. 33:**   All communications (including e-mail correspondence) between SXP and Kuharsky relating to or discussing Quantlab.

**Request No. 34:**   All communications (including e-mail correspondence) between Kuharsky and Godlevsky relating to or discussing Quantlab.

**Request No. 35:**   All communications (including e-mail correspondence) between Kuharsky and Mamalakis relating to or discussing Quantlab.

**Request No. 36:**   All communications (including e-mail correspondence) between Godlevsky and Mamalakis relating to or discussing Quantlab.

**Request No. 37:**   All communications (including e-mail correspondence) sent or received by any employee of SXP relating to or discussing Quantlab.

**Request No. 38:**   All communications (including e-mail correspondence) between SXP and Kuharsky relating to or discussing Quantlab's business.

**Request No. 39:**   All communications (including e-mail correspondence) between Kuharsky and Godlevsky relating to or discussing Quantlab's business.

**Request No. 40:**  All communications (including e-mail correspondence) between Kuharsky and Mamalakis relating to or discussing Quantlab's business.

**Request No. 41:**  All communications (including e-mail correspondence) between Godlevsky and Mamalakis relating to or discussing Quantlab's business.

**Request No. 42:**  All communications (including e-mail correspondence) sent or received by any employee of SXP relating to or discussing Quantlab's business.

**Request No. 43:**  All documents provided to SXP by Kuharsky relating to Quantlab.

**Request No. 44:**  All documents provided to SXP by Godlevsky relating to Quantlab.

**Request No. 45:**  All documents provided to SXP by An relating to Quantlab.

**Request No. 46:**  All documents provided to SXP by Maravina relating to Quantlab.

**Request No. 47:**  All documents provided to SXP by Kuharsky relating to Quantlab's business.

**Request No. 48:**  All documents provided to SXP by Godlevsky relating to Quantlab's business.

**Request No. 49:**  All documents provided to SXP by An relating to Quantlab's business.

**Request No. 50:**  All documents provided to SXP by Maravina relating to Quantlab's business.

**Request No. 51:**  All property, whether tangible or intangible electronic information, provided to SXP by Kuharsky that was used or developed while he was employed by Quantlab.

**Request No. 52:**  All property, whether tangible or intangible electronic information, provided to SXP by Godlevsky that was used or developed while he was employed by Quantlab.

**Request No. 53:**  All property, whether tangible or intangible electronic information, provided to SXP by An that was used or developed while she was employed by Quantlab.

**Request No. 54:**  All property, whether tangible or intangible electronic information, provided to SXP by Maravina that was used or developed while she was employed by Quantlab.

**Request No. 55:**  All Quantlab documents provided to SXP by Kuharsky.

**Request No. 56:**  All Quantlab documents provided to SXP by Godlevsky.

**Request No. 57:**  All Quantlab documents provided to SXP by An.

**Request No. 58:**  All Quantlab documents provided to SXP by Maravina.

**Request No. 59:** All Quantlab computer code provided to SXP by Kuharsky.

**Request No. 60:** All Quantlab computer code provided to SXP by Godlevsky.

**Request No. 61:** All Quantlab computer code provided to SXP by An.

**Request No. 62:** All Quantlab computer code provided to SXP by Maravina.

**Request No. 63:** All communications (including e-mail correspondence) between SXP and Kuharsky relating to or discussing Kuharsky's obligations (legal or otherwise) to Quantlab.

**Request No. 64:** All communications (including e-mail correspondence) sent or received by any employee of SXP relating to or discussing Kuharsky's obligations (legal or otherwise) to Quantlab.

**Request No. 65:** All communications (including e-mail correspondence) between SXP and Kuharsky relating to Kuharsky's common law duties to Quantlab.

**Request No. 66:** All communications (including e-mail correspondence) sent or received by any employee of SXP relating to or discussing Kuharsky's common law duties to Quantlab.

**Request No. 67:** All communications (including e-mail correspondence) between SXP and Kuharsky relating to Kuharsky's agreement with Quantlab entitled "Proprietary Information Agreement."

**Request No. 68:** All communications (including e-mail correspondence) sent or received by any employee of SXP relating to or discussing Kuharsky's agreement with Quantlab entitled "Proprietary Information Agreement."

**Request No. 69:** All communications (including e-mail correspondence) between SXP and Godlevsky relating to or discussing Godlevsky's obligations (legal or otherwise) to Quantlab.

**Request No. 70:** All communications (including e-mail correspondence) sent or received by any employee of SXP relating to or discussing Godlevsky's obligations (legal or otherwise) to Quantlab.

