# Exhibit D

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---

QUANTLAB TECHNOLOGIES, LTD.
(BVI) and QUANTLAB FINANCIAL,
LLC,

                Plaintiffs,           Civil Action No. H-09-4039

      v.

VITALIY GODLEVSKY, ANDRIY
KUHARSKY, ANNA MARAVINA,
PING AN, EMMANUEL
MAMALAKIS and SXP
ANALYTICS, LLC,

                Defendants.

---

### DEFENDANT SXP ANALYTICS, LLC'S RESPONSES TO PLAINTIFFS' FIRST REQUESTS FOR ADMISSION

---

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendant

SXP Analytics LLC ("SXP") hereby responds and objects to Plaintiff's Requests

for Admissions (the "Requests") as follows:

### PRELIMINARY STATEMENT

SXP has not yet fully completed its investigation of the facts related to the

case, has not fully completed discovery in this action, and has not completed its

preparation for trial. All of the answers contained herein are based only upon such

information and documents as are presently available and specifically known to

SXP. It is anticipated that further discovery, independent investigation, legal

research, and analysis will supply additional facts, add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the contents set forth herein.

The following responses are given without prejudice to SXP's right to produce evidence of any subsequently discovered fact or facts. SXP accordingly reserves the right to change and supplement any and all responses herein as additional facts are ascertained, analyses are made, and legal research is completed. The answers contained herein are made in a good faith effort to supply as much factual information as is presently known, but should in no way prejudice SXP's right to supplement or augment its responses to these Requests as its discovery and investigation continues. SXP objects to all the requests to the extent they request attorney-client privileged communications.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. SXP objects to the definition of "High frequency trading" as vague, ambiguous and misleading. For example, all sorts of activity related to trading in securities would fall into this definition, such as any intra-day purchasing and selling of a single stock without regard to the scope or frequency of the trading activity, all of which are irrelevant to this case.

2. SXP objects to the definition of "Trading strategies" as it is vague and ambiguous. The definition, particularly as it includes any "other analytical tools to identify market mispricings," describes what every single buyer or seller

2

of stock does when he/she/it buys or sells a security. Every investor is attempting to take advantage of market mispricings through the use of analytical tools, statistical patterns, "or other factors that may allow a person to forecast what a price of various financial instruments will be in the future."

3.      SXP objects to the definition of "Trading technology" because it is vague, ambiguous, and overly broad. For example, trading technology under this definition would include the use of common internet stock trading devices such as those provided by TDAmeritrade or E*Trade.

4.      SXP objects to the definition of "Automated trading" because it is vague, ambiguous, and overbroad. For example, common stock orders, such as limit orders, placed through the internet would qualify as "Automated trading" under this definition.

5.      SXP objects to the definition of "computer code" because it is vague, ambiguous, and so overbroad that it lacks any specific meaning whatsoever.

REQUEST FOR ADMISSION NO. 1:

SXP is engaged in the business of automated trading of financial instruments.

RESPONSE:

SXP objects to the request because it is vague and ambiguous, and incorporates its objection to the definition of "automated trading." Based solely on its objections, SXP denies the request.

3

REQUEST FOR ADMISSION NO. 2:

SXP is engaged in high frequency trading.

RESPONSE:

SXP objects to this request because it is vague and ambiguous, and it incorporates its objection to the definition of "high frequency trading." Based solely on its objections, SXP denies the request.

REQUEST FOR ADMISSION NO. 3:

SXP has one or more automated trading strategies.

RESPONSE:

SXP objects to this request because it is vague and ambiguous, and it incorporates herein its objection to the definitions of "automated trading" and "trading strategies." Based solely on its objections, SXP denies the request.

REQUEST FOR ADMISSION NO. 4:

SXP considers its automated trading strategies to be confidential.

RESPONSE:

SXP objects to this request because it is vague and ambiguous, and it incorporates herein its objection to the definitions of "automated trading" and "trading strategies." Based solely on its objections, SXP denies the request.

REQUEST FOR ADMISSION NO. 5:

SXP incorporates one or more automated trading strategies to computer software.

RESPONSE:

SXP objects to this request because it is vague and ambiguous, and it incorporates herein its objection to the definitions of "automated trading" and "trading strategies." Based solely on its objections, SXP denies the request.

REQUEST FOR ADMISSION NO. 6:

SXP considers its automated trading strategies to be trade secrets.

