# Exhibit I

1

NO. 2007-34953

| | |
|---|---|
| QUANTLAB FINANCIAL, LLC | ) IN THE DISTRICT COURT |
| | ) |
| VS. | ) HARRIS COUNTY, TEXAS |
| | ) |
| ANDRIY (ANDREW) | ) |
| LEONIDOVICH KUHARSKY | ) 113TH JUDICIAL DISTRICT |

NO. 2007-34954

| | |
|---|---|
| QUANTLAB FINANCIAL, LLC | ) IN THE DISTRICT COURT |
| | ) |
| VS. | ) HARRIS COUNTY, TEXAS |
| | ) |
| VITALIY GODLEVSKY | ) 125TH JUDICIAL DISTRICT |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL VIDEOTAPE DEPOSITION OF
VITALIY GODLEVSKY
SEPTEMBER 6, 2007

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Reported by Phyllis Loy

Job No. 65424

2

1  ORAL AND VIDEOTAPED DEPOSITION OF VITALIY
2  GODLEVSKY, produced as a witness at the instance of
3  the Plaintiff, duly sworn, was taken in the
4  above-styled and numbered cause on September 6, 2007,
5  from 9:44 to 6:02, before Phyllis Loy, CSR in and for
6  the State of Texas, reported by stenotype, at the
7  offices of The Solomon Law Firm, 2950 North Loop West,
8  Suite 500, Houston, Texas, pursuant to the Texas Rules
9  of Civil Procedure and the provisions stated on the
10 record or attached hereto.
11          A P P E A R A N C E S
12
   FOR THE PLAINTIFF:
13
       Mr. Timothy McInturf
14     Mr. G. Mark Jodon
       Mr. Timothy Rybacki
15     Littler Mendelson
       1301 McKinney Street, Suite 1900
16     Houston, Texas   77010
           Telephone:  713.951.9400
17         Facsimile:  713.951.9212
           E-mail:     tmcinturf@littler.com
18
19 FOR THE DEFENDANTS:
20     Mr. Lee Solomon
       The Solomon Law Firm, P.C.
21     2950 North Loop West, Suite 500
       Houston, Texas   77092
22         Telephone:  713.358.5512
           Facsimile:  713.358.5513
23         E-mail:     leesolomonlawfirm.com

24 ALSO PRESENT:    Mr. Bruce Eames
                    Mr. Andrew Kuharsky
25 THE VIDEOGRAPHER: Mr. Phillip Thompson

134

1 any Quantlab business?

2 A. Yes, I did.

3 Q. And do you remember what, if anything, you
4 used the stick drive for?

15:43 5 A. I recorded songs, movies.

6 Q. Since your employment with Quantlab ended,
7 did you take any steps to make sure you don't have any
8 electronic files or documents that would contain data
9 that would belong to Quantlab?

15:43 10 A. Yes.

11 Q. What did you do?

12 A. I checked my notebook and I checked my
13 desktop and I deleted all the files related to
14 Quantlab.

15:44 15 Q. What actions did you take to delete the
16 files?

17 A. Just pressed shift delete, just marked all
18 the files, directories, shift delete. And I did it in
19 Windows. I did it without putting them in the trash
15:44 20 basket.

21 Q. And did you do that to the 2005 notebook, the
22 desktop and the external hard drive?

23 A. I believe so. Because at some point Quantlab
24 was asking -- specifically asking whether we had all
15:44 25 the information removed. And we confirmed it with

|  |  |
|---|---|
| 1 | the lawyer -- with our lawyer. |
| 2 | Q. And approximately when did you delete |
| 3 | Quantlab files from the 2005 notebook, the desktop and |
| 4 | the external hard drive? |
| 15:45 5 | A. It was either May or June. May or June 2007, |
| 6 | when the request was made. |
| 7 | Q. Was it before or after Quantlab filed a |
| 8 | lawsuit? |
| 9 | A. I don't remember. I don't mean to sound |
| 15:46 10 | confusing. |
| 11 | Q. Was it before or after the lawyers inquired |
| 12 | whether you had done it? |
| 13 | A. I think it was before, when they required to |
| 14 | confirm that we don't have any information, that I |
| 15:46 15 | don't have any information, I checked. |
| 16 | Q. Sorry. I didn't mean to cut you off. |
| 17 | What -- do you have any paper files or any hard files |
| 18 | or any other files or documents that relate to any of |
| 19 | the work that you were performing while you were |
| 15:46 20 | employed at Quantlab? |
| 21 | A. Except these agreements and the table and I |
| 22 | can't think about anything else. |
| 23 | Q. What table are you speaking of? |
| 24 | A. Profit-sharing distribution. |
| 15:47 25 | Q. You have a copy of that? |

136

1  A. I do. Might have -- might have
2  correspondence to the -- our correspondence to the --
3  from the lawyer.
4  Q. And which lawyer would that be?
15:47  5  A. Karen Monroe.
6  Q. And do you have any other documents relating
7  to the work that you were performing at Quantlab?
8  A. You know, when I was terminated, I was asked
9  to -- to clean my office. I had short notice. Just
15:48 10  do it the next day. So I collected everything. I
11  don't believe that I still have something in those
12  boxes. I believe no, I don't.
13  Q. You don't have anything that you know of?
14  A. I don't have, yeah, that's correct, that I
15:49 15  know of.
16  Q. And other than the profit-sharing
17  distribution spreadsheet that you identified a minute
18  ago, do you have any other documents relating to the
19  promises that you are seeking to enforce in this
15:49 20  lawsuit?
21  A. Let me think about it. Not that I can think
22  of, no, none.
23  Q. Are you aware of the existence of any other
24  such documents?
15:49 25  A. No, I'm not.

