UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| QUANTLAB TECHNOLOGIES LTD. | § | |
| (BGI) AND QUANTLAB FINANCIAL, | § | |
| LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-9-4039 |
| | § | |
| VITALIY GODLEVSKY, ANDRIY | § | |
| KUHARSKY, ANNA MARAVINA, PING | § | |
| AN, EMMANUEL MAMALAKIS, AND | § | |
| SXP ANALYTICS, LLC, | § | |
| | § | |
| Defendants. | § | |

---

## MEMORANDUM AND ORDER

---

Pending before the Court is a Motion to Dismiss Defendant Andriy Kuharsky's counterclaims filed by Plaintiffs Quantlab Technologies Ltd. (BVI) and Quantlab Financial, LLC. (Doc. No. 137.) After considering Plaintiffs' motion, all responses thereto, and the applicable law, the Court concludes that Plaintiffs' motion must be granted in part and denied in part.

## I.   BACKGROUND

Plaintiffs Quantlab Technologies Ltd. (BVI) and Quantlab Financial, LLC (collectively, "Quantlab") comprise a quantitative financial research firm that claims to have highly valuable proprietary trade secrets in the form of trading strategies and technology. In Quantlab's Second Amended Complaint (the "Complaint"), it brings claims against six defendants: (1) Vitaliy Godlevsky; (2) Andriy Kuharsky; (3) Anna

Maravina; (4) Ping An; (5) Emmanuel Mamalakis; and (6) SXP Analytics, LLC ("SXP"). (Pl. Compl., Doc No. 125.) Defendants Godlevsky, Kuharsky, Maravina, and An are former Quantlab employees. (*Id.* ¶ 1.) Defendants Godlevsky and Kuharsky were terminated in early March of 2007, ostensibly as a result of performance problems. (*Id.* ¶ 44.) Quantlab alleges that Godlevsky and Kuharsky joined with Defendant Mamalakis to create SXP for the purpose of exploiting Quantlab's strategies and technology. (*Id.* ¶ 65.) Quantlab alleges that, in furtherance of that purpose, Godlevsky, Kuharsky, and Maravina copied Quantlab's proprietary information. (*Id.* ¶¶ 42; 52; 54.)

In 2009, Quantlab filed the present suit alleging causes of action arising under federal and state law. (Doc. No. 1.) In July 2010, the United States filed a motion to intervene and stay the case pending its own criminal investigation. (Doc. No. 70.) The Court granted this motion. On December 2, 2011, the government filed a status report indicating that it had declined to prosecute the matter. (Doc. No. 109.) Defendants Kuharsky and Maravina then moved to lift the stay, which the Court granted. (Doc. No. 11.)

The pending motion seeks to dismiss three counterclaims brought against Quantlab by Defendant Kuharsky. When the lawsuit was first brought in 2009, Kuharsky and Maravina responded with a motion to dismiss on February 11, 2010. (Doc. No. 27.) The Court granted this motion in part on June 23, 2010, directing Quantlab to replead. (Doc. No. 63.) Quantlab filed its First Amended Complaint on July 13, 2010. (Doc. No. 65.) Kuharsky and Maravina filed their Answer to Quantlab's First Amended Complaint on July 16, 2010. (Doc. No. 68.) The Answer included the following counterclaims: (1) a

claim for attorneys' fees under the Proprietary Information Agreement; (2) a breach of contract claim relating to unpaid bonuses; and (3) a claim for declaratory relief. (*Id.*)

On January 9, 2012, Quantlab filed its Second Amended Complaint. (Doc. No. 125.) On January 30, 2012, Kuharsky and Maravina filed an Amended Answer, adding new counterclaims. In this Amended Answer, Kuharsky brings a counterclaim for wrongful termination based on the allegation that he was terminated from Quantlab "solely because he refused to participate in illegal conduct by Quantlab." (*Id.* ¶ 155.) Kuharsky also alleges that Quantlab or its affiliates hired private investigators to stalk Kuharsky and Maravina. (*Id.*¶ 150.) Kuharsky brings a counterclaim for invasion of privacy on this basis. (*Id.*) Finally, Kuharsky asserts a counterclaim for intentional infliction of emotional distress, urging that such a claim is appropriate in the event that Quantlab's surveillance does not fall within the scope of invasion of privacy. (*Id.* ¶ 153.) Quantlab moves to dismiss the foregoing three counterclaims.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), a defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Bank of Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.*, 201 F. App'x 988, 990 (5th Cir. 2006) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1203 (3d ed. 2004)).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for a court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950. The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642

4

(5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

### III.    ANALYSIS

Quantlab moves to dismiss Kuharsky's counterclaims for wrongful termination, invasion of privacy, and intentional infliction of emotional distress. The Court considers Quantlab's motion as to each of these counterclaims, below.

