**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| QUANTLAB TECHNOLOGIES LTD. (BVI),<br>AND QUANTLAB FINANCIAL, LLC, | § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. H-09-4039 |
| | § | |
| v. | § § | |
| VITALIY GODLEVSKY, ANDRIY<br>KUHARSKY, ANNA MARAVINA,<br>PING AN, EMMANUEL MAMALAKIS,<br>AND SXP ANALYTICS, LLC, | § § § § § | |
| Defendants. | § § | |

## QUANTLAB'S MOTION FOR ATTORNEYS' FEES

Quantlab hereby moves for an order awarding its reasonable attorneys' fees against Defendants on the grounds outlined below and any others the Court deems appropriate.

Following six years of litigation and nearly two weeks of trial, Quantlab prevailed on the following claims against Defendants Kuharsky and Mamalakis:

| Defendant | Claims |
|---|---|
| Kuharsky | 1. Copyright infringement.  Dkt. 661<br>2. Breach of contract.  Dkt. 661<br>3. Misappropriation of trade secrets.  Dkt. 725<br>4. Knowing inducement of Maravina to breach her fiduciary duty to Quantlab and/or participation in the breach of Maravina's fiduciary duty.  Dkt. 761<br>5. Conspiracy to misappropriate trade secrets.  Dkt. 761<br>6. Conspiracy to induce or knowingly participating in the breach of Maravina's fiduciary duties to Quantlab.  Dkt. 761 |
| Mamalakis | 1. Copyright infringement.  Dkt. 661<br>2. Misappropriation of trade secrets.  Dkt. 761<br>3. Conspiracy to misappropriate trade secrets.  Dkt. 761 |

1

Through summary judgment, Quantlab also prevailed on all of Defendants' counterclaims.[1]  Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B)(iii), Quantlab estimates that it has incurred at least $7,600,000 in attorneys' fees through trial.[2]  Defendants should be required to pay Quantlab's attorneys' fees for the following reasons:

**1.  Pursuant to his written agreement with Quantlab, Kuharsky should pay the entirety of Quantlab's attorneys' fees incurred in litigating claims against him**

"Texas law provides that '[p]arties are free to contract for a fee-recovery standard either looser or stricter' than the fee-recovery standards provided by statute, and courts are bound by the parties' choice." *Peak Technical Servs., Inc. v. Land & Sea Eng'g, LLC*, No. CIV.A. H-10-1568, 2012 WL 3234203, at *4 (S.D. Tex. Aug. 6, 2012) (citation and internal quotation marks

---

[1] Quantlab resolved its claims against Defendants Godlevsky, Maravina, An, and SXP before trial, *see* Dkt. 746/771, 747/772, 745/768, and 742/770, and seeks no fees associated with prosecuting claims against those individuals.  Quantlab dismissed its fraud cause of action against all Defendants, Dkt. 678, 680, 685, in order to expedite the trial proceedings.  Likewise, at trial, Quantlab dropped its Computer Fraud and Abuse Act claims against Kuharsky and Mamalakis in order to expedite the trial proceedings.  Quantlab should not be penalized for dropping meritorious claims in order to expedite the trial.

The Court declined to send the jury Quantlab's tortious interference with contract claims against Kuharsky and Mamalakis, and accordingly, Quantlab will not seek fees associated with pursuing that cause of action.

[2] Quantlab provides this estimate of its attorneys' fees in accordance with the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 54(d)(2)(B)(iii).  Should the Court grant Quantlab's motion for attorneys' fees, in whole or in part, Quantlab will provide an accounting for this estimate including contemporaneous work records, the identity and skill level of the attorneys and paralegals involved in this matter, and an analysis of the twelve *Johnson* factors used to determine reasonable attorneys' fees in the Fifth Circuit.  *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds, Blanchard v. Bergeron,* 489 U.S. 87 (1989).  The Federal Rules provide for this procedure.  Fed. R. Civ. P. 54(d)(2)(c) ("The court may decide issues of liability for fees before receiving submissions on the value of services."); *see also* 1993 Amendment, Notes of Advisory Committee ("The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees.  This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case.").

512643.7

omitted); *see also Dinn v. Hooking Bull Boatyard, Inc.*, No. CIV.A. C-08-309, 2009 WL 2161676, at *10 (S.D. Tex. July 16, 2009) ("[P]arties to a contract may provide by agreement that in the event of a suit on the contract, the prevailing party is entitled to recover attorney's fees."). The parties have so contracted here. Exhibit 175, Quantlab's Proprietary Information Agreement with Kuharsky, expressly provides: "In any legal action or other proceeding brought to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs." Exhibit 175 at 7. Quantlab brought this legal action to enforce the terms of Kuharsky's Proprietary Information Agreement with Quantlab. Quantlab is unquestionably the prevailing party because it "successfully prosecute[d] . . . the action on the main issue," *Dinn*, 2009 WL 2161676, at *10 (citation omitted), by prevailing on six separate causes of action.[3] *See* Dkt. 661, 725, 761; *see also Deballon v. Total Minatome Corp.*, 180 F.3d 265, 265 (5th Cir. 1999) (per curiam).

Thus, under the terms of the Agreement, Kuharsky is bound to pay Quantlab, as the prevailing party, its reasonable attorneys' fees. *See, e .g., Paramount Pictures Corp. v. Johnson Broad. Inc.*, No. CIV.A. H-04-03488, 2006 WL 1406870, at *5 (S.D. Tex. May 19, 2006) (Ellison, J.) (holding that because plaintiff prevailed on its claim, "in accordance with the license agreement provisions, [plaintiff] should be permitted to recover its reasonable attorney's fees and expenses incurred in bringing these claims").[4] This should properly include Quantlab's appellate attorneys' fees, should Kuharsky appeal.

---

[3] Kuharsky admits that "the terms of the agreement are interwoven into all of the other claims" in this lawsuit. *See* Dkt. 536 at ¶162.

[4] *See also Edwards v. Texas-New Mexico Power Co.*, No. 4:02CV430-A, 2003 WL 22070810, at *5 (N.D. Tex. Feb. 20, 2003) (holding that Severance Agreements required defendants "to bear the cost of counsel employed by plaintiffs to pursue the claims against [defendants] that plaintiffs

**2. Alternatively, Kuharsky should pay the entirety of Quantlab's attorneys' fees for litigating claims against him because of his unreasonable and vexatious litigation behavior**

Kuharsky's unreasonable and vexatious litigation behavior provides an independent ground on which Quantlab is entitled to receive the entirety of its attorneys' fees. District courts possess the inherent power to award attorneys' fees against a party for bad faith or for vexatious litigation tactics. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991); *see Mylonakis v. M/T GEORGIOS M.*, 909 F. Supp. 2d 691, 753 (S.D. Tex. 2012); *see also* Fed. R. Civ. P. 37 (authorizing attorneys' fees as sanctions for certain discovery conduct).[5] On multiple occasions prior to trial, the Court expressly stated its preference to consider monetary sanctions at the conclusion of the case.[6] Accordingly, Quantlab now requests that the Court award its reasonable attorneys' fees as an appropriate sanction.

