IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| QUANTLAB TECHNOLOGIES LTD. (BVI), AND QUANTLAB FINANCIAL, LLC, | § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. H-09-4039 |
| v. | § § | |
| VITALIY GODLEVSKY, ANDRIY KUHARSKY, ANNA MARAVINA, PING AN, EMMANUEL MAMALAKIS, AND SXP ANALYTICS, LLC, | § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § | |

**JOINT REPORT ON ATTORNEYS' FEES AND COSTS IN RESPONSE TO
THE COURT'S NOVEMBER 9, 2017 ORDER (DKT. 872)**

Plaintiffs and Defendants in the above-referenced action respectfully submit the following joint report in response to the Court's Order dated November 9, 2017 (Dkt. 872).

**Facts**

In its Order (Dkt. 872), the Court asked the parties to confer regarding the reasonableness of Plaintiff Quantlab's requests for pre-appeal attorneys' fees and costs in this matter. On November 14 and 21, 2017, Quantlab asked to confer with Defendants' counsel, *see* Exhibit A, before learning that both remaining Defendants would be representing themselves *pro se*. *Id.*

In early December, after finally hearing from Defendants themselves, Quantlab provided its theories of entitlement as to attorneys' fees and costs, *see* Exhibit B, and further provided information on the rates charged by its attorneys, *see* Exhibit C.

Ultimately, Defendants indicated that their disagreement with Quantlab's theories of entitlement, as well as the amounts sought, for the reasons previously discussed in briefing.

707158.1

Quantlab then drafted this joint report, which both Defendants reviewed and approved prior to its being submitted to the Court.  *See* Exhibit D.

### Responses

1.     **Quantlab's Theories of Entitlement to Attorneys' Fees.**

In earlier briefing, *see* Dkt. 787, 803, and 805, Quantlab laid out the bases of its entitlement to attorneys' fees in detail.  Those bases are:

> **A.**     **Defendant Kuharsky should pay all fees for litigating against him pursuant to his contract with Quantlab, as Quantlab's breach of contract case is intertwined with all its other causes of action.**

**Quantlab's Position:**   There is no dispute that Kuharsky entered into a Proprietary Information Agreement with Quantlab as a condition of his employment with the company, and there is also no dispute that the Agreement provides that in a proceeding brought to enforce the terms of the Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs.  *See* Dkt. 787 at 3.

Quantlab contends that there can be no legitimate dispute that it is the prevailing party in this action, as among other things, it successfully prosecuted this action for breach of contract and prevailed on six causes of action in total, with Defendants taking nothing.  *Id*.  Thus, Quantlab believes that Kuharsky is bound to pay Quantlab, as the prevailing party, its reasonable attorneys' fees.  *See*, e .g., *Paramount Pictures Corp. v. Johnson Broad. Inc.*, No. CIV.A. H-04-03488, 2006 WL 1406870, at *5 (S.D. Tex. May 19, 2006) (Ellison, J.) (holding that because plaintiff prevailed on its claim, "in accordance with the license agreement provisions, [plaintiff] should be permitted to recover its reasonable attorneys' fees and expenses incurred in bringing these claims").

Quantlab further contends that as all claims at issue in this case are intertwined with Kuharsky's ill-fated decision to breach his contractual obligations to Quantlab, it is entitled to

2

the recovery of all of its fees. Put differently, the overwhelming majority of Quantlab's fees and costs would have been necessary even had the company sued only on its breach of contract claim, making segregation of fees unnecessary. *See* Dkt. 787 at 17-19. Further, Quantlab notes, *see* Dkt. 805, that Kuharsky's Second Amended Answer, Dkt. 536 at ¶162, contends that "the terms of the agreement [between Quantlab and Kuharsky] are interwoven into all of the other claims" in the lawsuit. This was a claim offered by Kuharsky when he thought that *he* would be the prevailing party and therefore collect attorneys' fees. *Id.* at ¶163. *See* discussion at Dkt. 805 at 3. Now that the litigation has turned out badly for Kuharsky, he is seeking to disavow his prior characterization of the suit. *Id.*

**Kuharsky's Position:** Defendant Kuharsky, while denying liability, *see* Dkt. 800, did "not dispute that the Court's rulings support an award of attorneys' fees on a breach of contract claim." *Id*. at 1. Defendant Kuharsky, however, asserts that Quantlab must segregate its attorneys' fees for its breach of contract claim from its other successful causes of action. *Id*. at 2.

This theory does not affect **Defendant Mamalakis**.