**Request No. 71:** All communications (including e-mail correspondence) between SXP and Godlevsky relating to Godlevsky's common law duties to Quantlab.

**Request No. 72:** All communications (including e-mail correspondence) sent or received by any employee of SXP relating to or discussing Godlevsky's common law duties to Quantlab.

**Request No. 73:** All communications (including e-mail correspondence) between SXP and Godlevsky relating to Godlevsky's agreement with Quantlab entitled "Proprietary Information Agreement."

**Request No. 74:** All communications (including e-mail correspondence) sent or received by any employee of SXP relating to or discussing Godlevsky's agreement with Quantlab entitled "Proprietary Information Agreement."

**Request No. 75:** All communications (including e-mail correspondence) between SXP and An relating to or discussing An's obligations (legal or otherwise) to Quantlab.

**Request No. 76:** All communications (including e-mail correspondence) sent or received by any employee of SXP relating to or discussing An's obligations (legal or otherwise) to Quantlab.

**Request No. 77:** All communications (including e-mail correspondence) between SXP and An relating to An's common law duties to Quantlab.

**Request No. 78:** All communications (including e-mail correspondence) sent or received by any employee of SXP relating to or discussing An's common law duties to Quantlab.

**Request No. 79:** All communications (including e-mail correspondence) between SXP and An relating to An's agreement with Quantlab entitled "Confidential Information and Inventions Agreement."

**Request No. 80:** All communications (including e-mail correspondence) sent or received by any employee of SXP relating to or discussing An's agreement with Quantlab entitled "Confidential Information and Inventions Agreement."

**Request No. 81:** All documents relating to or discussing the contractual obligations that Kuharsky, Godlevsky, An, and Maravina owe to Quantlab.

**Request No. 82:** All documents relating to or discussing the obligations of confidentiality relating to Quantlab's business and trade secrets that Kuharsky, Godlevsky, An, and Maravina owe to Quantlab.

**Request No. 83:** Documents sufficient to identify any web site to which or from which SXP or someone acting on SXP's behalf has downloaded computer code of any kind.

**Request No. 84:** All documents in the custody, control, or possession of SXP that belong to Quantlab.

**Request No. 85:** All property, whether tangible or intangible electronic information, in the custody, control, or possession of SXP that belongs to Quantlab.

**Request No. 86:** All software or computer code copied or downloaded by SXP that belonged to Quantlab.

**Request No. 87:**  All software or computer code developed by SXP that has incorporated or been derived from, in whole or in part, Quantlab's trading strategies, trading technology, or proprietary computer code.

**Request No. 88:**  All documents relating to or reflecting high frequency trades made by SXP that were based on quantitative trading methods derived from research projects, research reports, trading strategies, mathematical approaches, formulas, algorithms, computer programs, electronic codes, computer code, models, or quantitative trading methods used at Quantlab.

**Request No. 89:**  All documents and communications (including e-mail correspondence) relating to or discussing Quantlab's business, including but not limited to, high frequency trading.

**Request No. 90:**  All documents and communications (including e-mail correspondence) relating to or discussing Quantlab's business, including but not limited to, trading operations, methods, or strategies.

**Request No. 91:**  All documents and communications (including e-mail correspondence) relating to or discussing Quantlab's business, including but not limited to, trading models and trading algorithms.

**Request No. 92:**  All documents and communications (including e-mail correspondence) relating to or discussing SXP's decision to engage in high frequency trading.

**Request No. 93:**  All documents and communications (including e-mail correspondence) relating to or discussing SXP's decision to engage in pair trading.

**Request No. 94:**  All documents and communications (including e-mail correspondence) relating to or discussing SXP's plan or intent to use Quantlab's computer code.

**Request No. 95:**  For imaging and inspection by Quantlab's forensic experts, exact copies of all computer hard drives and electronic storage devices (defined above) seized on or about March 5, 2008 and returned to SXP by the Federal Bureau of Investigation, the United States Department of Justice, or any United States Attorneys' office.

**Request No. 96:**  Kuharsky's complete personnel file.

**Request No. 97:**  All agreements between SXP and Kuharsky.

**Request No. 98:**  All offer letters provided by SXP to Kuharsky.

**Request No. 99:**  All documents and communications (including e-mail correspondence) relating to Kuharsky's involvement in the formation of SXP.

**Request No. 100:** All documents and communications (including e-mail correspondence) relating to the terms and conditions of Kuharsky's employment with SXP.

**Request No. 101:** All documents relating to or reflecting the scope of work performed by Kuharsky.

**Request No. 102:** All documents relating to or reflecting compensation paid by SXP to Kuharsky, including, but not limited to, salary, wages, bonuses, benefits, and profit-sharing.