RESPONSE:

SXP objects to this request because it is vague and ambiguous, and incorporates herein its objection to the definitions of "automated trading" and "trading strategies." Based solely on its objections, SXP denies the request.

REQUEST FOR ADMISSION NO. 7:

SXP develops source code to implement automated trading strategies.

RESPONSE:

SXP objects to this request because it is vague and ambiguous, and it incorporates herein its objections to the definitions of "automated trading" and "trading strategies." SXP further objects to the phrase "source code" as vague and ambiguous. Based solely on its objections, SXP denies the request.

REQUEST FOR ADMISSION NO. 8:

SXP turns this source code into executable code to implement automated trading strategies.

5

RESPONSE:

SXP objects to this request because it is vague and ambiguous, and it incorporates herein its objections to the definitions of "automated trading" and "trading strategies." SXP further objects to the phrase "source code" and "executable code" as vague and ambiguous. Based solely on its objections, SXP denies the request.

REQUEST FOR ADMISSION NO. 9:

SXP considers its source code to be confidential.

RESPONSE:

SXP objects to this request be cause it is vague and ambiguous and objects to the phrase "source code" because it is so vague, ambiguous, and overbroad that SXP cannot in good faith respond to this request. Solely on the basis of this objection, SXP denies the request.

REQUEST FOR ADMISSION NO. 10:

SXP considers its executable code to be confidential.

RESPONSE:

SXP objects to this request because it is vague and ambiguous and objects to the phrase "executable code" because it is so vague, ambiguous, and overbroad that SXP cannot in good faith respond to this request. Solely on the basis of this objection, SXP denies the request.

REQUEST FOR ADMISSION NO. 11:

SXP considers its source code to be a trade secret.

RESPONSE:

SXP objects to this request because it is vague and ambiguous, and objects to the phrase "source code" because it is so vague, ambiguous, and overbroad that SXP cannot in good faith respond to this request. Solely on the basis of this objection, SXP denies the request.

REQUEST FOR ADMISSION NO. 12:

SXP considers its executable code to be a trade secret.

RESPONSE:

SXP objects to this request because it is vague and ambiguous and objects to the phrase "executable code" because it is so vague, ambiguous, and overbroad that SXP cannot in good faith respond to this request. Solely on the basis of this objection, SXP denies the request.

REQUEST FOR ADMISSION NO. 13:

Quantlab possesses confidential information and trade secrets related to high frequency trading.

RESPONSE:

SXP incorporates herein his objection to the definition of "high frequency trading." In addition, SXP lacks information sufficient to respond to this request.

Accordingly, subject to and without waiving SXP's objection, and to the extent

that a response is required, SXP denies the request.

REQUEST FOR ADMISSION NO. 14:

SXP has, at some point in time, possessed property belonging to Quantlab.

RESPONSE:

SXP objects to this request because it is vague, ambiguous and overbroad

and objects to the phrase "property belonging to Quantlab" as vague.  Further until

Quantlab identifies with specificity the property it claims it possessed and is at

issue in this case, SXP lacks information sufficient to respond to this request, and

therefore denies it.

REQUEST FOR ADMISSION NO. 15:

SXP has, at some point in time, possessed Quantlab documents.

RESPONSE:

SXP objects to this request because it is vague, ambiguous and overbroad,

and objects to the phrase "Quantlab documents" as vague.  Further, until Quantlab

identifies with specificity "Quantlab documents" at issue in this case, SXP lacks

information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 16:

SXP has, at some point in time, possessed a computer code belonging to

Quantlab.

RESPONSE:

SXP objects to this request because it is vague, ambiguous and overbroad and incorporates herein its objection to the definition of "computer code."  Further, until Quantlab identifies with specificity the computer code it claims it possessed, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 17:

Godlevsky, Kuharsky and Mamalakis agreed to start SXP.

RESPONSE:

Denied.

REQUEST FOR ADMISSION NO. 18:

Godlevsky contributed at least $80,000 to SXP in 2007.

RESPONSE:

Admit.

REQUEST FOR ADMISSION NO. 19:

Kuharsky contributed at least $80,000 to SXP in 2007.

RESPONSE:

Admit.

REQUEST FOR ADMISSION NO. 20:

Kuharsky worked for SXP in part of 2007.