144

1  Q. So you agree with me you have never asked
2  Mr. Eames to relieve you of your obligations under the
3  noncompete so you can accept some other position. Is
4  that correct?
16:06 5  A. I'm sorry.
6  Q. You have never gone to Mr. Eames and said, "I
7  want to go work at XYZ company. Will you relieve me
8  of my obligation under the noncompete so I can do
9  that." Is that correct?
16:06 10  A. He told me about this upon the termination.
11  So upon the termination -- up until now, I didn't ask
12  Mr. Eames about allowing me to work somewhere.
13  Q. And is SXP in essence a new financial trading
14  company that you are creating with Mr. Kuharsky that
16:07 15  is based on high-frequency trading?
16  A. No, it doesn't. It's not based on
17  high-frequency trading.
18  Q. Will it do high-frequency trading?
19  A. As now we perceive this company, it's not
16:07 20  going to do high-frequency trading because as I
21  explained to you before, we are -- we look for
22  potential arbitrage opportunities between pairs. Not
23  only pairs of stock, but pairs of sectors. And on
24  high-frequencies, there is no correlation between --
16:07 25  there is not any good signal that predicts a price

145

movement between sectors, even between stocks. You cannot invest too much -- the strategy wouldn't be able to accept too much capital -- reasonable capital. So the frequencies that they're thinking about would be out -- wouldn't be -- would be orthogonal to what Quantlab does.

THE REPORTER: I'm sorry. It would be what?

A. Orthogonal. So we would trade in different window of opportunities.

Q. So you're going to be looking for arbitrage opportunities. Is that what you said in general?

A. Yes. The whole idea of automated trading -- the whole idea of hedge fund trading is looking for market inefficiencies.

Q. Is there anything wrong with arbitrage?

A. Arbitrage, to my understanding, is the action of exploiting the -- using the market inefficiencies.

Q. Have you ever had a moral problem with arbitrage within itself?

A. Could you refer to more a specific case or occasion.

Q. No. That was intentionally a general question. Have you ever felt like that arbitrage is morally wrong because it doesn't create any products,

ORAL VIDEOTAPE DEPOSITION OF VITALIY GODLEVSKY

```
1                    NO. 2007-34953
2   QUANTLAB FINANCIAL, LLC  ) IN THE DISTRICT COURT
                             )
3   VS.                      ) HARRIS COUNTY, TEXAS
                             )
4   ANDRIY (ANDREW)          )
    LEONIDOVICH KUHARSKY     ) 113TH JUDICIAL DISTRICT
5

6                    NO. 2007-34954
7   QUANTLAB FINANCIAL, LLC  ) IN THE DISTRICT COURT
                             )
8   VS.                      ) HARRIS COUNTY, TEXAS
                             )
9   VITALIY GODLEVSKY        ) 125TH JUDICIAL DISTRICT
10
                    REPORTER'S CERTIFICATION
11              DEPOSITION OF VITALIY GODLEVSKY
                      September 6, 2007
12
13          I, Phyllis Loy, Certified Shorthand Reporter
14   in and for the State of Texas, hereby certify to the
15   following:
16          That the witness, VITALIY GODLEVSKY, was duly
17   sworn by the officer and that the transcript of the
18   oral deposition is a true record of the testimony
19   given by the witness;
20          That the deposition transcript was submitted
21   on  9/26/07  to the witness or to the attorney for
22   the witness for examination, signature, and return to
23   me by  10/16  , 2007;
24          That the amount of time used by each party at
25   the deposition is as follows:
```

```
 1            Mr. McInturf - 6 hours, 21 minutes
 2            That pursuant to information given to the
 3  deposition officer at the time said testimony was
 4  taken, the following includes counsel for all parties
 5  of record:
 6            Mr. Timothy McInturf, Mr. G. Mark Jodon,
 7  Mr. Timothy A. Rybacki, Attorneys for Plaintiff.
 8            Mr. Lee Solomon, Attorney for Defendants.
 9            I further certify that I am neither counsel
10  for, related to, nor employed by any of the parties or
11  attorneys in the action in which this proceeding was
12  taken, and further that I am not financially or
13  otherwise interested in the outcome of the action.
14            Further certification requirements pursuant
15  to Rule 203 of TRCP will be certified to after they
16  have occurred.
17            Certified to by me this September 24, 2007.
18
19
20
21            _____
                PHYLLIS JOY, Texas CSR 2301
22              Expiration Date:  12/31/08
                Firm Registration No. 300
23              6575 West Loop South, Suite 580
                Bellaire, Texas 77401
24              713.667.0763
25
```

```
 1              FURTHER CERTIFICATION UNDER RULE 203 TRCP
 2              The original deposition was/was not returned
 3    to the deposition officer on ___10/16/07___;
 4              If returned, the attached Changes and
 5    Signature page contains any changes and the reasons
 6    therefor;
 7              If returned, the original deposition was
 8    delivered to Mr. Timothy McIntosh Custodial Attorney;
 9              That $1169.60 is the deposition officer's
10    charges to the Plaintiff for preparing the original
11    deposition transcript and any copies of exhibits;
12              That the deposition was delivered in
13    accordance with Rule 203.3, and that a copy of this
14    certificate was served on all parties shown herein on
15    11/15/07 and filed with the Clerk.
16
17              Certified to by me this 15th day of
18    November, 2007.
19
20
21
22                        _____
                          PHYLLIS JOY, Texas CSR 7301
23                        Expiration Date: 12/31/08
                          Firm Registration No. 300
24                        6575 West Loop South, Suite 580
                          Bellaire, Texas 77401
25                        713.667.0763
```