### A.    Kuharsky's Wrongful Termination Counterclaim

Quantlab contends that Kuharsky's wrongful termination counterclaim must be dismissed under Rule 12(b)(6) because it is barred by the statute of limitations, and because it fails to satisfy the Rule 8 pleading standards.

Texas common law recognizes a claim for wrongful termination for refusing to commit an illegal act. *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985). Such claims are governed by the two-year limitations period applicable to personal injuries. *Riddle v. Dyncorp Int'l Inc.*, 666 F.3d 940, 943 (5th Cir. 2012) (citing *Stroud v. VBFSB Holding Corp.*, 917 S.W.2d 75, 79–80 (Tex. App.—San Antonio 1996, no writ)). Kuharsky was terminated from Quantlab in March of 2007. (*Id.* ¶ 25.) His damages should have begun to accrue at that time, meaning that his 2012 wrongful termination counterclaim was brought well outside of the statute of limitations. Kuharsky argues that his counterclaim should not be dismissed on that basis, however, because it relates back to his breach of contract counterclaim filed in 2010.

The parties do not dispute that Kuharsky's breach of contract counterclaim was filed in accordance with Section 16.069 of the Texas Civil Practice and Remedies Code. Section 16.069 provides that a counterclaim is not subject to limitations if (1) it arises out

5

of the same transaction or occurrence as the plaintiff's claim, and (2) it is filed within 30

days of the required answer date. Tex. Civ. Prac. & Rem. Code § 16.069. In dispute is

whether Kuharsky's wrongful termination counterclaim, filed in 2012, relates back to his

breach of contract counterclaim, such that the wrongful termination counterclaim may

proceed even though it was filed long after the statue of limitations had run.

Both state and federal law provide for the application of the "relation back"

doctrine. This Court has held that relation back is determined by whichever is more

forgiving between state law or federal law. *Murthy v. Abbott Laboratories*, No. 4:11-CV-

105, 2012 WL 734149, at *16 (S.D. Tex. Mar. 6, 2012). Thus, if state law "affords a

more forgiving principle of relation back than" Rule 15(c), such state law "should be

available to save the claim." Fed. R. Civ. P. 15(c) Comm. N to 1991 Amendment.

Section 16.068 of the Texas Civil Practice and Remedies Code describes relation

back as follows:

> "If a filed pleading relates to a cause of action, cross action, counterclaim,
> or defense that is not subject to a plea of limitation when the pleading is
> filed, a subsequent amendment or supplement to the pleading that changes
> the facts or grounds of liability or defense is not subject to a plea of
> limitation unless the amendment or supplement is wholly based on a new,
> distinct, or different transaction or occurrence."

Tex. Civ. Prac. & Rem. Code § 16.068. "A transaction is defined as a set of facts that

gives rise to the cause of action premised thereon." *Brewster v. Columbia Med. Ctr. of

McKinney Subsidiary, L.P.*, 269 S.W.3d 314, 317–18 (Tex. App.—Dallas 2008, no pet.)

(internal quotations omitted). Under federal law, an amendment to a pleading relates back

to the date of the original pleading when "the amendment asserts a claim or defense that

arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—

in the original pleading." Fed. R .Civ. P. 15(c)(1)(B). The state and federal tests are similar, although the federal standard includes "conduct" in addition to "transaction or occurrence," leading at least one court to conclude that, "[i]f there is a difference between Texas and federal relation-back law, the federal rule appears to be more lenient." *Schirle v. SOKUDO USA, LLC*, Action No. 4:08–CV–555–Y, 2011 WL 2881422, at *7 (N.D. Tex. July 19, 2011). Because federal law is considered more lenient, the Court evaluates Kuharsky's wrongful termination counterclaim under that standard. However, the Court concludes that, under either standard, Kuharsky's wrongful termination counterclaim cannot be said to relate back to his breach of contract counterclaim.