---

have asserted, and are continuing to assert, under or through the Severance Agreements"); *Blue Moon Venture, L.L.C. v. Horvitz*, No. 14-09-00459-CV, 2010 WL 4013533, at *2 (Tex. App.—Houston[14th Dist.] Oct. 14, 2010, no pet.) (holding that "the trial court erred in failing to award attorneys' fees" to prevailing party where, "[u]nder the terms of the contract . . . , the prevailing party is entitled to recover attorney fees"); *Rich v. Olah*, 274 S.W.3d 878, 888–89 (Tex. App.—Dallas 2008, no pet.) (reversing "that portion of the trial court's judgment refusing to award Rich reasonable attorney's fees under the contract and render judgment that Rich recover from the Olahs her reasonable attorneys' fees").

[5] Quantlab is not seeking sanctions under Rule 11, but notes that many of its attorneys' fees were incurred as a result of sanctionable behavior by Defendants. Rule 11 also allows reasonable attorneys' fees as a sanction. *See* Fed. R. Civ. P. 11(c).

[6] Mar. 13, 2013 Hearing Transcript 32–33 ("When I [grant sanctions], it tends to be at the end of the case after I've seen a long continuum of behavior from all of the parties. That way the sanction order can go up with the rest of the case."); Apr. 2, 2012 Hearing Transcript at 30–31 ("The reason I do discovery issues myself rather than send them to my magistrate judge, whom I admire enormously, it's simply that I through discovery motions and comparable disputes that I develop a profile of which counsel are being reasonable and which counsel are not. And it all goes into what kind of award I make at the end of the case on court costs and even attorney's fees. I don't much like sanction orders or attorney's fees orders in the middle of a case, because that then creates a whole separate case that needs to be taken up to the Fifth Circuit. But at the

4

The Court is well aware of Kuharsky's vexatious conduct, which has permeated this case. Time and again Kuharsky refused to comply with discovery orders, intentionally spoliated relevant evidence *in bad faith*, attempted to relitigate settled issues, misrepresented the facts and law, and filed meritless motions. Taken altogether, this *egregious, deliberate, and repeated conduct* unduly and vexatiously multiplied the proceedings in this case. Kuharsky has demonstrated a long continuum of abusive behavior that warrants an award of sanctions against him.

A non-comprehensive list of Kuharsky's vexatious litigation conduct includes:

- Kuharsky instructed his attorneys in 2007 to confirm to Quantlab that Kuharsky had not breached his Proprietary Information Agreement and to represent that Kuharsky "does not have any tangible property or documents from Quantlab currently in his possession," Dkt. 302 at Ex. H, when he knew these statements to be false, *see* Dkt. 748 at 15.[7]

- Kuharsky refused to provide relevant discovery concerning his activity in the automated trading industry after leaving SXP, which required Quantlab to file a Motion to Compel. Dkt. 302 (Mar. 29, 2013). Because Kuharsky unreasonably continued to resist Quantlab's Motion to Compel, Quantlab was forced to file a Reply in Support of Its Motion to Compel. Dkt. 328 (Apr. 17, 2013). Quantlab noted that it "is not seeking sanctions at this time in light of the Court's preference to consider sanctions at the end of the case." *Id.* at 11.

- Kuharsky continued to abuse the discovery process, refusing to produce basic financial records without justification. This forced Quantlab to file a Supplement to its First Motion to Compel Discovery. Dkt. 334 (May 1, 2013).

---

end of the case, I think that is an appropriate time and you can take the whole appeal up as one. And I would just caution everybody, that as little as I like doing it, if we are going to have obstructionist behavior on discovery, the consequence is going to be a shifting of attorney's fees and perhaps additional sanction, monetary.").

[7] *See also* Dkt. 561 at 11 n.4 (providing record citations of "Kuharsky's false representations and other bad faith conduct aimed at thwarting the truth between 2007 and the present").

- Kuharsky refused to agree to the procedural recommendations proposed by the Special Master. Thus, Quantlab was forced to file a Motion to Overrule Kuharsky's Objections to the Phase 2 Discovery Order. Dkt. 336 (May 7, 2013).

- Kuharsky continued to refuse to respond to discovery related to events occurring after March 2008, forcing Quantlab to submit a Second Motion to Compel Discovery from Kuharsky. Dkt. 360 (June 28, 2013). In its motion, Quantlab noted that "Kuharsky's conduct with respect to [an interrogatory] and his selective production of responsive materials, *infra*, merit sanctions under FED. R. CIV. P. 11, 28 U.S.C. § 1927, and the inherent power of this Court. However, Quantlab does not seek sanctions at this time given the Court's stated preference for issuing sanctions at the conclusion of a case." Dkt. 360 at 7 n.2.

- Kuharsky also refused to respond to discovery concerning contradictory representations he made in open court. Again, this forced Quantlab to file a Supplement to its First and Second Motions to Compel Production from Kuharsky. Dkt. 364 (July 3, 2013).

- In its July 26, 2013 Order, the Court granted all of Quantlab's motions to compel and their supplements: Dkt. 302, 334, 360, and 364. Dkt. 381. The Court required that Kuharsky produce his Singletick devices by August 16, 2013. (The Court's Order also made clear that Kuharsky's consistent refusals to cooperate in the discovery process were unjustified.)

- Kuharsky did not comply with Dkt. 381. Instead, a few days before the August 16, 2013 Court-imposed deadline, he sent his computer to Singletick in Wisconsin, claiming that the computer belonged to Singletick. *See* Dkt. 748 at 5; 695 at 4. This tactic forced Quantlab to seek a subpoena from the Eastern District of Wisconsin and litigate an unnecessary discovery dispute with Singletick in that court. *See id.* at 6.

- Meanwhile, Quantlab was forced to file yet another Motion to Compel Production in this Court, against both Godlevsky and Kuharsky, due to Kuharsky's failure to produce responsive documents as ordered by the Court. Dkt. 398 (Sept. 6, 2013). In that motion, Quantlab moved for sanctions due to Kuharsky's deliberate spoliation. *Id.* at 1, 9.

- Quantlab also filed a Motion for Sanctions for Spoliation of Evidence based on Kuharsky's decision to intentionally destroy relevant evidence. Dkt. 402 (Sept. 6, 2013); *see also* Dkt. 418 (Quantlab's Reply).

- After the Court set a sanctions hearing on the spoliation issue, Quantlab filed a Pre-Hearing Memorandum on Discovery Sanctions against Defendants. Dkt. 449 (Oct. 30, 2013). Quantlab was required to reply to Kuharsky and the other Defendants' responses. *See* Dkt. 466 (Response in Opposition to Defendants' Supplemental Briefing), 470 (Notice of Supplemental Authority), 481 (Supplement).