> **B.** **Defendant Kuharsky should pay all fees for litigating the breach of contract claim & appellate fees.**

**Quantlab's Position:** In addition to the express language of Kuharsky's contract with Quantlab, *supra*, Texas state law—which applies here—requires an award of attorneys' fees and costs to a prevailing party in a claim based on an oral or written contract. *See* discussion at Dkt. 787 at 15-17. It is further the case that under Texas law, *id.* at 17, an award of appellate attorneys' fees to a prevailing party on a breach of contract claim is mandatory. Here, there is no dispute that Quantlab prevailed, both at trial and on appeal, in its breach of contract claim.

3

**Kuharsky's Position:**   As discussed above, Defendant Kuharsky does not dispute Quantlab's being entitled to attorneys' fees for breach of contract, although he contends that such fees must be segregated from the rest of the case.

This theory does not affect **Defendant Mamalakis.**

### C. Defendant Kuharsky should pay all fees for litigating against him because of his vexatious litigation behavior.

**Quantlab's Position:**   Quantlab in the alternative believes that Defendant Kuharsky must pay all fees for litigating against him due to his vexatious litigation behavior.  District courts possess the inherent power to award attorneys' fees against a party for bad faith or for vexatious litigation tactics.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *see Mylonakis v. M/T GEORGIOS M.*, 909 F. Supp. 2d 691, 753 (S.D. Tex. 2012); *see also* Fed. R. Civ. P. 37 (authorizing attorneys' fees as sanctions for certain discovery conduct).

An abridged list of Kuharsky's bad faith acts can be found at Dkt. 787 at 5-8.  Among other things, Quantlab believes—and in many cases, and the Court has already concluded—that Kuharsky made false statements about his possession of materials belonging to Quantlab, refused to answer even obvious questions in both written discovery and in depositions/testimony, and spoliated massive amounts of evidence that would have been harmful to his case and/or helpful to Quantlab.  *Id.*  As a result of these acts, Quantlab was forced to spend extraordinary amounts of time and money, including on filing motions and conducting hearings, hiring technical experts, and responding to Kuharsky's own frivolous motions.  Quantlab contends that under the its inherent powers, the Court should award it its reasonable attorneys' fees, or, at minimum, the fees and cost incurred as a result of all conduct that the Court determines unreasonably and vexatiously multiplied the proceedings.  *See, e.g.*, Dkt. 787 at 9 and n. 9.

**Kuharsky's Position:** Defendant Kuharsky responded that sanctions against a party are not permitted under 28 U.S.C.A. § 1927, and that to the extent Quantlab seeks to have sanctions imposed under the Court's inherent powers, such sanctions may only be awarded against bad faith conduct, which has a high threshold. *See* Dkt. 800 at 4-5. Kuharsky contends that Quantlab's list of allegedly vexatious litigation conduct, *supra*, is overblown and amounts to Quantlab complaining that Kuharsky defended himself and filed motions of his own. *Id.* In any event, Kuharsky does not believe that the conduct at issue meets the high standard of being in bad faith.

This theory does not affect **Defendant Mamalakis**.

### D.     Defendant Mamalakis should pay all fees for litigating against him because of his vexatious litigation behavior.

**Quantlab's Position:** Quantlab's theory of entitlement for its fees due to Defendant Mamalakis's vexatious litigation conduct is based on the same legal principles as its claim against Kuharsky, *supra*. Quantlab has previously provided an extensive list of Mamalakis's conduct in this case, *see* Dkt. 787 at 11-15, which includes, *inter alia*, making false statements about material issues in this case, destroying highly important evidence, filing numerous frivolous motions, and even bringing frivolous proceedings in an effort to avoid discovery in this matter.

**Mamalakis's Position:** Mamalakis contends, *see* Dkt. 799, that he did not engage in vexatious litigation conduct, as he did not initiate the proceedings, nor is he responsible for their long duration. Rather, he contends that Quantlab's complaints are about issues of their own making, as it was Quantlab's pursuit of criminal charges that lengthened the proceedings. *Id.* Mamalakis also contends that his filings were all necessary and in many cases, were his attempts

to reduce litigation as oppose to multiplying it. *Id.* Lastly, Mamalakis contends that Quantlab is not a prevailing party in this action as the term is understood in Fed. R. Civ. P. 54.

This theory does not affect **Defendant Kuharsky**.

### E. Defendants should pay all attorney fees for investigating spoliation.

**Quantlab's Position:** "[B]oth Federal Rule of Civil Procedure 37 and the Court's 'inherent power to regulate the litigation process' allow it to impose sanctions." Dkt. 490 at 14 (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 611 (S.D. Tex. 2010))." Those costs may properly include expert fees; here, Quantlab seeks to recover the fees paid to Pathway Forensics. *See Duque v. Werner Enterprises, Inc.*, No. CIV.A. L-05-183, 2007 WL 998156, at *7 (S.D. Tex. Mar. 30, 2007); Dkt. 787 at 21-23 (discussing Pathway's role).