**Request No. 103:** All documents provided by SXP to Kuharsky during Kuharsky's employment with SXP.

**Request No. 104:** All documents and communications (including e-mail correspondence) relating to or reflecting the termination of Kuharsky's employment with SXP.

**Request No. 105:** All documents and communications (including e-mail correspondence) relating to Kuharsky's investment or contribution, including financial and sweat-equity, to SXP.

**Request No. 106:** All documents and communications (including e-mail correspondence) relating to Kuharsky's efforts to solicit current or former employees of Quantlab on behalf of SXP.

**Request No. 107:** All documents relating to trading strategies developed by Kuharsky on behalf of SXP.

**Request No. 108:** All e-mail correspondence sent or received by Kuharsky on any computer belonging to SXP or through remote access to SXP's computer network or servers.

**Request No. 109:** For imaging and inspection by Quantlab's forensic experts, exact copies of all computer hard drives and electronic storage devices (defined above) assigned to Kuharsky.

**Request No. 110:** Godlevsky's complete personnel file.

**Request No. 111:** All agreements between SXP and Godlevsky.

**Request No. 112:** All offer letters provided by SXP to Godlevsky.

**Request No. 113:** All documents and communications (including e-mail correspondence) relating to Godlevsky's involvement in the formation of SXP.

**Request No. 114:** All documents and communications (including e-mail correspondence) relating to the terms and conditions of Godlevsky's employment with SXP.

**Request No. 115:** All documents relating to or reflecting the scope of work performed by Godlevsky.

**Request No. 116:** All documents relating to compensation paid by SXP to Godlevsky, including, but not limited to, salary, wages, bonuses, benefits, and profit-sharing.

**Request No. 117:** All documents provided by SXP to Godlevsky during Godlevsky's employment with SXP.

**Request No. 118:** All documents and communications (including e-mail correspondence) relating to or reflecting the termination of Godlevsky's employment with SXP.

**Request No. 119:** All documents and communications (including e-mail correspondence) relating to Godlevsky's investment or contribution, including financial and sweat-equity, to   SXP.

**Request No. 120:** All documents and communications (including e-mail correspondence) relating to Godlevsky's efforts to solicit current or former employees of Quantlab on behalf of SXP.

**Request No. 121:** All documents relating to trading strategies developed by Godlevsky on behalf of SXP.

**Request No. 122:** All e-mail correspondence sent or received by Godlevsky on any computer belonging to SXP or through remote access to SXP's computer network or servers.

**Request No. 123:** For imaging and inspection by Quantlab's forensic experts, exact copies of all computer hard drives and electronic storage devices (defined above) assigned to Godlevsky.

**Request No. 124:** An's complete personnel file.

**Request No. 125:** All agreements between SXP and An.

**Request No. 126:** All offer letters provided by SXP to An.

**Request No. 127:** All documents and communications (including e-mail correspondence) relating to the terms and conditions of An's working relationship with SXP.

**Request No. 128:** All documents relating to or reflecting the scope of work performed by An.

**Request No. 129:** All documents relating to compensation paid by SXP to An, including, but not limited to, salary, wages, bonuses, benefits, and profit-sharing.

**Request No. 130:** All documents provided by SXP to An during An's working relationship with SXP.

**Request No. 131:** All documents and communications (including e-mail correspondence) relating to or reflecting the termination of An's working relationship with SXP.

**Request No. 132:** All documents relating to trading technologies developed by An on behalf of SXP.

**Request No. 133:** All e-mail correspondence sent or received by An on any computer belonging to SXP or through remote access to SXP's computer network or servers.

**Request No. 134:** For imaging and inspection by Quantlab's forensic experts, exact copies of all computer hard drives and electronic storage devices (defined above) assigned to An.

**Request No. 135:** All documents and communications (including e-mail correspondence) discussing SXP's obligation to preserve evidence in this case, including but not limited to SXP's duty to retain and not destroy electronic data or information.

**Request No. 136:** All written policies, procedures, guidelines, or records developed by or used by SXP for electronic data retention, preservation, and destruction, including any schedules relating to those procedures.

**Request No. 137:** All documents and communications (including e-mail correspondence) relating to the destruction or disposal of any documents and communications responsive to Plaintiffs' First Request for Production to SXP.

**Request No. 138:** All invoices, bills, receipts, service orders, agreements, or other documents relating to or reflecting the destruction, deletion, or forensic extraction of electronic data (including e-mail correspondence) from any of SXP's computers by a third-party vendor or technology provider on or before March 5, 2008.