RESPONSE:

SXP objects to the phrase "worked for" because it is vague.  Subject to and without waiving this objection, SXP responds as follows: To the extent Quantlab

means SXP paid Kuharsky with the intent that he would provide services for SXP, SXP admits. If Quantlab means a different definition, SXP is unable to determine that meaning, and thus lacks information sufficient to respond, and therefore, denies.

REQUEST FOR ADMISSION NO. 21:

Kuharsky worked for SXP in part of 2008.

RESPONSE:

SXP objects to the phrase "worked for" because it is vague. Subject to and without waiving this objection, SXP responds as follows: To the extent Quantlab means SXP paid Kuharsky with the intent that he would provide services for SXP, SXP admits. If Quantlab means a different definition, SXP is unable to determine that meaning, and thus lacks information sufficient to respond, and therefore, denies.

REQUEST FOR ADMISSION NO. 22:

Kuharsky ceased working for SXP prior to March 1, 2008.

RESPONSE:

SXP objects to the term "working" as vague. Subject to and without waiving this objection, SXP responds as follows: SXP admits that Kuharsky performed no services for SXP on or after March 1, 2008.

REQUEST FOR ADMISSION NO. 23:

Kuharsky ceased working for SXP prior to April 1, 2008.

RESPONSE:

SXP objects to the term "working" as vague.  Subject to and without waiving this objection, SXP responds as follows:  SXP admits that Kuharsky performed no services for SXP on or after April 1, 2008.

REQUEST FOR ADMISSION NO. 24:

Godlevsky provided to SXP computer code that was developed at Quantlab.

RESPONSE:

SXP incorporates herein its objection to the definition of computer code, and therefore also objects to the phrase "computer code that was developed at Quantlab" because it is vague and ambiguous.  Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 25:

Godlevsky has used computer code belonging to Quantlab in his work for SXP.

RESPONSE:

SXP incorporates herein its objection to the definition of computer code, and therefore also objects to the phrase "computer code that was developed at Quantlab" because it is vague and ambiguous.  Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in

this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 26:

In performing his work for SXP, Godlevsky has used computer code that was developed at Quantlab.

RESPONSE:

SXP incorporates herein its objection to the definition of computer code, and therefore also objects to the phrase "computer code that was developed at Quantlab" because it is vague and ambiguous. Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 27:

Godlevsky provided Quantlab documents to SXP.

RESPONSE:

SXP objects to the phrase "Quantlab documents" as vague and ambiguous. Further, until Quantlab identifies with specificity "Quantlab documents" at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 28:

Godlevsky disclosed Quantlab documents to SXP.

RESPONSE:

SXP objects to the phrase "Quantlab documents" as vague and ambiguous. Further, until Quantlab identifies with specificity "Quantlab documents" at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 29:

Godlevsky has used Quantlab documents in his work for SXP.

RESPONSE:

SXP objects to the phrase "Quantlab documents" as vague and ambiguous. Further, until Quantlab identifies with specificity "Quantlab documents" at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 30:

Kuharsky provided to SXP computer code that was developed at Quantlab.

RESPONSE:

SXP incorporates herein its objection to the definition of computer code, and therefore also objects to the phrase "computer code that was developed at Quantlab" because it is vague and ambiguous.  Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 31:

Kuharsky used computer code belonging to Quantlab in his work for SXP.

RESPONSE:

SXP incorporates herein its objection to the definition of computer code, and therefore also objects to the phrase "computer code that was developed at Quantlab" because it is vague and ambiguous. Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 32:

Kuharsky provided Quantlab documents to SXP.

RESPONSE:

SXP objects to the phrase "Quantlab documents" as vague and ambiguous. Further, until Quantlab identifies with specificity "Quantlab documents" at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 33:

Kuharsky disclosed Quantlab documents to SXP.

RESPONSE:

SXP objects to the phrase "Quantlab documents" as vague and ambiguous. Until Quantlab identifies with specificity "Quantlab documents" at issue in this

14

case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 34:

Kuharsky has used Quantlab documents in his work for SXP.

RESPONSE:

SXP objects to the phrase "Quantlab documents" as vague and ambiguous. Until Quantlab identifies with specificity "Quantlab documents" at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 35:

Kuharsky ran data deletion software on his SXP computer prior to leaving his position with SXP.