The rationale for Rule 15(c) "'is that, once litigation involving a particular transaction has been instituted, the parties should not be protected [by the statute of limitations] from later asserted claims that arose out of the same conduct set forth in the original pleadings.'" *Flores v. Cameron County, Tex.*, 92 F.3d 258, 272 (5th Cir. 1996) (quoting *Kansa Reinsurance Co. v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1366-67 (5th Cir. 1994)). "The theory that animates this rule is that 'once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading.'" *Conner*, 20 F.3d at 1385 (quoting 6A Charles A. Wright et al., Federal Practice and Procedure: Civil 2d § 1496, at 64 (1990)). The Fifth Circuit has explained that it regards as "'critical' whether the opposing party was put on notice regarding the claim raised therein." *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985) (citing *Woods Exploration & Producing Co. v.*

*Aluminum Co. of Am.*, 438 F.2d 1286, 1299 (5th Cir. 1971), *cert. denied*, 404 U.S. 1047, (1972)).

Kuharsky's wrongful termination claim does not arise out of the same conduct, transaction, or occurrence as his breach of contract claim. Kuharsky's breach of contract claim is based on the allegation that Quantlab failed to pay Kuharsky bonuses to which he was entitled. Kuharsky mentions termination in his original breach of contract claim only in the following context: "In March 2007, Quantlab paid [Kuharsky] a portion of the bonus, and then fired him. Quantlab has failed and refused to pay the full amount of the bonus." (Doc. No. 68 ¶ 126.)[1] Thus, Kuharsky's termination seems to be referenced for the limited purpose of providing a timeframe during which the breach of contract occurred. It is apparent that the termination itself serves only as a background fact giving shape to the breach of contract counterclaim; it is not itself the conduct, transaction, or occurrence out of which that counterclaim arises. This is evidenced, in part, by the fact that the success of Kuharsky's breach of contract claim in no way depends upon proof of wrongful termination.

The case would be different if Kuharsky's breach of contract counterclaim alleged that he stopped earning bonuses because he was terminated wrongfully. Such a counterclaim would, in essence, assert wrongful termination as an aspect of the contractual breach. Kuharsky makes no such allegation here, and instead alleges only that, after his termination, he was not paid bonuses earned *before* the termination. Thus,

---

[1] In his initial Answer, Kuharsky did not refer to the termination as wrongful or pretextual. Perhaps recognizing this deficiency, Kuharsky added language to his breach of contract counterclaim in his Amended Answer. The counterclaim now reads as follows: "In March 2007, Quantlab paid [Kuharsky] a portion of the bonus, and then fired him *on the pretext of performance issues*. Quantlab has failed and refused to pay the full amount of the bonus. Quantlab has also failed and refused to pay Mr. Kuharsky's pro rata share of his 2007 annual bonus." (Doc. No. 125 ¶ 129 (emphasis added).)

Kuharsky's wrongful termination counterclaim does not "seek[] to identify additional sources of damages that were caused by the same pattern of conduct identified in the original complaint," *id.* at 1386, but rather seeks to assert a claim based on new conduct not alleged until 2012. This counterclaim is therefore brought outside of the statute of limitations, and cannot proceed. Because the Court concludes that Kuharsky's wrongful termination counterclaim is barred by the statute of limitations, it need not determine whether the claim is adequately pled.

### B.  Kuharsky's Invasion of Privacy Counterclaim

In order to state a claim for invasion of privacy under Texas law, a plaintiff must allege "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person." *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993). Texas courts have held that the tort of invasion of privacy "is typically associated with either a physical invasion of a person's property or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying." *Clayton v. Wisener*, 190 S.W.3d 685, 696 (Tex. App.—Tyler 2005, no pet.); *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 85 (5th Cir. 1997). In moving to dismiss this claim, Quantlab argues that (1) the counterclaim is inadequate because it makes conclusory allegations regarding the agency relationship between Quantlab and the private investigators who allegedly surveilled Kuharsky; (2) the pleadings are based on inadmissible hearsay and speculation; and (3) the claim must fail because Kuharsky was, at most, surveilled in a public place.

As to the first issue, whether the counterclaim adequately pleads an agency relationship between Quantlab and the private investigators, the Court agrees with

Quantlab that Kuharsky must plead facts which, if proved, could establish an agency relationship. However, the Court disagrees with Quantlab's characterization of Kuharsky's counterclaim as merely stating a legal conclusion. The counterclaim asserts that "Mr. Kuharsky and Ms. Maravina have been placed under regular surveillance by private investigators or other persons hired or employed by Quantlab or its affiliates." (Doc. No. 129 ¶ 150.) If proven, these factual allegations could establish an agency relationship.