6

- The Court held a sanctions hearing on October 31 and November 1, 2013, at which Quantlab presented ample evidence of Kuharsky's spoliation. *See* Nov. 1, 2013 Hearing Transcript at 122 et seq. (afternoon session) (testimony of Noel Kersh). Quantlab notes that during his testimony at the hearing, Kuharsky apparently lied to the Court about his intentions and his involvement in spoliation. *E.g.,* Nov. 1, 2013 Hearing Transcript at 58 (morning session) (testimony of Kuharsky) (responding "No" to the question whether there was "anything that you destroyed, threw away, gave away to a relative, anything like that, that you ever – you thought in your wildest imagination was relevant to the lawsuit?").

- After the hearing, Kuharsky refused to provide a password to the encrypted computers that Quantlab eventually received (claiming he had "forgotten" the password), forcing Quantlab to file a Supplement to its Motion In Support of Sanctions against Kuharsky. Dkt. 469 (Dec. 4, 2013). *See also id.* at 1 (noting prior discovery abuses by Kuharsky).

- The Court issued its Memorandum & Order on Sanctions shortly thereafter, finding that Kuharsky engaged in spoliation in bad faith and concluded that "granting a spoliation instruction is indeed the proper recourse." Dkt. 490 (Feb. 19, 2014) at 44.

- Two months later, Kuharsky's behavior again forced Quantlab to file a Motion to Compel and Notice of Ongoing Discovery Abuse and Delay Caused by Defendant Kuharsky. Dkt. 501 (Apr. 22, 2014). This filing brought to the Court's attention *additional* discovery abuse that Kuharsky engaged in following the Court's October 31, 2013 sanctions hearing. This included the fact that Kuharsky delayed his responses to Quantlab's discovery requests for as long as possible. For example, he only provided his computer password to Quantlab after the close of business on the Court-ordered deadline in February 2014. Dkt. 501 at 3. Quantlab also noted that based on Kuharsky's behavior, it should be entitled to attorneys' fees. *Id.* at 6. *See also* Dkt. 510 (Reply in Support) (noting Kuharsky's continuing sanctionable misconduct).

- In his August 18, 2014 deposition, Kuharsky stated that he "did not recall," "did not remember," or "did not know" the answer to a question nearly 200 times, even in response to simple, obvious questions.

- Kuharsky repeatedly told the Court that the FBI seized "everything" in its March 5, 2008 seizure, requiring him and SXP to start from scratch. *See* Dkt. 551 at 2 (collecting instances in which Kuharsky and Mamalakis made this claim). These repeated assurances were false; evidence admitted at trial proved beyond all reasonable doubt that the FBI was not able to confiscate all copies of Quantlab code when it conducted its seizures in March 2008. *See, e.g.*, Exhibit 79 (Mar. 6, 2008 email from Dean Lavdas), 65 (Mar. 7, 2008 email from Vitaliy Godlevsky). (It is also unclear how Kuharsky would even know this, given that he parted ways with SXP two months earlier. *See* Dkt. 533 at 30.) As a result of these false statements, Quantlab was required to file additional motions, conduct third-party

discovery, and conduct further investigation that would not have been required had Kuharsky simply told the truth.

- Kuharsky filed an unnecessary and unsupported Motion for Clarification, Dkt. 664 (Feb 2, 2015), of the Court's Sanctions Order, Dkt. 490, which sought to relitigate settled issues and required Quantlab to submit a response in opposition, Dkt. 667 (Feb. 16, 2015).  The Court denied Kuharsky's motion.  *See* Minute Entry May 15, 2015.

- In April 2015, Quantlab filed a Supplemental Update on Additional Sanctions against Kuharsky and Godlevsky due to Quantlab's discovery of additional misconduct by Kuharsky, as after more than a year of delays, Kuharsky conveniently "found" a missing password he had not previously provided to Quantlab just days before the Court was to address this latest discovery failure. Dkt. 695 at 3 (Apr. 13, 2015).

- Also in April 2015, after losing his motion for partial summary judgment, Kuharsky filed a meritless motion for reconsideration in which he relied on an inapplicable legal rule (the intra-corporate conspiracy rule).  Dkt. 702.  The Court denied his motion with a single paragraph, explaining that the intra-corporate conspiracy rule "protects only agents working in a corporate capacity, and thus affords Dr. Kuharsky no protection here."  Dkt. 739 at 5.

- In its Memorandum & Order, Dkt. 725 at 9 (Apr. 27, 2015), the Court found that Kuharsky's "bad faith, intentional spoliation of evidence," in contravention of the Court's prior order, warranted "death-penalty" sanctions on Quantlab's misappropriation of trade secrets claim against Kuharsky.  The Court noted that Quantlab's forensic examiners only received access to an encrypted virtual container on Kuharsky's laptop on April 7, 2015, on the eve of trial.  *Id.* at 8.

- Kuharsky made a frivolous oral motion on the eve of trial to disqualify Quantlab's counsel based on "alleged misconduct concerning privileged documents."  Dkt. 738 (Court's Order) (May 1, 2015).  Kuharsky subsequently submitted a written motion to disqualify, Dkt. 741 (May 1, 2015), whose sole legal support was a case that was inapplicable *on its face* to this matter's factual context.  The motion also misstated the facts and sought an inappropriate remedy (disqualification), as Quantlab noted in its response.  Dkt. 748.  The Court denied Kuharsky's motion. Dkt. 769 (May 21, 2015).[8]

---

[8] Quantlab notes that Kuharsky's improper behavior persisted even during trial, including when Kuharsky's counsel solicited Kuharsky's opinions on whether high frequency trading was "controversial."  *See* May 7, 2014 Tr. Transcript (real-time proceedings at 130).  This question appeared to be a planned effort to prejudice the jury.   The Court instructed Kuharsky not to "get into these derivative issues that may look – may make an individual or a company look like they

Following the Court's preference, Quantlab has patiently waited until the end of the case to submit its request for attorneys' fees based on Kuharsky's long list of sanctionable conduct. As the above list makes clear, time and again in this case Kuharsky refused to comply with discovery orders, intentionally spoliated relevant evidence in bad faith, attempted to relitigate settled issues, misrepresented the facts and law, and filed meritless motions. Taken altogether, this egregious, deliberate, and repeated conduct unduly and vexatiously multiplied the proceedings in this case, creating substantial amounts of unnecessary work for both Quantlab and the Court. Under its inherent power, *Chambers*, 501 U.S. at 45 (1991), the Court should award Quantlab its reasonable attorneys' fees incurred in litigating this case.[9]

### 3. Mamalakis should pay the entirety of Quantlab's attorneys' fees for litigating claims against him because of his unreasonable and vexatious litigation behavior

Like Kuharsky, Mamalakis engaged in litigation misconduct that unreasonably and vexatiously delayed and multiplied the proceedings. Mamalakis repeatedly misstated the facts, cast accusations at Quantlab with no factual support, deliberately and repeatedly misrepresented the law, attempted to relitigate settled issues, took contradictory positions while denying so doing, and filed meritless motions. In addition, the Court found that Mamalakis destroyed relevant evidence in bad faith. Dkt. 490. Mamalakis also made highly inappropriate

---

deserve to lose irrespective of the merits of the case that we're trying." *Id*. at 167. The Court stated that Kuharsky's counsel's question was "absolutely unnecessary" and "of a nature that would turn the jury against Quantlab." *Id*. at 168. The Court instructed Kuharsky's counsel to "not do that again." *Id*. Quantlab expressly noted that it would "bring [this issue] up after the trial." *Id*. at 166.