As previously discussed in detail, *see* Dkt. 787 at 19-21, this was a case in which the Court—following a lengthy hearing at which Quantlab put forth the evidence from its significant forensic investigation—concluded that both Defendants spoliated substantial amounts of highly relevant materials, including numerous computers and electronic storage devices related to their high-frequency trading work. The Court further found that Defendant Kuharsky (along with Defendant Godlevsky, who settled prior to trial) continued to spoliate electronic storage devices and other materials even after the Court's initial spoliation ruling.

Quantlab recommends allocating its attorneys' fees on this issue as follows: for the initial spoliation investigation, 1/3 to Mamalakis and 2/3 to Kuharsky. Quantlab recommends that Kuharsky be held responsible for the 1/3 allocation that would otherwise be attributable to Godlevsky, since Kuharsky and Godlevsky colluded on the spoliation.

**Defendants' Positions:** Defendants, *see* Dkt. 800 at 6, acknowledge that the Court's authority under Fed. R. Civ. P. 37 is broad, but note that the Court has already imposed substantial sanctions and believe that additional sanctions are inappropriate. Defendants further

believe that Quantlab's proposal for allocation is overly simplistic and that a fact-based determination of costs and allocations will be necessary. *Id.*

> **2. As to theories of entitlement on which the parties agree, the reasonableness of the time spent by the attorneys.**

Other than Kuharsky's acknowledgement regarding Quantlab's breach of contract claim, the parties do not agree regarding theories of liability. Quantlab has produced its attorneys' rates to Defendants, *supra*, but was not able to confer with Defendants regarding the reasonableness of its attorneys' time, although it assumes Defendants' objection.

> **3. The reasonableness of hourly rates charged by each attorney.**

Quantlab has provided its hourly rates to Defendants, which it believes are reasonable. It may be presumed that Defendants do not agree with the reasonableness of the time spent by Quantlab's attorneys.

> **4. The reasonableness of the costs incurred by Quantlab.**

Quantlab has already submitted its costs for litigation in this Court of $279,334.43, which it believes are reasonable in light of the complexity and difficulty of this case. The Court taxed costs in that same amount on October 23, 2017, *see* Exhibit E. It may be presumed that Defendants disagree with the amount of costs taxed in this matter.

By  */s/Andriy Kuharsky*                    *
    *Pro Se*


By  */s/Emmanuel Mamalakis*               *
    *Pro Se*
    2710 Chardwick Ct.
    Brookfield, WI 53045
    Phone: (262) 794-3698
    Fax: (262) 785-2774

7

By  */s/Ty Doyle*
Lee L. Kaplan
Attorney-in-Charge
State Bar No. 11094400
Ty Doyle
State Bar No. 24072075
Alexander M. Wolf
State Bar No. 24095027
Smyser Kaplan & Veselka, L.L.P.
700 Louisiana, Suite 2300
Houston, TX 77002
(713) 221-2323; (713) 221-2320 (fax)
lkaplan@skv.com
tydoyle@skv.com
awolf@skv.com

*Signed by permission

Respectfully Submitted,

*/s/ Ty Doyle*

| | |
|---|---|
| Of Counsel: | Lee L. Kaplan |
| Tim McInturf | Attorney-in-Charge |
| Texas Bar No. 00788020 | State Bar No. 11094400 |
| S.D. Tex. Bar No. 18058 | Ty Doyle |
| Simon J. Garfield | State Bar No. 24072075 |
| Texas Bar No. 24040957 | Alexander M. Wolf |
| S.D. Tex. Bar No. 634831 | State Bar No. 24095027 |
| Quantlab Financial, LLC | Smyser Kaplan & Veselka, L.L.P. |
| 4200 Montrose Blvd., Suite 200 | 700 Louisiana, Suite 2300 |
| Houston, Texas 77006 | Houston, TX 77002 |
| 713.400.5917 (Telephone) | (713) 221-2323; (713) 221-2320 (fax) |
| 713.400.5918 (Facsimile) | lkaplan@skv.com |
| tmcinturf@quantlab.com | tydoyle@skv.com |
| sgarfield@quantlab.com | awolf@skv.com |

ATTORNEYS FOR PLAINTIFFS
QUANTLAB TECHNOLOGIES LTD. (BVI),
AND QUANTLAB FINANCIAL, LLC

707158.1

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5.1 on the 8th day of December, 2017.

> /s/ *Ty Doyle*
> Ty Doyle

707158.1