**Request No. 139:** All invoices, bills, receipts, service orders, agreements, or other documents relating to or reflecting the destruction, deletion, or forensic extraction of electronic data (including e-mail correspondence) from any of SXP's computers by a third-party vendor or technology provider on or after March 5, 2008.

**Request No. 140:** All written policies, procedures, or guidelines developed by or used by SXP relating to its employees' use of company computers, e-mail, and other electronic data.

**Request No. 141:** All written policies, procedures, or guidelines developed by or used by SXP for e-mail storage conventions (*e.g.*, limitations on mailbox sizes, storage locations, and deletion).

**Request No. 142:** All written policies, procedures, or guidelines developed by or used by SXP for personal home computer usage for work-related activities.

**Request No. 143:** All written policies, procedures, guidelines, or records developed by or used by SXP for backup or emergency restoration of electronic data, including backup tape rotation schedules.

**Request No. 144:** All communications, records, and other documents relating to or discussing the destruction, disposal, or replacement of any backup media for SXP's computers or computer networks.

**Request No. 145:** All written policies, procedures, guidelines, or records developed by or used by SXP that relate to any logging of events or audit trails for computers or electronic storage devices on your network, including but not limited to, syslogs for routers, activity logs for remote access devices, firewall logs, web server logs, and VPN remote access log-in records.

**Request No. 146:** All written policies, procedures, guidelines, or records developed by or used by SXP that relate to the use of e-mail accounts (internal and external).

**Request No. 147:** All graphical representations of the components of SXP's computer network and the relationship of those components to each other, including but not limited to flow charts, diagrams, photos, or drawings.

**Request No. 148:** All agreements between SXP and service providers involved in SXP's trading activities (e.g., data, brokerage, communications, exchanges, etc.).

Respectfully submitted,

_____  FOR AHN

**Allan H. Neighbors, IV**
(Attorney-in-Charge)
Texas Bar No. 24033660
S.D. Tex. Bar No. 34398
LITTLER MENDELSON, P.C.
1301 McKinney, Suite 1900
Houston, Texas 77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)
aneighbors@littler.com

OF COUNSEL:

**Tim McInturf**
Texas Bar No. 00788020
S.D. Tex. Bar No. 18058
QUANTLAB FINANCIAL, LLC
4200 Montrose Blvd.
Suite 200
Houston, Texas 77006
713.400.5917 (Telephone)
713.400.5918 (Facsimile)
tmcinturf@quantlab.com

**M. Scott McDonald**
Texas Bar No. 13555505
S.D. Tex. Bar No. 9500
smcdonald@littler.com
**Fazila Issa**
Texas Bar No. 24046136
S.D. Tex. Bar No. 566478
fissa@littler.com
**Tim Rybacki**
Texas Bar No. 24056248
S.D. Tex Bar No. 718501
trybacki@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney, Suite 1900
Houston, Texas 77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)

**Tim Headley**
Texas Bar No. 09325210
S.D. Tex. Bar No. 1003
THE TIM HEADLEY LAW FIRM
7941 Katy Freeway, Suite 506
Houston, Texas 77024
713.467.8500 (Telephone)
713.467.8501 (Facsimile)
HeadleyIPLaw@gmail.com

ATTORNEYS FOR PLAINTIFFS
QUANTLAB TECHNOLOGIES LTD. (BVI)
AND QUANTLAB FINANCIAL, LLC

- 18 -

## CERTIFICATE OF SERVICE

I hereby certify that, on April 13, 2010, I served the foregoing Plaintiffs' First Request for Production to Defendant SXP Analytics, LLC on the following counsel of record

VIA HAND DELIVERY:

        James M. Cleary, Jr.
        Martin, Disiere, Jefferson & Wisdom, L.L.P.
        808 Travis, Suite 1800
        Houston, Texas 77002

VIA FACSIMILE AND U.S. MAIL:

        Joseph Y. Ahmad
        Todd W. Mensing
        Kinan H. Romman
        Ahmad, Zavitsanos & Anaipakos, P.C.
        1221 McKinney Street, Suite 3460
        Houston, Texas 77010

        Craig Alan Corsini
        Lapus, Greiner, Lai & Corsini, L.L.C.
        5800 Ranchester, Suite 200
        Houston, Texas 77036

        David Holmes
        Law Offices of David Holmes
        13201 Northwest Freeway, Suite 800
        Houston, Texas 77040

        David G. Hanson
        Mark Cameli
        Amy L. Lindner
        Reinhart Boerner Van Deuren, S.C.
        1000 North Water Street, Suite 1700
        Milwaukee, Wisconsin 53202

                               Tim Rybacki

Firmwide:94818585.2 038021.1013

- 19 -