RESPONSE:

SXP objects to the phrase "data deletion software" because it is vague and ambiguous. Subject to and without waiving that objection, SXP responds that it lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 36:

Some of the computer code used by SXP in its automated trading business is computer code that was developed at Quantlab.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code" and "automated trading," and therefore also objects to the phrase "computer code

that was developed at Quantlab" because it is vague and ambiguous. Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 37:

Some of the computer code used by SXP in its automated trading business is derived from computer code that was developed at Quantlab.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code" and "automated trading," and therefore also objects to the phrase "computer code that was developed at Quantlab" because it is vague and ambiguous. Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 38:

SXP has never received Quantlab's authorization to use Quantlab's computer code in SXP's automated trading business.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code" and "automated trading." Subject to and without waiving these objections, SXP responds as follows: SXP admits that Quantlab never specifically authorized SXP

16

to do anything, but denies that SXP was required to obtain Quantlab's
authorization for any of SXP's activities.

## REQUEST FOR ADMISSION NO. 39:

SXP has never received Quantlab's authorization to use computer code
derived from Quantlab's computer code in SXP's automated trading business.

## RESPONSE:

SXP incorporates herein its objection to the definition of "computer code"
and "automated trading." Subject to and without waiving these objections, SXP
responds as follows: SXP denies that SXP was required to obtain Quantlab's
authorization for any of SXP's activities, and admits that Quantlab never
specifically authorized SXP to do anything.

## REQUEST FOR ADMISSION NO. 40:

SXP has never received Quantlab's authorization to use Quantlab's property
in SXP's automated trading business.

## RESPONSE:

SXP objects to the phrase "Quantlab's property" because it is vague and
ambiguous, incorporates its objection to the definition of "automated trading."
Subject to and without waiving these requests, SXP responds as follows: SXP
admits that Quantlab never specifically authorized SXP to do anything, but denies
that SXP was required to obtain Quantlab's authorization for any of SXP's
activities.

17

REQUEST FOR ADMISSION NO. 41:

SXP has earned profits from its automated trading business.

RESPONSE:

SXP objects to this request as vague as to the definition of "profits" and incorporates by reference its objection to the definition of "automated trading."  To the extent the request asks whether SXP, as a company, has or had income after all expenses are covered, SXP denies.

REQUEST FOR ADMISSION NO. 42:

Mamalakis has shared in SXP's monetary profits from its automated trading business.

RESPONSE:

SXP objects to this request as vague as to the definition of "profits" and incorporates its objection to the definition of "automated trading."  To the extent the requests ask whether SXP, as a company, has or had income after covering all expenses, SXP denies.  Accordingly, because SXP as a company did not have income, Mamalakis could not have shared in any income.

REQUEST FOR ADMISSION NO. 43:

Godlevsky has shared in SXP's monetary profits from its automated trading business.

RESPONSE:

SXP objects to this request as vague as to the definition of "profits" and incorporates its objection to the definition of "automated trading."  To the extent

the request asks whether SXP, as a company, has or had income after covering all expenses, SXP denies. Accordingly, because SXP as a company did not have income, Godlevsky could not have shared in any income.

REQUEST FOR ADMISSION NO. 44:

Kuharsky has shared in SXP's monetary profits from its automated trading business.

RESPONSE:

SXP objects to this request as vague as to the definition of "profits" and incorporates its objection to the definition of "automated trading." To the extent the request asks whether SXP, as a company, has or had income after covering all expenses, SXP denies. Accordingly, because SXP as a company did not have income, Kuharsky could not have shared in any income.

REQUEST FOR ADMISSION NO. 45:

SXP is a competitor of Quantlab in the automated trading industry.

RESPONSE:

SXP objects to this request because it is vague and ambiguous, and it incorporates herein its objection to the definition of "automated trading." To the extent that Quantlab means both companies are in the automated trading industry (i.e. anyone that trades stock using computers), upon information and belief, SXP admits.

19

REQUEST FOR ADMISSION NO. 46:

The United States Attorney's office has never stated to SXP that no Quantlab property was found on the SXP computers seized by the FBI on or about March 5, 2008.

RESPONSE:

SXP objects to the phrase "Quantlab property" because it is vague and ambiguous. Subject to and without waiving this objection, SXP responds as follows: Admit.

REQUEST FOR ADMISSION NO. 47:

The Federal Bureau of Investigation ("FBI") has never stated to SXP that no Quantlab property was found on the SXP computers seized by the FBI on or about March 5, 2008.