As to the second issue, Quantlab objects to the following allegation: "A former Quantlab employee informed Mr. Kuharsky that he heard Quantlab executives talking about how Mr. Kuharsky and Ms. Maravina slept, which they could have known only if they intruded into Ms. Maravina's privacy." (Doc. No. 129 ¶ 150.) The Court finds that, at the pleading stage, allegations based on hearsay are sufficient. Of course, absent special circumstances, the hearsay giving rise to Kuharsky's belief that he and Maravina were surveilled while they slept would not be admissible at trial, nor would it constitute competent summary judgment evidence. Nonetheless, it is sufficient to allow the counterclaim to proceed at this point, as it gives Kuharsky a basis in information and belief to assert his claim.

As to the third issue—whether Kuharsky fails to state a claim because the alleged intrusion occurred in a public place—the Court cannot agree that Kuharsky's allegations are insufficient. Kuharsky alleges that Quantlab stalked him, and, on information and belief, that some of the surveillance intruded into purely private matters, including observation of how Kuharsky and Maravina slept. (Doc. No. 129 ¶ 150.) Although Kuharsky's ultimate success on this claim will depend upon his ability to produce

10

persuasive evidence proving that Quantlab employed investigators to surveil purely private matters, at this stage, this allegation is sufficient to state a claim for invasion of privacy. *See Aldridge v. Sec'y, Dept. of the Air Force*, No. 7:05-CV-00056-R, 2005 WL 2738327, *3 (N.D. Tex. Oct. 24, 2005) (citations omitted) (listing, as acts that have qualified as intrusion, spying, videotaping a bedroom without permission, and harassment).

### C.  Intentional Infliction of Emotional Distress ("IIED") Counterclaim

Kuharsky's IIED counterclaim asserts the following: "In the event that Quantlab's conduct with respect to the surveillance does not fall within the scope of invasion of privacy for some reason, then in the alternative Quantlab is liable for intentional infliction of emotional distress." (Doc. No. 129 ¶ 153.) The counterclaim alleges that "Quantlab acted intentionally or recklessly, and its conduct was extreme and outrageous. Mr. Kuharsky suffered severe emotional distress that was caused by Quantlab's conduct." (*Id.*)

The Texas Supreme Court has recognized that IIED is a "'gap filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). "Even if other remedies do not explicitly preempt [IIED], their availability leaves no gap to fill." *Id*. Indeed, IIED "was never intended as an easier and broader way to pursue claims already protected by our expanding civil and criminal laws." *Id*. at 818. Thus, in Texas, "if the gravamen of a plaintiff's complaint is another tort, a claim for intentional infliction of emotional distress claim will not lie regardless of whether the plaintiff succeeds on, or even makes the alternate claim." *Draker v. Schreiber*, 271 S.W.3d 318, 322 (Tex. App.—San Antonio,

11

2008, no pet.); *see also Louis v. Mobil Chem. Co.*, 254 S.W.3d 602, 608 (Tex. App.—Beaumont, 2008, pet. denied) ("Where the gravamen of the complaint is really another tort, intentional infliction of emotional distress is unavailable even if the evidence would be sufficient to support a claim for intentional infliction of emotional distress in the absence of another remedy.").

As discussed above, at least one aspect of Kuharsky's counterclaim does sound in invasion of privacy. Other aspects, including the allegation that Kuharsky and Maravina were observed and photographed in a public place, do not appear to give rise to a claim for invasion of privacy, but could, if adequately pled, support an IIED claim. However, Kuharsky's conclusory allegations—that Quantlab acted intentionally or recklessly, that its conduct was extreme and outrageous, and that Kuharsky suffered severe emotional distress caused by this conduct—are mere legal conclusions, insufficient to state a claim for IIED. Thus, Kuharsky's IIED counterclaim must be dismissed.

## IV.    CONCLUSION

In light of the foregoing, the Court concludes that Quantlab's motion to dismiss must be **GRANTED IN PART** and **DENIED IN PART**.


**IT IS SO ORDERED**.

**SIGNED** this 4th day of May, 2012.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

12