[9] At the very least, Quantlab should receive its attorneys' fees incurred as a result of behavior that the Court determines unreasonably and vexatiously multiplied the proceedings, including *all*: motions to compel; motions for sanctions; unnecessary litigation conducted in the Eastern District of Wisconsin due to Kuharsky's contravention of this Court's discovery order; preparation for and appearances at sanctions hearings; responses to meritless motions; and replies, responses, or supplements in support of all the foregoing.

accusations in open court, before the jury, against Quantlab's counsel.  Taken altogether, this egregious, deliberate, and repeated conduct unduly and vexatiously multiplied the proceedings in this case.  Mamalakis's misconduct created substantial amounts of unnecessary work for both Quantlab and the Court.

The Court may properly award Quantlab its attorneys' fees against Mamalakis as sanctions under either 28 U.S.C. § 1927 or its inherent power.  *Chambers*, 501 U.S. at 45. Mamalakis's current *pro se* status is not a bar to an imposition of sanctions against him under § 1927.  *See McCully v. Stephenville Indep. Sch. Dist.*, No. 4:13-CV-702-A, 2013 WL 6768053, at *2 (N.D. Tex. Dec. 23, 2013) ("The court agrees with the Ninth Circuit that the sanctioning power of § 1927 extends to a *pro se* litigant."); *Swiney v. Texas*, No. SA-06-CA-0941 FB NN, 2008 WL 2713756, at *3 (W.D. Tex. July 3, 2008) ("[A]ttorneys['] fees may be assessed against a pro se litigant when the litigant is shown to have pursued litigation in bad faith."); *Day v. Amoco Chemicals Corp.*, 595 F. Supp. 1120, 1126 (S.D. Tex. 1984).[10]  The fact that Mamalakis is a licensed[11] (and successful) attorney in the State of Wisconsin *amplifies* his misconduct.

---

[10] As the Court knows, Mamalakis was represented by various attorneys during the course of this litigation.  Mamalakis's current *pro se* status is arguably just for show and by choice, given the vast sums of money that the Receiver has concluded Mamalakis withdrew from SXP.  *See* Dkt. 560 Ex. S.

*Allen v. Travis*, No. CIV.A.3:06-CV-1361-M, 2007 WL 1989592, at *6 (N.D. Tex. July 10, 2007) (concluding that § 1927 does not apply to *pro se* litigants, but noting that "there are other avenues by which to sanction such non-attorneys who appear before the Court and engage in vexatious conduct"), is not applicable because Mamalakis is a licensed attorney.

[11] *See* State Bar of Wisconsin, Results for Lawyer Search for "Mamalakis," available at http://www.wisbar.org/directories/pages/lawyerprofile.aspx?Memberid=1035976 (last visited July 2, 2015).

The Court is well aware of Mamalakis's vexatious conduct.  Nonetheless, Quantlab below recounts some of Mamalakis's most egregious litigation misconduct and requests that the Court award its reasonable attorneys' fees as an appropriate sanction.

- One of Mamalakis's first responses to this lawsuit was to file a Rule 11 motion accusing Quantlab's lawyers of not properly discharging their duties prior to filing suit.  Dkt. 46 (Apr. 29, 2010).  Mamalakis argued that sanctions were warranted because Quantlab's claims were "founded on conjecture," *id*. at 1, based "on information and belief," *id*. at 2, and "conclusory," *id*. at 3.  Mamalakis asserted that Quantlab failed to conduct a sufficient pre-filing investigation.  *Id*. at 7–8.  This motion was meritless at the time it was filed, and the Court denied it. Dkt. 64 at 20–23 (June 23, 2010).  In light of all the wrongdoing by Mamalakis that has been discovered in past five years, this Rule 11 filing was not just laughable, but sanctionable.

- Following the denial of Mamalakis's motion to compel on issues the Court determined lacked relevance and factual support, Dkt. 149 at 2–5, SXP and Mamalakis's counsel nonetheless sent evidence preservation letters to third parties stating that he intended to subpoena evidence on these issues.  Dkt. 152. The Court admonished SXP and Mamalakis's counsel for misrepresenting the Court's position on the scope of discovery in this case and ordered that the letters be retracted.  Mar. 13, 2012 Hearing Transcript at 33.  *See* Dkt. 733 (explaining facts).

- Mamalakis placed SXP in bankruptcy in an obvious attempt to avoid discovery. The Court noted that "[o]n cross-examination, Quantlab's attorney brought out that Mr. Mamalakis, on behalf of SXP, filed for bankruptcy in April 2012 on the same day this Court held a hearing on a motion to compel discovery from SXP and that the bankruptcy action was dismissed the same month Mr. Mamalakis elected to wipe developer workstations. (Doc. No. 471 at 106.)  Circumstantial though it is, this timeline of events only bolsters Quantlab's claims [of wrongdoing]."  Dkt. 490 at 26 n.8.  Moreover, the Court noted that Mamalakis "disclaim[ed] any intent to liquidate [SXP]," yet went ahead and "did so late in 2012," which the Court found "troubling."  *Id*. at 26.  (Additionally, one of the key aspects of the bankruptcy proceedings was a Rule 2004 motion for examination regarding issues this Court had already held outside the scope of discovery.  *See* Dkt. 216 at 3-4 & ex. G.)

- Mamalakis filed a response to SXP's motion for a protective order, Dkt. 390 (Aug. 6, 2013), in which he bizarrely argued that Quantlab should bear the costs for his spoliation.  Quantlab was required to respond.  Dkt. 392 (Aug. 16, 2013). As Quantlab explained, Mamalakis tried to "use[] those wrong facts to support a flawed analysis that attempts to lead the Court to an absurd conclusion."  *Id*. at 1.

- Mamalakis's counsel urged the Court to hold a hearing on sanctions for spoliation. *See* Dkt. 438 at 1 (Oct. 18, 2013); Dkt. 426 at 49:10–24. Mamalakis's counsel further asked to take "several depositions" in connection with the evidentiary hearing. Dkt. 438 at 2; Dkt. 426 at 77:11–18. Once the Court ordered both, Mamalakis then tried to delay both the depositions and the sanctions hearing from October 2013 until 2014. *See* Dkt. 438.