RESPONSE:

SXP objects to the phrase "Quantlab property" because it is vague and ambiguous. Subject to and without waiving this objection, SXP responds as follows: Admit.

REQUEST FOR ADMISSION NO. 48:

No government agency has ever stated to SXP that no Quantlab property was found on the SXP computers seized by the FBI on or about March 5, 2008.

RESPONSE:

SXP objects to the phrase "Quantlab property" because it is vague and ambiguous. Subject to and without waiving this objection, SXP responds as follows: Admit.

REQUEST FOR ADMISSION NO. 49:

The FBI has interviewed SXP employees regarding the alleged theft of Quantlab property.

RESPONSE:

SXP objects to the phrase "Quantlab property" because it is vague and ambiguous. Subject to and without waiving this objection, SXP responds as follows: Admit.

REQUEST FOR ADMISSION NO. 50:

The FBI has interviewed SXP officers regarding the alleged theft of Quantlab property.

RESPONSE:

SXP objects to the term "officer" as that calls for a legal conclusion and to the phrase "Quantlab property" because it is vague and ambiguous. Subject to and without waiving this objection, SXP responds as follows: SXP admits that the FBI has interviewed one or more of its employees, one or more of whom could be considered an "officer" depending on how that term is defined.

REQUEST FOR ADMISSION NO. 51:

The FBI has taken written statements of SXP employees regarding the alleged theft of Quantlab property.

RESPONSE:

SXP objects to the phrase "Quantlab property" because it is vague and ambiguous. Subject to and without waiving this objection, SXP responds as follows: SXP lacks information sufficient to admit or deny the request.

REQUEST FOR ADMISSION NO. 52:

The FBI has taken written statements of SXP officers regarding the alleged theft of Quantlab property.

RESPONSE:

SXP objects to the term "officer" as that calls for a legal conclusion and to the phrase "Quantlab property" because it is vague and ambiguous. Subject to and without waiving this objection, SXP responds as follows: SXP lacks information sufficient to admit or deny the request.

REQUEST FOR ADMISSION NO. 53:

SXP has been informed by the United States Attorney or the FBI that Quantlab's computer code was found on SXP computers seized by the FBI on or about March 5, 2008.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code." Subject to and without waiving this objection, SXP responds as follows: Admit.

22

REQUEST FOR ADMISSION NO. 54:

Godlevsky called An on behalf of SXP to discuss the possibility of An going to work for SXP.

RESPONSE:

SXP objects to this request because it is vague and ambiguous, particularly as to the time period in question. Further, the information requested is in the possession of Mr. Godlevsky who is a separate party and represented by separate counsel in this matter. Accordingly, SXP lacks knowledge and information sufficient to admit or deny the request, and therefore denies the same.

REQUEST FOR ADMISSION NO. 55:

SXP made an offer of employment to An in 2007.

RESPONSE:

SXP objects to "offer for employment" as vague. Subject to and without waiving this objection, SXP responds as follows: To the extent that Quantlab means An was retained to perform some services to SXP in 2007, SXP admits.

REQUEST FOR ADMISSION NO. 56:

An performed work for SXP related to SXP's automated trading business.

RESPONSE:

SXP incorporates by reference its objection to the definition of "automated trading," and based solely on this objection, to the extent a further response is required, denies the request.

REQUEST FOR ADMISSION NO. 57:

An developed computer software for SXP.

RESPONSE:

Deny.

REQUEST FOR ADMISSION NO. 58:

An provided to SXP computer code that was developed at Quantlab.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code,"

and therefore also objects to the phrase "computer code that was developed at

Quantlab" because it is vague and ambiguous. Further, until Quantlab identifies

with specificity what computer code was developed at Quantlab and is at issue in

this case, SXP lacks information sufficient to respond to this request, and therefore

denies it.

REQUEST FOR ADMISSION NO. 59:

In performing her work for SXP, An used computer code belonging to

Quantlab.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code,"

and therefore also objects to the phrase "computer code belonging to Quantlab"

because it is vague and ambiguous. Further, until Quantlab identifies with

specificity what computer code was developed at Quantlab and is at issue in this

24

case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 60:

In performing her work for SXP, An developed computer code derived from computer code belonging to Quantlab.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code," and therefore also objects to the phrase "computer code derived from computer code belonging to Quantlab" because it is vague and ambiguous. Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 61:

An provided Quantlab documents to SXP.