- The Court held a sanctions hearing on October 31 and November 1, 2013, at which Quantlab presented ample evidence of Mamalakis's spoliation. *See* Nov. 1, 2013 Hearing Transcript at 122 et seq. (afternoon session) (testimony of Noel Kersh). The Court subsequently found that Mamalakis, *in bad faith*, "intentionally wiped and gave away numerous computers nearly three years after the initiation of this lawsuit and concealed it from the Court." Dkt. 490 at 27 (Feb. 19, 2014).[12]

- Mamalakis filed a meritless motion for summary judgment, Dkt. 544 (Sept. 2, 2014), which required a response from Quantlab, Dkt. 560 (Sept. 23, 2014). The Court denied Mamalakis's summary judgment motion. Dkt. 684. As Quantlab noted in its response, Mamalakis's motion "just creates make-work for Quantlab and the Court"; Quantlab expressly stated it would "await a later stage in the case to present that issue to the Court." Dkt. 560 at 2 n.2. Mamalakis's motion, like many of his other filings, misinterpreted the law, ignored substantial evidence against Mamalakis, ignored the fact that the Court had already found him to have destroyed relevant evidence in bad faith, sought to impose nonexistent requirements on Quantlab's experts, and cited no competent summary judgment evidence to demonstrate that there was no genuine issue of material fact. *Id*. at 1.

- Mamalakis filed a frivolous Motion to Extend the Expert Deadline, Dkt. 547 (Sept. 2, 2014), in spite of claiming that he did not need to engage experts in this case. *See* Dkt. 552. The Court denied this motion, noting that "Mr. Mamalakis has not shown good cause for his delay in designating an expert." Dkt. 563 (Sept. 24, 2014).

---

[12] *See also* Dkt. 438 at 1 n.1 ("There is no dispute that Mamalakis intentionally destroyed all SXP computers used by the company's software developers. There is no dispute that he did so in 2012 during the pendency of this suit, which concerns, among other things, SXP's development of competing software using Quantlab's intellectual property. There is no dispute that Mamalakis has attempted to excuse his actions by pointing to a 'liquidation' of SXP that he previously denied taking place. And there is no dispute that Mamalakis hid his spoliation of evidence for approximately a year, only disclosing his actions when confronted by SXP's receiver. These facts are undisputed because they are either contained in sworn statements by Mamalakis or in pleadings filed by his counsel.").

- Mamalakis repeatedly told the Court, under oath, that the FBI seized "everything" in its March 5, 2008 raid, requiring SXP to start from scratch. *See* Dkt. 551 at 2 (collecting instances in which Kuharsky and Mamalakis made this claim). These repeated assurances were false; evidence admitted at trial proved beyond all reasonable doubt that the FBI was not able to confiscate all copies of Quantlab code when it conducted its seizures in March 2008. *See, e.g.*, Exhibit 79 (Mar. 6, 2008 email from Dean Lavdas), 65 (Mar. 7, 2008 email from Vitaliy Godlevsky). Moreover, the March 7 email—which included Mamalakis—made clear that Mamalakis *knew* his story about the FBI getting everything was false. As a result of these knowingly false statements, Quantlab was required to file additional motions, conduct third-party discovery, and conduct further investigation that would not have been required had Mamalakis simply told the truth.

- After Quantlab filed a Motion for Partial Summary Judgment *against SXP*, Mamalakis—who had repeatedly attempted to disassociate himself of any responsibilities relating to his ownership of SXP—improperly submitted *his own response on SXP's behalf*. Dkt. 614 (Dec. 4, 2014). In his filing—again bereft of factual/legal support—Mamalakis accused Quantlab of paying SXP's Receiver to "throw" SXP's defense. *Id*. at 3–4. This forced Quantlab to file a Reply. Dkt. 625. Quantlab noted therein that Mamalakis's filing contained misstatements of fact and irrelevant legal argument. *See id*. at 3–4. His motion also appeared to be an attempted end-run around the Wisconsin court's denial of his discovery requests. *See id*. at 3 n.1. The Court agreed. *See* Dkt. 684 (granting Quantlab's motion for partial summary judgment against SXP).

- Without leave of Court, out of time, and without consulting Quantlab, Mamalakis filed a surreply, Dkt. 630 (Dec. 19, 2014), to his already improper response to Quantlab's motion for summary judgment *against SXP*. He again made false accusations of wrongdoing by Quantlab without any citations to objective evidence. *See id.* This required Quantlab to file its own response and a motion to strike. Dkt. 641. As Quantlab therein detailed, Mamalakis made unsupported and false allegations in his filing about Quantlab's relationship with SXP's Receiver and Quantlab's purported involvement in the Wisconsin proceedings, among other issues. *Id*. at 1–2. The Court granted Quantlab's motion to strike Mamalakis's surreply. Dkt. 681 (Mar. 22, 2015).

- Mamalakis filed meritless briefs seeking reconsideration of his meritless motions. *See* Dkt. 692 (Mamalakis' Motion Brief in Support of His Rule 54(b) Motion for Reconsideration), 696 (Mamalakis's Brief in Support of His Rule 54(b) Motion for Reconsideration of His Motion for Summary Judgment), 720 and 721 (replies in support). These filings forced Quantlab to expend attorney time preparing responses. The Court denied Mamalakis's motions. Dkt. 739.

- In both filings and in court, Mamalakis has deliberately repeated the false statement that Quantlab had access to SXP's trading code since 2012 and found nothing on the trading code. *See* Dkt. 752 at 2; Dkt. 732 at 5; Dkt. 614 at 5; Dkt. 544 at 4, 10; October 31, 2013 Evidentiary Hearing (afternoon session) at 69:8–

14; 85:23–25; 109:11–12; 109:13–20.  This repeated statement is demonstrably false: as Quantlab explained many times, SXP provided limited access to a single *unverified* version of what was purportedly its 2008 trading code, and *even this unverified code* contained verbatim samples of Quantlab code.  *See* Trial Proceedings, May 5, 2015 (testimony of Noel Kersh); Dkt. 705 at 8 n.1; November 1, 2013 Evidentiary Hearing (afternoon session) at 177–79 (testimony of Noel Kersh).

- On the eve of trial, Mamalakis requested an extension of the deadline for filing motions in limine, claiming that he "failed to receive the e-mail message from the Court dated March 30, 2015."  Dkt. 707 at 1 (Apr. 21, 2015).  The March 30, 2015 email from the Court clearly indicates Mamalakis as a recipient.  *See* attached Exhibit A.  Quantlab did not oppose the extension, although this was yet another in a long list of Mamalakis's tactics to delay the proceedings.