RESPONSE:

SXP objects to "Quantlab documents" as vague and ambiguous. Until Quantlab identifies with specificity "Quantlab documents," SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 62:

An disclosed Quantlab documents to SXP.

25

RESPONSE:

SXP objects to "Quantlab documents" as vague and ambiguous. Until

Quantlab identifies with specificity the "Quantlab documents," SXP lacks

information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 63:

An has used Quantlab documents in her work for SXP.

RESPONSE:

SXP objects to "Quantlab documents" as vague and ambiguous. Further,

until Quantlab identifies with specificity "Quantlab documents," SXP lacks

information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 64:

On behalf of SXP, Mamalakis asked Kuharsky to have Maravina provide

Quantlab computer code to SXP.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code,"

and therefore also objects to the phrase "computer code belonging to Quantlab"

because it is vague and ambiguous. Subject to and without waiving this objection,

SXP responds as follows:  Denied.

REQUEST FOR ADMISSION NO. 65:

On behalf of SXP, Mamalakis asked Kuharsky to have Maravina provide

reports of Quantlab's research results to SXP.

RESPONSE:

SXP objects to the phrase "Quantlab's research results" because it is vague and ambiguous. Subject to and without waiving this objection, SXP responds as follows: Denied.

REQUEST FOR ADMISSION NO. 66:

Maravina provided Quantlab computer code to SXP.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code." Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 67:

Maravina provided reports of Quantlab's research results to SXP.

RESPONSE:

SXP objects to the phrase "Quantlab's research results" because it is vague and ambiguous. Further, until Quantlab identifies with specificity what research reports were developed at Quantlab and are at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 68:

Kuharsky has discussed Quantlab's trading strategies with officers of SXP.

27

RESPONSE:

SXP incorporates herein its objection to the definition of "trading strategies" and to the term "officers" as that requires a legal conclusion. Further, until Quantlab identifies with specificity the "Quantlab trading strategies" at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 69:

Kuharsky has discussed Quantlab's trading strategies with SXP employees.

RESPONSE:

SXP incorporates herein its objection to the definition of "trading strategies." Further, until Quantlab identifies with specificity the "Quantlab trading strategies" at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 70:

Godlevsky has discussed Quantlab's trading strategies with officers of SXP.

RESPONSE:

SXP incorporates herein its objection to the definition of "trading strategies" and to the term "officers" as that requires a legal conclusion. Further, until Quantlab identifies with specificity the "Quantlab trading strategies" at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 71:

Godlevsky has discussed Quantlab's trading strategies with SXP employees.

RESPONSE:

SXP incorporates herein its objection to the definition of "trading strategies."  Further, until Quantlab identifies with specificity the "Quantlab trading strategies" at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 72:

Mamalakis has discussed Quantlab's trading strategies with officers of SXP.

RESPONSE:

SXP incorporates herein its objection to the definition of "trading strategies" and to the term "officers" as that requires a legal conclusion.  Further, until Quantlab identifies with specificity the "Quantlab trading strategies" at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 73:

Mamalakis has discussed Quantlab's trading strategies with SXP employees.

RESPONSE:

SXP incorporates herein its objection to the definition of "trading strategies."  Further, until Quantlab identifies with specificity the "Quantlab

trading strategies" at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 74:

An has discussed Quantlab's trading strategies with officers of SXP.

RESPONSE:

SXP incorporates herein its objection to the definition of "trading strategies" and to the term "officers" as that requires a legal conclusion. Further, until Quantlab identifies with specificity the "Quantlab trading strategies" at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 75:

An has discussed Quantlab's trading strategies with SXP employees.

RESPONSE:

SXP incorporates herein its objection to the definition of "trading strategies." Further, until Quantlab identifies with specificity the "Quantlab trading strategies" at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 76:

Kuharsky has discussed Quantlab's computer code with officers of SXP.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code" and objects to the term "officers" because that calls for a legal conclusion to which

no response is required. Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 77:

Kuharsky has discussed Quantlab's computer code with SXP employees.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code." Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 78:

Godlevsky has discussed Quantlab's computer code with officers of SXP.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code" and objects to the term "officers" because that calls for a legal conclusion to which no response is required. Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 79:

Godlevsky has discussed Quantlab's computer code with SXP employees.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code." Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 80:

Mamalakis has discussed Quantlab's computer code with officers of SXP.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code" and objects to the term "officers" because that calls for a legal conclusion to which no response is required. Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 81:

Mamalakis has discussed Quantlab's computer code with SXP employees.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code." Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 82:

An has discussed Quantlab's computer code with officers of SXP.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code" and objects to the term "officers" because that calls for a legal conclusion to which no response is required. Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 83:

An has discussed Quantlab's computer code with SXP employees.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code." Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 84:

SXP has earned more than $5000 by using Quantlab's computer code in SXP 's automated trading business in 2007.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code" and "automated trading." Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

33

REQUEST FOR ADMISSION NO. 85:

SXP has earned more than $5000 by using Quantlab's computer code in SXP's automated trading business in 2008.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code" and "automated trading." Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 86:

SXP has copied portions of Quantlab's computer code for use in SXP's automated trading business.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code" and "automated trading." Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 87:

Prior to hiring An, SXP knew that An had signed a Confidential Information and Inventions Agreement as a condition of her employment with Quantlab.

RESPONSE:

Denied.

REQUEST FOR ADMISSION NO. 88:

At the time SXP was formed, the officers of SXP knew that Quantlab had entrusted Kuharsky with Quantlab's confidential and proprietary information.

RESPONSE:

SXP objects to the use of the term "officers" as that calls for a legal conclusion to which no response is required. Subject to and without waiving this objection, SXP responds as follows: SXP denies knowing whether or not Quantlab had entrusted Kuharsky with Quantlab's confidential and proprietary information (if it had any).

REQUEST FOR ADMISSION NO. 89:

At the time SXP was formed, the officers of SXP knew that Quantlab had entrusted Kuharsky with Quantlab's trade secrets.

RESPONSE:

SXP objects to the use of the term "officers" as that calls for a legal conclusion to which no response is required. Subject to and without waiving this objection, SXP responds as follows: SXP denies knowing whether or not Quantlab had entrusted Kuharsky with Quantlab's trade secrets (if it had any).

REQUEST FOR ADMISSION NO. 90:

At the time SXP was formed, the officers of SXP knew that Quantlab had entrusted Godlevsky with Quantlab's confidential and proprietary information.

RESPONSE:

SXP objects to the use of the term "officers" as that calls for a legal conclusion to which no response is required. Subject to and without waiving this objection, SXP responds as follows: SXP denies knowing whether or not Quantlab had entrusted Godlevsky with Quantlab's confidential and proprietary information (if it had any).

REQUEST FOR ADMISSION NO. 91:

At the time SXP was formed, the officers of SXP knew that Quantlab had entrusted Godlevsky with Quantlab's trade secrets.

RESPONSE:

SXP objects to the use of the term "officers" as that calls for a legal conclusion to which no response is required. Subject to and without waiving this objection, SXP responds as follows: SXP denies knowing whether or not Quantlab had entrusted Godlevsky with Quantlab's trade secrets (if it had any).

REQUEST FOR ADMISSION NO. 92:

At the time SXP was formed, the officers of SXP knew that Quantlab had entrusted Maravina with Quantlab's confidential and proprietary information.

RESPONSE:

SXP objects to the use of the term "officers" as that calls for a legal conclusion to which no response is required. Subject to and without waiving this objection, SXP responds as follows: SXP denies knowing whether or not

Quantlab had entrusted Maravina with Quantlab's confidential and proprietary information (if it had any).

REQUEST FOR ADMISSION NO. 93:

At the time SXP was formed, the officers of SXP knew that Quantlab had entrusted Maravina with Quantlab's trade secrets.

RESPONSE:

SXP objects to the use of the term "officers" as that calls for a legal conclusion to which no response is required. Subject to and without waiving this objection, SXP responds as follows: SXP denies knowing whether or not Quantlab had entrusted Maravina with Quantlab's trade secrets (if it had any).

REQUEST FOR ADMISSION NO. 94:

At the time SXP was formed, the officers of SXP knew that Quantlab had entrusted An with Quantlab's confidential and proprietary information.

RESPONSE:

SXP objects to the use of the term "officers" as that calls for a legal conclusion to which no response is required. Subject to and without waiving this objection, SXP responds as follows: SXP denies knowing whether or not Quantlab had entrusted An with Quantlab's confidential and proprietary information (if it had any).