- Mamalakis's behavior at trial is further evidence of his pattern of making proceedings as expensive as possible at every opportunity.  At trial, rather than answering questions in a responsive manner, Mamalakis provided evasive responses and deliberately used profane and insulting language in reference to Quantlab's counsel, including calling counsel—on the record and before the jury—a "compulsive liar."  *See* attached Exhibit B (May 12, 2015 Tr. Transcript (real-time proceedings at 89)).

- Even post-trial, Mamalakis's misconduct continues.  Mamalakis again makes his sham argument that Quantlab never identified its trade secrets, *see* Dkt. 775 at 1–2 (June 4, 2015), 752 at 2 (May 14, 2015), despite the fact that Quantlab has identified its trade secrets time and again, *see* Dkt. 762 at 3 (recounting Quantlab's prior identifications of its trade secrets), and the jury found him guilty of misappropriating trade secrets, *see* Dkt. 761.[13]  The Court has explained that "Quantlab directed the Court to discovery responses and other documents describing the trade secrets in some detail," and that Mamalakis has "notably" failed to offer *any* record citation or other response to Quantlab's evidence on this point.  Dkt. 739 at 4–5.  Mamalakis's opposition to Quantlab's request for a

---

[13] Specifically, prior to trial, Quantlab identified its trade secrets in (1) discovery responses, (2) expert reports, (3) Special Master materials, and (4) a declaration from its co-founder, Bruce Eames.  *See* Dkt. 701; Dkt. 552 at 3 & n. 1; Dkt. 560 at 6-14 & Ex. B, L-Q.  Even Mamalakis has acknowledged that Quantlab's discovery responses on trade secrets were "lengthy" and "descriptive."  Dkt. 775 at 4.  Moreover, at trial, at least three witnesses—Bruce Eames, Dr. Andrey Omeltchenko, and Dr. David Reynolds—testified as to the nature of Quantlab's trade secrets and how they met the six-factor test outlined in *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003).  *See* Dkt. 762 at 2–4.  After two weeks of trial, a 12-person jury understood the nature of Quantlab's trade secrets and awarded Quantlab millions in damages against Mamalakis, yet Mamalakis still feigns confusion.

14

Permanent Injunction, Dkt. 775, makes arguments that are false, unsupported, and potentially sanctionable. *See* Dkt. 776.

Again, following the Court's preference, Quantlab has waited until the end of the case to submit its request for attorneys' fees based on Mamalakis's sanctionable conduct. As the above list shows, time and again in this case Mamalakis misstated the facts, cast accusations at Quantlab with no support, misrepresented the law, attempted to relitigate settled issues, took contradictory positions while denying so doing, and filed meritless motions. The Court has found that Mamalakis's destruction of relevant evidence was committed *in bad faith*. Mamalakis used inappropriate and inflammatory language in open court in reference to Quantlab's counsel. Taken altogether, this egregious, deliberate, and repeated conduct unduly and vexatiously multiplied the proceedings in this case and warrants the imposition of sanctions.[14]

### 4. Kuharsky *must* pay for Quantlab's attorneys' fees for successfully litigating the breach of contract claim against him, including Quantlab's reasonable appellate attorneys' fees

In addition to the express language in the contract, Kuharsky is liable for attorneys' fees under applicable law. The Texas Civil Practice and Remedies Code provides that "a person may

---

[14] *See, e.g., Villar v. Crowley Mar. Corp.*, 780 F. Supp. 1467, 1486 (S.D. Tex. 1992), *aff'd,* 990 F.2d 1489 (5th Cir. 1993) (awarding sanctions under Rule 11, and noting availability of sanctions under § 1927, where counsel urged legal theories unsupported by existing law or a good faith argument for a change in the law, made allegations for which "[t]he record does not contain a shred of evidence to support," articulated legal arguments for which "[t]here is not a jot of support, either in the case law or in commentary," and relied on misrepresentations in an affidavit in multiple pleadings); *see also Perkins v. Gen. Motors Corp.*, 965 F.2d 597, 602 (8th Cir. 1992) (affirming award of sanctions under § 1927 and Rule 26 for "persistently pursuing unsupported factual allegations . . . during discovery").

At the very least, Quantlab should receive its attorneys' fees incurred as a result of behavior that the Court determines unreasonably and vexatiously multiplied the proceedings, including *all*: motions for sanctions; preparation for and appearances at sanctions hearings; replies and responses to meritless motions; replies and responses to requests for extensions of time.

recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: an oral or written contract." Tex. Civ. Prac. & Rem. Code § 38.001(8). "The award of reasonable attorneys' fees is mandatory under § 38.001 if the plaintiff prevails in his or her breach of contract claim and recovers damages." *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 (5th Cir. 2002); *see also Albright v. IBM Lender Process Servs. Inc.*, No. CIV.A. H-11-1045, 2011 WL 5921379, at *3 (S.D. Tex. Nov. 28, 2011) ("Texas courts have consistently awarded attorney's fees in breach of contract cases."). "The trial court has the discretion to determine the appropriate amount of attorneys' fees following a successful claim under § 38.001." *Coffel*, 284 F.3d at 640–41.

The Court found Kuharsky liable for breach of contract. Dkt. 661. Accordingly, Quantlab is entitled to recover its reasonable attorneys' fees against Kuharsky for successfully prosecuting the breach of contract claim. The fee award should appropriately encompass Quantlab's attorneys' fees on the breach of contract claim *through trial*, since only liability was determined at the summary judgment stage, *see* Dkt. 661, thus requiring Quantlab to try the damages issues.[15] When Quantlab prepares its accounting of fees, it will include only those fees that are non-duplicative, attributable to prosecuting the breach of contract claim, and attributable to Kuharsky.

---

[15] *See, e.g.*, *Montgomery v. McCarty*, No. C41088, 2007 WL 5130130 (Tex. 29th Dist. Ct. Sept. 12, 2007) (findings of fact and conclusions of law) ("Pursuant to the Interlocutory Summary Judgment Order, the Court ordered that Plaintiff is entitled to recover his reasonable and necessary attorney's fees incurred in this suit, through trial and appeal, as the prevailing party under the Contract."; calculating and awarding reasonable attorneys' fees through trial); *Lombana v. Zurita*, No. 99-48871, 2000 WL 35499764 (Tex. 164th Dist. Ct. Oct. 2, 2000) (order granting plaintiffs' motion for partial summary judgment on liability) (granting plaintiffs' partial summary judgment motion against defendants for breach of contract and finding liability, with damages to be "proven and established at trial," and awarding "plaintiffs' reasonable and necessary attorneys['] fees through trial").