REQUEST FOR ADMISSION NO. 95:

At the time SXP was formed, the officers of SXP knew that Quantlab had entrusted An with Quantlab's trade secrets.

37

RESPONSE:

SXP objects to the use of the term "officers" as that calls for a legal conclusion to which no response is required. Subject to and without waiving this objection, SXP responds as follows: SXP denies knowing whether or not Quantlab had entrusted An with Quantlab's trade secrets (if it had any).

REQUEST FOR ADMISSION NO. 96:

At the time SXP was formed, the officers of SXP knew that Kuharsky had signed a Proprietary Information Agreement as a term and condition of his employment with Quantlab.

RESPONSE:

SXP objects to the use of the term "officers" as that calls for a legal conclusion to which no response is required. Subject to and without waiving this objection, SXP responds as follows: Denied.

REQUEST FOR ADMISSION NO. 97:

At the time SXP was formed, the officers of SXP knew that Godlevsky had signed a Proprietary Information Agreement as a term and condition of his employment with Quantlab.

RESPONSE:

SXP objects to the use of the term "officers" as that calls for a legal conclusion to which no response is required. Subject to and without waiving this objection, SXP responds as follows: Denied.

REQUEST FOR ADMISSION NO. 98:

At the time SXP was formed, the officers of SXP knew that Maravina had signed a Proprietary Information Agreement as a term and condition of her employment with Quantlab.

RESPONSE:

SXP objects to the use of the term "officers" as that calls for a legal conclusion to which no response is required.  Subject to and without waiving this objection, SXP responds as follows:  Denied.

REQUEST FOR ADMISSION NO. 99:

SXP has stored computer code belonging to Quantlab on SXP's computers.

RESPONSE:

SXP incorporates herein its objection to the definition of "computer code" and therefore also objects to the phrase "computer code belonging to Quantlab" on the same grounds.  Further, until Quantlab identifies with specificity what computer code was developed at Quantlab and is at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 100:

Maravina accessed Quantlab's computers on behalf of SXP while she was employed by Quantlab.

RESPONSE:

Denied.

REQUEST FOR ADMISSION NO. 101:

Maravina provided Quantlab documents to SXP.

RESPONSE:

SXP objects to the phrase "Quantlab documents" because it is vague and ambiguous. Further, until Quantlab identifies with specificity what Quantlab documents are at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 102:

Maravina disclosed Quantlab documents to SXP.

RESPONSE:

SXP objects to the phrase "Quantlab documents" because it is vague and ambiguous. Further, until Quantlab identifies with specificity what Quantlab documents are at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 103:

Maravina has used Quantlab documents in her work for SXP.

RESPONSE:

SXP objects to the phrase "Quantlab documents" because it is vague and ambiguous. Further, until Quantlab identifies with specificity what Quantlab documents are at issue in this case, SXP lacks information sufficient to respond to this request, and therefore denies it.

REQUEST FOR ADMISSION NO. 104:

An accessed Quantlab's computers on behalf of SXP while she was
employed by Quantlab.

RESPONSE:

Denied.

Dated this 26th day of May, 2010.

| | |
|---|---|
| James M. Cleary, Jr.<br>State Bar No.: 00783838<br>Fed. ID No. 15499<br>Martin, Disiere, Jefferson & Wisdom,<br>LLP<br>808 Travis, Suite 1800<br>Houston, Texas 77002<br>Telephone: (713) 632-1775<br>Telecopier: (713) 222-0101<br>Email: cleary@mdjwlaw.com<br><br>Attorneys for Defendants SXP<br>Analytics, LLC and Emmanuel<br>Mamalakis | David G. Hanson (admitted *pro hac vice*) **Attorney In Charge**<br>dhanson@reinhartlaw.com<br>Mark A. Cameli (admitted *pro hac vice*)<br>mcameli@reinhartlaw.com<br>Ryan S. Stippich (admitted *pro hac vice*)<br>rstippich@reinhartlaw.com<br>Amy L. Lindner (admitted *pro hac vice*)<br>alindner@reinhartlaw.com<br>Reinhart Boerner Van Deuren s.c.<br>1000 North Water Street, Suite 1700<br>Milwaukee, WI 53202<br>Telephone: 414-298-1000<br>Facsimile: 414-298-8097<br><br>Attorneys for Defendants SXP<br>Analytics, LLC and Emmanuel<br>Mamalakis |

REINHART\3653591