16

Quantlab is also entitled to its appellate attorneys' fees, and respectfully requests that the Court include an award of reasonable appellate attorneys' fees, conditioned on Kuharsky's unsuccessful appeal.  "It is well-settled that where attorney's fees are recoverable, the award may include appellate attorney's fees." *Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 147-48 (Tex. App.—Dallas 2011, no pet.).  In fact, under the law of the 14th Circuit Court of Appeals and other Texas appellate courts, award of appellate attorneys' fees is mandatory if an award of trial attorneys' fees is required under § 38.001.  *Lee v. Perez*, 120 S.W.3d 463, 469 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *see DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 199 (Tex. App.—Fort Worth 2012, no pet.) ("We agree with our sister court of appeals and hold that if an award of trial attorney's fees is mandatory under civil practice and remedies code section 38.001, an award of appellate attorney's fees is likewise mandatory.").

### 5. Kuharsky should pay for the entirety of Quantlab's attorneys' fees because all of Quantlab's claims were "inextricably intertwined" with Quantlab's successful breach of contract claim

Quantlab is also entitled to recover attorneys' fees on its other successful claims against Kuharsky because they are "inextricably intertwined" with its successful breach of contract claim against him.

"The general rule regarding the recovery of fees in Texas is that 'fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not.'"  *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007) (quoting *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 311 (Tex. 2006)).  "However, in *Stewart Title Guaranty Co. v. Sterling,* the Texas Supreme Court recognized that an 'exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or

defense entails proof or denial of essentially the same facts.'" *Id.* (quoting *Sterling*, 822 S.W.2d 1, 11 (Tex. 1991)).  "A party who can meet this exception is not required to segregate fees and may recover the entire amount of fees covering all claims." *Id.*  "[I]t is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* (quoting *Chapa*, 212 S.W.3d at 313-14).  In considering whether claims were "inextricably intertwined," the *Chapa* Court noted that "[m]any of the services involved in preparing a [recoverable] contract or DTPA claim for trial must still be incurred if [unrecoverable] tort claims are appended to it; adding the latter claims does not render the former services unrecoverable."  212 S.W.3d at 313.

Here, the vast majority of the attorney preparation and drafting time would have been necessary even if the only claim against Kuharsky were the recoverable breach of contract claim. *See Chapa*, 212 S.W.3d at 314 ("[A]n opinion would have sufficed stating that, for example, 95 percent of their drafting time would have been necessary even if there had been no [unrecoverable] fraud claim.").  Moreover, the other claims arose from the same set of facts as the successful breach of contract claim: Kuharsky's unauthorized misappropriation, access, and use of Quantlab's confidential information.  Each such misappropriation, access, and use was a breach of Kuharsky's contract with Quantlab.  Additionally, Quantlab's successful prosecution of the other claims required analysis of the same underlying forensic data and proof of the same underlying facts as Quantlab's successful prosecution of the breach of contract claim.  Indeed, Kuharsky even admits that "the terms of the agreement are interwoven into all of the other claims" in this lawsuit. Dkt. 536 at ¶162.  Therefore, it is appropriate for Quantlab to be awarded

attorneys' fees not only for its successful breach of contract claim against Kuharsky, but also for the inextricably intertwined and successful other claims against Kuharsky.[16]

As with the breach of contract claim itself, Quantlab's attorneys' fees incurred through trial on the inextricably intertwined claims are also taxable against Kuharsky because only liability was determined at the summary judgment stage. *Supra*. When Quantlab prepares its accounting of fees, it will include only those fees that are non-duplicative and attributable to Kuharsky.

### 6. Kuharsky and Mamalakis should pay for Quantlab's attorneys' fees incurred in investigating and addressing their bad faith spoliation of evidence

Quantlab is entitled to its reasonable attorneys' fee incurred as a result of Defendants' bad faith spoliation of evidence. The Court found that both Defendants spoliated evidence. Dkt. 490 (February 2014 order finding that Defendants Kuharsky, Mamalakis, and Godlevsky spoliated evidence); Dkt. 725 (April 2015 order finding that Defendants Kuharsky and Godlevsky spoliated evidence *after* the Court's Order).

"[B]oth Federal Rule of Civil Procedure 37 and the Court's 'inherent power to regulate the litigation process' allow it to impose sanctions." Dkt. 490 at 14 (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 611 (S.D. Tex. 2010)). "Sanctions for spoliation of evidence may include awarding attorney fees . . . ." *Allstate Texas Lloyd's v. McKinney*, 964

---

[16] *See, e.g.*, *Google Inc. v. Beneficial Innovations, Inc.*, No. 211CV00229JRGRSP, 2014 WL 4227366, at *5 (E.D. Tex. Aug. 26, 2014) (holding that because "the parties' contract dispute centers on the nature and use of Google's DoubleClick product, as does the affirmative defense of patent exhaustion, the contract claim and exhaustion defense are 'inextricably intertwined'"); *Beauty Mfg. Solutions Corp. v. Ashland, Inc.*, No. 3:10-CV-2638-G, 2012 WL 4341814, at *6 (N.D. Tex. Aug. 29, 2012), *report and recommendation adopted*, No. 3:10-CV-2638-G, 2012 WL 4354935 (N.D. Tex. Sept. 24, 2012) (holding that "[b]ecause the [breach of contract, breach of warranty, and DTPA] claims are inextricably intertwined, no reduction of fees is warranted").

F. Supp. 2d 678, 683 (S.D. Tex. 2013) (internal quotation marks omitted).  In *Cammarata*, the court awarded "the reasonable attorneys' fees and costs [Rimkus] incurred in investigating the spoliation, including fees and costs for obtaining emails through third-party subpoenas, taking additional depositions, and filing and responding to motions on sanctions."  688 F. Supp. 2d at 610.[17]  Federal Rule of Civil Procedure 37(b)(2)(C) expressly provides that when a party fails to obey a discovery order, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

Here, Defendants have failed to present any evidence suggesting that their failure was "substantially justified" or that any "other circumstances" would make an award of expenses unjust.  In fact, they cannot present any such evidence because their spoliation was willful and in bad faith, as the Court has found.  Dkt. 490 at 27 (finding Mamalakis's spoliation to have been in bad faith); *id*. at 41 (finding Kuharsky's spoliation to have been in bad faith).

Accordingly, Quantlab is entitled to its reasonable attorneys' fees incurred in investigating Defendants' spoliation, including taking depositions necessitated by the spoliation,

---

[17] *See also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 509–10 (E.D. Va. 2011) ("DuPont was thus forced by the spoliation to incur attorneys' fees, investigative expense, and the expense of a hearing and briefing. . . .  It is proper to afford DuPont recompense for the consequences of that violation in the form of an award of expenses, costs and attorneys' fees."); *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 524 (D. Md. 2009) ("[I]n addition to a spoliation sanction, a court will award a prevailing litigant the reasonable costs associated with the motion *plus* any investigatory costs into the spoliator's conduct."); *Leon v. IDX Sys. Corp.,* No. C03–1158P, 2004 WL 5571412, at *5 (W.D. Wash. Sept. 30, 2004) (dismissing plaintiff's claim due to bad faith spoliation, and requiring plaintiff to pay defendant the reasonable expenses it "incurred investigating and litigating the issue of [the plaintiff's] spoliation").

20

filing and responding to motions on sanctions, and appearing at multiple hearings on sanctions. *See Cammarata*, 688 F. Supp. 2d at 610.  Quantlab will recommend allocating its attorneys' fees on this issue as follows: for the initial spoliation investigation, 1/3 to Mamalakis and 2/3 to Kuharsky.  Quantlab recommends that Kuharsky be held responsible for the 1/3 allocation that would otherwise be attributable to Godlevsky, since Kuharsky and Godlevsky colluded on the spoliation.  Quantlab will seek recompense for its attorneys' fees from three weeks before the sanctions hearing up to and including the hearing.

For the second spoliation, Quantlab recommends allocating the attorneys' fees entirely to Kuharsky, who should be held responsible for the 1/2 allocation that would otherwise be attributable to Godlevsky since they colluded on the spoliation.  When Quantlab prepares its accounting of fees, it will include only those fees that are non-duplicative, attributable to the spoliation issue, and attributable to Kuharsky and Mamalakis (including fees related to Godlevsky as discussed above).

### 7. Kuharsky and Mamalakis should pay for Quantlab's expert fees incurred in investigating and addressing their bad faith spoliation of evidence

Not only should the Court award attorneys' fees for the bad faith spoliation of evidence, the Court should also award Quantlab its reasonable expert fees incurred as a result of Defendants' bad faith spoliation of evidence.  It is appropriate to award both attorneys' fees and costs to a party that incurred such expenses in investigating and responding to another party's spoliation.  *Cammarata*, 688 F. Supp. 2d at 610.  Those costs may properly include expert fees. *Id*.; *see also Duque v. Werner Enterprises, Inc.*, No. CIV.A. L-05-183, 2007 WL 998156, at *7

(S.D. Tex. Mar. 30, 2007) (awarding "fees, costs, and expenses" incurred by plaintiff's expert in traveling to a location to inspect evidence that he determined defendant had spoliated).[18]

Here, Quantlab utilized the services of Pathway Forensics to investigate the extent of the spoliation committed by Defendants and prepare reports on its findings. Pathway Forensics also testified on this issue before the Court at the sanctions hearing. *See* November 1, 2013 Evidentiary Hearing (afternoon session) (testimony of Noel Kersh). After Kuharsky provided Quantlab with the password to the encrypted "virtual container" on his Singletick laptop in April 2015, Pathway Forensics performed additional analyses and determined that Kuharsky had committed further spoliation. Dkt. 725 at 8 (Court's Order). All of these expert fees were incurred as a direct result of Defendants' spoliation. Accordingly, Quantlab is entitled to recover these fees.

When Quantlab prepares its accounting of fees, it will include only those fees that pertain to the investigation of Defendants' spoliation and which are non-duplicative. Quantlab will recommend allocating the expert fees as follows: for the initial spoliation, 1/3 to Mamalakis and 2/3 to Kuharsky. Quantlab recommends that Kuharsky be held responsible for the 1/3 allocation that would otherwise be attributable to Godlevsky, since Kuharsky and Godlevsky colluded on the spoliation. For the second spoliation, Quantlab recommends allocating the expert fees entirely to Kuharsky, who should be held responsible for the 1/2 allocation that would otherwise

---

[18] *See also Process Am., Inc. v. Cynergy Holdings, LLC*, No. 12 CIV. 772 BMC, 2013 WL 9447569, at *13 (E.D.N.Y. Sept. 23, 2013) on reconsideration in part, No. 12 CIV. 772 BMC, 2014 WL 3844626 (E.D.N.Y. Apr. 30, 2014) (awarding prevailing party half its costs, including "forensic expert costs," incurred in litigating spoliation issue); *Keithley v. Homestore.com, Inc.*, 629 F. Supp. 2d 972, 974 (N.D. Cal. 2008) (rejecting defendants' challenges to Magistrate Judge's award of attorneys' fees and "expert costs" incurred as a result of defendants' spoliation).

be attributable to Godlevsky because Kuharsky and Godlevsky colluded on the spoliation. Should the Court award expert fees on this issue, Pathway Forensics will submit an affidavit establishing its hourly rate and providing detailed time entries reflecting the time spent performing the spoliation investigations.

## CONCLUSION

For the foregoing reasons, the Court should grant Quantlab's Motion for Attorneys' Fees.

Respectfully Submitted,

*/s/ Ty Doyle*

Of Counsel:

Tim McInturf
Texas Bar No. 00788020
S.D. Tex. Bar No. 18058
Simon J. Garfield
Texas Bar No. 24040957
S.D. Tex. Bar No. 634831
Quantlab Financial, LLC
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
713.400.5917 (Telephone)
713.400.5918 (Facsimile)
tmcinturf@quantlab.com
sgarfield@quantlab.com)

Tim Headley
Texas Bar No. 09325210
S.D. Tex. Bar No. 1003
The Tim Headley Law Firm
7941 Katy Freeway, Suite 506
Houston, Texas 77024
713.467.8500 (Telephone)
713.467.8501 (Facsimile)
HeadleyIPLaw@gmail.com

Lee L. Kaplan
Attorney-in-Charge
State Bar No. 11094400
Ty Doyle
State Bar No. 24072075
Alexander M. Wolf
State Bar No. 24095027
Smyser Kaplan & Veselka, L.L.P.
700 Louisiana, Suite 2300
Houston, TX 77002
(713) 221-2323; (713) 221-2320 (fax)
lkaplan@skv.com
tydoyle@skv.com
awolf@skv.com

Allan H. Neighbors, IV
Texas Bar No. 24033660
S.D. Tex. Bar No. 34398
Littler Mendelson, P.C.
1301 McKinney, Suite 1900
Houston, Texas 77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)
aneighbors@littler.com

M. Scott McDonald
Texas Bar No. 13555505
S.D. Tex. Bar No. 9500
Tim Rybacki
Texas Bar No. 24056248
S.D. Tex. Bar No. 718501
Travis J. Odom
Texas Bar No. 24056063
S.D. Tex. Bar No. 997750
1301 McKinney, Suite 1900
Houston, Texas 77010
713.951.9400 (Telephone);
713.951.9212 (facsimile)
smcdonald@littler.com

ATTORNEYS FOR PLAINTIFFS
QUANTLAB TECHNOLOGIES LTD.
(BVI), AND QUANTLAB FINANCIAL,
LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5.1 on the 2nd day of July, 2015.

I hereby further certify that on July 2, 2015, I served the foregoing document by e-mail on the following pro se defendant(s):

Ping An                              Emmanuel Mamalakis
31 Kerouac Court                     emama@mamalakislaw.com
Spring, Texas 77382
PingA2018@hotmail.com

                                     /s/ *Ty Doyle*
                                     Ty Doyle